LEXSEE

FERNANDO PORTES, Plaintiff -against- WYETH PHARMACEUTICALS, INC., Defendant.

06 Civ. 2689 (WHP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 60824

August 20, 2007, Decided
August 20, 2007, Filed

COUNSEL: [*1] Michael Shen, Esq., Michael Shen & Associates, P.C., New York, NY, Counsel for Plaintiff.

Michael Delikat, Esq., Orrick, Herrington, & Sutcliffe LLP, New York, NY, Counsel for Defendant.

JUDGES: WILLIAM H. PAULEY III, District Judge.

OPINION BY: WILLIAM H. PAULEY III

OPINION

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff Fernando Portes ("Portes") brings this action against Defendant Wyeth Pharmaceuticals, Inc. ("Wyeth") pursuant to the whistleblower provision of the Corporate and Criminal Fraud Accountability Act, Public Law 107-204, codified at 18 U.S.C. § 1514A, also known as the Sarbanes-Oxley Act ("SOX"). Portes allegedly suffered retaliation and unlawful termination in response to protected disclosures made by him to company officials and to the Occupational Safety and Health Administration ("OSHA"). Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendant's motion is granted.

BACKGROUND

The Court assumes the following allegations are true for purposes of the instant motion: Wyeth is a pharmaceutical corporation that has issued securities registered under Section 12 of the Securities Exchange Act of 1934. (Complaint, dated Apr. 24, 2006 ("Compl.") [*2] PP 9, 193.) In 2000, after Wyeth failed to comply with various regulations, including good manufacturing practices ("GMP") for the production of pharmaceutical and biological products, the Food and Drug Administration ("FDA") issued a Consent Decree (the "Consent Decree") governing the conduct of its operations. (Compl. PP 24-25, 27.) To comply with the Consent Decree, Wyeth implemented a corporate program known as the Sustainable Compliance initiative ("SCI"). (Compl. P 35.)

On September 22, 2003, Wyeth hired Portes as principal project manager for the SCI Department at its Pearl River facility. (Compl. PP 45-47, 72.) In this capacity, he reported directly to Cybil Robbins ("Robbins"), head of the SCI Department, who in turn reported 'to Maura Corcoran ("Corcoran"), Wyeth's Director of Quality. (Compl. PP 12, 49-50.)

Around June 2004, Wyeth assigned Portes to spearhead the implementation of standards for vaccine testing. (Compl. PP 89-90.) Portes uncovered numerous problems attributable to Robbins' work, leading him to believe that Wyeth's lab operations were in violation of the Consent Decree, federal regulations, EU regulations, and the provisions of the Barr Mandate. [1] (Compl. [*3] P 94.) Portes communicated his findings to Corcoran,

2007 U.S. Dist. LEXIS 60824, *3
27 Employee Benefits Cas. (BNA) 2833

asserting that Robbins was not qualified to supervise the implementation of the standards and that she had incorrectly certified that a "vast number" of standard operating procedures conformed with GMP. (Compl. PP 99-100, 103.) Portes informed Corcoran that although he was confident that he could correct the problems, he would need an extension of time to complete that task. (Compl. P 101.)

> 1 According to the Complaint, the Barr Mandate arose from United States v. Barr Labs., Inc. and prohibits the averaging of test data in drug manufacturing. 812 F. Supp. 458 (D.N.J. 1993). (Compl. P 94 n.1.) The federal regulations cited by Portes are 21 C.F.R. § 210 (Current Good Manufacturing Practice in Manufacturing, Processing, Packing, or Holding of Drugs; General), 21 C.F.R. § 211 (Current Good Manufacturing Practice for for Finished Pharmaceuticals), and 21 C.F.R. § 600 (detailing general regulations for biological products). (Compl. P 94.) Portes does not refer to specific EU regulations, but rather to the European Medicines Agency (EMEA) and its drug manufacturing rules. (Compl. PP 83, 94, 100, 117.)

Following Portes' statements to Corcoran, [*4] Wyeth allegedly retaliated against him and attempted to impede his efforts to rectify the problems he had uncovered. (Compl. PP 109-111.) Portes was berated by Corcoran for criticizing Robbins. (Compl. PP 112-113.) Corcoran did not respond to Portes' request for an extension of deadlines, and at least four subsequent requests for deadline extensions also received no response from either Corcoran or Robbins. (Compl. PP 112, 114.)

In October 2004, Corcoran pressured Portes to resign for allegedly failing to meet intermediate deadlines in implementing SCI standards -- the same deadlines for which Portes had previously requested an extension. (Compl. PP 121-122.) Portes objected that he was being treated unfairly, because other project managers had missed more important deadlines, and he refused to resign. (Compl. P 126.) Corcoran then placed Portes on a Performance Improvement Plan ("PIP"), an administrative measure normally used to address unsatisfactory work. (Compl. PP 128-129.) Other SCI project managers who failed to meet project deadlines

were not placed on PIPS. (Compl. PP 154-157).

On November 3, 2004, Portes e-mailed Jeff Hutt, Wyeth's Vice President of Quality asking him to [*5] rescind the PIP and again asserting that Wyeth had violated federal regulations and the Barr Mandate. (Compl. PP 11, 145-146.) Hutt did not respond to the e-mail, but Portes nonetheless corrected all of the alleged violations he had uncovered earlier in 2004. (Compl. PP 118, 147, 152-153.)

Thereafter, Portes filed additional complaints through various channels at Wyeth, alleging that the company was violating regulations relating to the manufacture of pharmaceuticals and complaining of "whistleblower retaliation." (Compl. PP 164-175.) As a consequence of Portes' disclosures and complaints of retaliation, Wyeth terminated Portes on February 23, 2005. (Compl. P 176.)

Portes filed a SOX whistleblower complaint with OSHA on March 23, 2005. He claims that Wyeth has continued to harass him since his termination. (Compl. P 181.) Specifically, Portes reports that Wyeth's response to his OSHA complaint contained false allegations regarding his work performance. (Compl. PP 183-185.)

Having made no final determination regarding Portes' claim within 180 days of filing pursuant to 18 U.S.C. § 1514A(b)(1)(B), the Secretary of Labor issued a notice on October 26, 2005 affirming that Portes has a [*6] statutory right to pursue his claims in this action.

DISCUSSION

1. Standard on a Motion to Dismiss

When deciding a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff['s] favor." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). "The complaint is deemed to include any written instrument attached to it as an exhibit or any statements

or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quotations and citation omitted); accord Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

II. SOX Claims

   A. Section 1514A(a)(1)

   Plaintiff alleges that Defendant violated SOX § 1514A(a)(1), which provides, in relevant part:

   No company with a class of securities registered under section 12 of the Securities [*7] Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee -- (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by -- (A) a Federal regulatory or law enforcement agency . . . or (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

   18 U.S.C. § 1514A(a)(1). To assert a whistleblower claim under § 1514A(a)(1), a [*8] plaintiff "must show by a preponderance of the evidence that (1) [he] engaged in a protected activity; (2) the employer knew of the

protected activity; (3) [he] suffered from an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006) (citing Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365, 1375 (N.D. Ga. 2004)); see also Bishop v. PCS Admin. (USA), Inc., No. 05 Civ. 5683 (WTH), 2006 WL 1460032, at *1 (N.D. Ill. May 23, 2006).

   In addition, "before an employee can assert a cause of action in federal court under [SOX], the employee must file a complaint with [OSHA] and afford OSHA the opportunity to resolve the allegations administratively." Willis v. Vie Fin. Group, Inc., No. Civ.A. 04-435 (MAM), 2004 U.S. Dist. LEXIS 15753, 2004 WL 1774575, at *3 (E.D. Pa. Aug. 6, 2004). A plaintiff alleging a violation of § 1514A(a)(1) must file a complaint with the Secretary of Labor not later than 90 days after the date of the alleged violation. [2] 18 U.S.C. § 1514A(b)(1)(A) and 18 U.S.C. 1514A(b)(2)(D). "If the Secretary has not issued a final decision [*9] within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," then a plaintiff is entitled to bring an action in federal district court. 18 U.S.C. § 1514A(b)(1)(B).

     [2]  The Secretary of Labor has delegated responsibility for administrative complaints to OSHA. See 29 C.F.R. § 1980.103(c) (2006).

   B. Scope of Protected Activity

   Defendant challenges Plaintiff's claim solely on the basis of the first element of the Fraser test, contending that, as a matter of law, Plaintiff cannot show he engaged in protected activity. Specifically, Defendant argues that none of Portes' reports were sufficiently related to securities fraud or any violation enumerated in § 1514A(a)(1) to give rise to a SOX claim. [3]

     [3]  Defendant also contends that SOX does not protect disclosures made by an employee in the course of his routine job duties. However, because the Court concludes that Portes has failed to state a claim for other reasons, it need not address this argument.

   SOX protects employees who report activity that they "reasonably believe[] constitutes a violation" of the

2007 U.S. Dist. LEXIS 60824, *9
27 Employee Benefits Cas. (BNA) 2833

enumerated code sections, any SEC rule or regulation, or "any provision of [*10] Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). A whistleblower need not cite the specific law or regulation that he believes is being violated in his report. Fraser, 417 F. Supp. 2d at 322. Rather, the "context" of the disclosure and "the circumstances giving rise to the communication," if closely related to potential fraud against shareholders, may be sufficient to satisfy the pleading requirements of a SOX whistleblower claim. Fraser, 417 F. Supp. 2d at 323.

Nonetheless, disclosures are protected only when they "implicate the substantive law protected in Sarbanes-Oxley 'definitively and specifically.'" Fraser, 417 F. Supp. 2d at 322 (citing Am. Nuclear Res., Inc. v. United States Dep't of Labor, 134 F.3d 1292, 1295 (6th Cir. 1998) (requiring that protected disclosures under the Energy Reorganization Act "definitively and specifically" relate to safety)). [4] Where a communication is "barren of any allegations of conduct that would alert [a defendant] that [the plaintiff] believed the company was violating any federal rule or law related to fraud against shareholders," the reporting is not protected by SOX. Fraser, 417 F. Supp. 2d at 322; see also Livingston [*11] v. Wyeth, Inc., No. 1:03CV00919 (PTS),2006 U.S. Dist. LEXIS 52978, 2006 WL 2129794, at *10 (M.D.N.C., July 28, 2006) ("To be protected under [SOX], an employee's disclosures must be related to illegal activity that, at its core, involves shareholder fraud."); Platone v. FLYi, Inc., 2003-SOX-27, 2006 WL 3246910, at *8 (Dep't Labor, Sept. 29, 2006) ("[The] relevant inquiry is not what [is alleged in the complaint filed with OSHA], but [what was] actually communicated to [the] employer prior to ... termination.").

> 4    Given the relative scarcity of caselaw interpreting SOX, courts also "look to caselaw applying provisions of other federal whistleblower statutes for guidance .... The [SOX] Regulations [state expressly] that consideration was given to the regulations implementing the whistleblower provisions of the Wendell H. Ford Aviation Investment Reform Act for the 21st Century ... the Surface Transportation Assistance Act ... and the Energy Reorganization Act." Collins, 334 F. Supp. 2d at 1374.

1. Disclosures to Supervisors

Plaintiff allegedly made in-person and e-mail disclosures to his supervisors at Wyeth that "definitively and specifically" implicate the substantive law protected in SOX. (Compl. PP 99-100, 145-148, [*12] 164-172, 174-175.) Portes argues that, if Wyeth had violated regulations, the company faced fines and other penalties that might have significantly affected share prices. (Compl. PP 37-39, 58, 82-83, 97.) Portes asserts that, in light of Wyeth's prior references to the Consent Decree in its financial reports, he had a reasonable belief that the company was obligated to report the violations to the FDA, SEC and shareholders. (Compl. PP 36, 41-44, 196-197, 201.) Therefore, Portes argues, his reporting constituted protected activity under SOX.

Plaintiff does not allege that he explicitly referred to fraud, shareholders, securities, statements to the SEC, or SOX in his disclosures to superiors at Wyeth. The purported violations involved the Consent Decree, FDA regulations, EU regulations, and other drug manufacturing guidelines, not SEC rules or other federal law related to fraud against shareholders. Thus, the disclosures were not sufficiently related to shareholder fraud to constitute protected activity.

In Fraser, the plaintiff, a vice president at an investment management company, alleged four instances of protected activity under § 1514A(a)(1). The second instance involved an e-mail [*13] sent by the plaintiff to the company president, in which he reported "that the New York office's decision to sell WorldCom bonds from New York-based ERISA and trust management accounts was not equally disseminated to all accounts firm-wide." Fraser, 417 F. Supp. 2d. at 316. The plaintiff wanted to communicate this information to all firm offices, but was instructed not to do so by another company officer. As a result, he alleged, the company's Los Angeles office continued to hold WorldCom bonds, resulting in "substantial losses in [Los Angeles]- ERISA and trust accounts holding WorldCom bonds." Fraser, 417 F. Supp. 2d. at 316. The plaintiff "characterized this conduct as a breach of fiduciary conduct and evidence of a conflict of interest," and alleged that corporate officers retaliated against him for making the report. Fraser, 417 F. Supp. 2d. at 316.

In refusing to grant the defendant's motion to dismiss with regard to the e-mail disclosure, the court characterized the decision as a "close call," and noted:
> While Fraser does not expressly state in

2007 U.S. Dist. LEXIS 60824, *13
27 Employee Benefits Cas. (BNA) 2833

this e-mail that Defendants are engaged in illegal conduct related to fraud on shareholders, given the context of the e-mail and the [*14] circumstances giving rise to the communication -- i.e., clients of the New York office benefited from a prudent decision to sell WorldCom bonds, whereas the Los Angeles clients suffered losses related to these holdings, which losses they might have avoided had the New York office communicated the decision to sell -- the e-mail is sufficient to satisfy the pleading requirement for a SOX whistleblowing claim.

Fraser, 417 F. Supp. 2d. at 323.

Portes' claim falls well outside the envelope established in Fraser. His disclosures to personnel at Wyeth were concerned exclusively with violations of regulations governing the manufacture of pharmaceuticals. The circumstances of the disclosures do not suggest a concern that Wyeth was being unfair to its investors, that its lack of compliance with FDA regulations might have implications for its reports to investors and the SEC, or that it was engaged in other conduct "that would alert [a defendant] that [the plaintiff] believed the company was violating any federal rule or law related to fraud against shareholders." Fraser, 417 F. Supp. 2d. at 322 (emphasis added).

Moreover, Portes was employed as a chemist and project manager implementing standards [*15] for drug manufacturing, not as an investment analyst at a financial services firm. No inference that Portes was concerned with shareholder fraud could have been derived from his job responsibilities or the nature of his work. In this context, his disclosures to Wyeth are outside the scope of protected reporting under SOX.

2. Disclosure to the Department of Labor

Portes also alleges that Wyeth retaliated against him after he filed his administrative SOX complaint with OSHA. [5] Specifically, Portes contends that in Wyeth's response to his OSHA complaint, the company "disparaged [his] reputation and character" by "falsely claiming that he had demeaned his supervisor and co-workers and 'generally damaged relationships with key internal clients of his department.'" (Compl. PP 183.)

[5]   Section 1514A(a) prohibits retaliatory action against any "employee." Although Portes was no longer employed by Wyeth when he filed his complaint with OSHA, 29 C.F.R. § 1980.101 defines "employee" to include "an individual presently or formerly working for a company." See also Robinson v. Shell Oil Co., 519 U.S. 337, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) (holding in the Title VII context that an employee may sue in the event of retaliation against [*16] him for filing an administrative complaint).

Section 1514A(b)(1) requires that allegations of violations of § 1514A(a) first be presented by filing a complaint with the Department of Labor. Section 1514A(b)(1)(B) empowers a federal district court to hear only those claims for which this administrative remedy has been exhausted. "The administrative scheme underlying [SOX] is judicial in nature, and designed to resolve the controversy on its merits." Willis, 2004 WL 1774575, at *5. While Portes' claim that he was harassed in response to his OSHA complaint could not have been included in his original complaint, he does not allege that he amended it or otherwise reported his retaliation claim to OSHA. Accordingly, Portes cannot assert the claim in federal court. See Willis, 2004 WL 1774575, at *6 (dismissing a plaintiff's SOX claim where he had failed to amend an OSHA complaint to allege retaliation).

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff's retaliation claim under SOX concerning his filing of a complaint with OSHA is dismissed with leave to replead within fourteen days of the date of this Memorandum and Order. The remainder of Plaintiff's [*17] claims are dismissed with prejudice. The Clerk of the Court is directed to mark this case closed.

Dated: August 20, 2007

New York, New York

SO ORDERED:

WILLIAM H. PAULEY III

U.S.D.J.

LEXSEE

In the Matter of: KRISHNA REDDY, COMPLAINANT, v. MEDQUIST, INC.,
RESPONDENT

ARB CASE NO. 04-123, ALJ CASE NO. 2004-SOX-35

U.S. Department of Labor
Administrative Review Board

2005 DOLSOX LEXIS 27

September 30, 2005

[*1]

FINAL DECISION AND ORDER

By OLIVER M. TRANSUE, Administrative Appeals Judge; M. CYNTHIA DOUGLASS, Chief Administrative
Appeals Judge

COUNSEL:
For the Complainant: Krishna Reddy, pro se, Redlands, California; For the Respondent: Jason A. Weiss, Esq., Allen,
Matkins, Leck, Gamble & Mallory, LLP, Irvine, California

OPINION:

Krishna Reddy filed a whistleblower complaint in which she alleged that MedQuist, Inc. violated the employee
protection provisions of the Sarbanes-Oxley Act (the Act or the SOX). n1 The principal issue we must decide is whether
Reddy, in responding to MedQuist's motion to dismiss, adduced sufficient evidence that she engaged in protected
activity, an essential element of her whistleblower claim. We find that Reddy did not carry this burden and therefore we
deny her complaint.

n1 18 U.S.C.A. § 1514A (West Supp. 2005). Title VIII of Sarbanes-Oxley is designated the Corporate and
Criminal Fraud Accountability Act of 2002. Section 806 covers companies with a class of securities registered
under section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l, and companies required to file reports
under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 780(d)), or any officer, employee,
contractor, subcontractor, or agent of such companies. Section 806 protects employees who provide information
to a covered employer or a Federal agency or Congress relating to alleged violations of 18 U.S.C.A. §§ 1341
(mail fraud), 1343 (wire, radio, TV fraud), 1344 (bank fraud), or 1348 (securities fraud), or any rule or
regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against
shareholders. In addition, employees are protected against discrimination when they have filed, testified in,
participated in, or otherwise assisted in a proceeding filed or about to be filed against one of the above
companies relating to any such violation or alleged violation. 68 FR 31864 (May 28, 2003). Department of
Labor implementing regulations are found at 29 C.F.R. Part 1980. (2005).

[*2]

BACKGROUND

2005 DOLSOX LEXIS 27, *2
24 I.E.R. Cas. (BNA) 1561; 37 Employee Benefits Cas. (BNA) 1195

MedQuist, Inc. is a New Jersey corporation based in Phoenix, Arizona that provides electronic medical transcription services to hospitals and healthcare providers. It is a publicly-traded company covered by the SOX. Krishna Reddy is a medical transcriptionist who, at all relevant times, worked for MedQuist's Monrovia, California branch. n2 MedQuist engaged Reddy to transcribe dictated medical records reports. n3 Medical transcriptionists were paid by the number of lines they transcribed, each line consisting of 65 characters.

n2 Reddy Prehearing Statement at 1, 4.

n3 In its Reply To Complainant's Opposition to Respondent's Motion To Dismiss, MedQuist argues that since Reddy was an independent contractor and not its employee, she lacks standing to pursue a SOX claim. The Act provides protection only for employees of publicly-traded companies. 18 U.S.C.A. § 1514A(a). The record demonstrates that Reddy was indeed an independent contractor, not a MedQuist employee. See Respondent's Reply To Complainant's Opposition To Respondent's Motion To Dismiss, Exh. 1. Perhaps because MedQuist raised this issue only in replying to Reddy's opposition to its motion to dismiss and thus Reddy did not have an opportunity to rebut it, the ALJ did not address this issue. Moreover, the parties have not briefed it to us. Therefore, we will decide this matter as if Reddy had been a MedQuist employee.

[*3]

On September 16, 17, and 19, 2003, Reddy emailed Kathy Pinkstaff, MedQuist's Regional Manager in Monrovia. In the first two emails, Reddy complained that new managers had "zapped" the line count in her transcriptions. That is, they had increased the number of characters per line from 65 to 90 and, as a result, she was transcribing fewer lines and thus receiving less pay. In the third email, Reddy informed Pinkstaff that she was requesting a transfer because of the "zapped" line count. n4 On September 19, 2003, Pinkstaff emailed Reddy and informed her that her MedQuist contract was cancelled "in light of your recent emails and based on past history." n5

n4 Reddy Prehearing Statement at A-15, C-17, E-20.

n5 Reddy Prehearing Statement at F-21.

Reddy filed a complaint with the United States Department of Labor (DOL) alleging that MedQuist violated SOX when it terminated her contract after she informed her supervisors about the "zapped" line counts. n6 DOL's Occupational Safety and Health Administration (OSHA) examined Reddy's complaint but denied it because it found that the complaint only expressed concerns about MedQuist's internal policy, not about violations of the federal [*4] fraud statutes, SEC rules or regulations, or shareholder fraud. n7 Reddy requested a hearing before a DOL Administrative Law Judge (ALJ). n8 Thereafter, MedQuist filed a Motion To Dismiss, principally arguing that Reddy's complaint failed to state a claim under the SOX. After Reddy responded to the motion and MedQuist replied, the ALJ recommended that Reddy's complaint be dismissed for failure to state a claim, failure to timely file the SOX complaint, and failure to timely file a request for hearing. n9 Reddy petitioned us to review the ALJ's recommended decision. n10

n6 Complaint, dated December 18, 2003, at 1.

n7 January 16, 2004 letter from Christopher Lee, OSHA Deputy Regional Administrator, to Krishna Reddy. OSHA investigates SOX complaints. 29 C.F.R. § 1980.104.

n8 29 C.F.R. § 1980.106.

n9 June 10, 2004 Recommended Order of Dismissal (R. O. D.) at 4.

n10 See 29 C.F.R. § 1980.110.

2005 DOLSOX LEXIS 27, *4
24 I.E.R. Cas. (BNA) 1561; 37 Employee Benefits Cas. (BNA) 1195

## JURISDICTION AND STANDARD OF REVIEW

The Secretary of Labor has delegated her authority to issue final agency decisions under the SOX to the Administrative Review Board (ARB or the Board). n11 Pursuant to regulation, the Board reviews the ALJ's factual determinations under [*5] the substantial evidence standard. n12 Substantial evidence is that which is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." n13 The Board, however, reviews an ALJ's conclusions of law de novo. n14

> n11 *See* Secretary's Order 1-2002 (Delegation of Authority and Responsibility to the Administrative Review Board), 67 Fed. Reg. 64272 (Oct. 17, 2002). *See also* 29 C.F.R. § 1980.110.

> n12 *See* 29 C.F.R. § 1980.110(b).

> n13 *Clean Harbors Envtl. Servs., Inc. v. Herman,* 146 F.3d 12, 21 (1st Cir. 1998) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

> n14 *Cf. Yellow Freight Sys., Inc. v. Reich,* 8 F.3d 980, 986 (4th Cir. 1993) (analogous provision of Surface Transportation Assistance Act); *Roadway Express, Inc. v. Dole,* 929 F.2d 1060, 1063 (5th Cir. 1991) (same).

Because the ALJ considered evidence outside the pleadings in deciding MedQuist's Motion to Dismiss, the Board treats the motion as one for summary decision under 29 C.F.R. [*6] § 18.40. n15 The Board reviews an ALJ's recommended grant of summary decision de novo, i.e., the same standard that the ALJ applies in initially evaluating a motion for summary decision governs our review. n16 The standard for granting summary decision is essentially the same as the one used in Fed. R. Civ. P. 56, the rule governing summary judgment in the federal courts. n17 Thus, pursuant to 29 C.F.R. § 18.40(d), the ALJ may issue summary decision "if the pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed show that there is no genuine issue as to any material fact and that a party is entitled to summary decision." A "material fact" is one whose existence affects the outcome of the case. n18 And a "genuine issue" exists when the nonmoving party produces sufficient evidence of a material fact so that a factfinder is required to resolve the parties' differing versions at trial. Sufficient evidence is any significant probative evidence. n19

> n15 *See Erickson v. United States Envt'l Prot. Agency,* ARB No. 99-095, ALJ No. 1999-CAA-2, slip op. at 3 (ARB July 31, 2001); *High v. Lockheed Martin Energy Sys., Inc.,* ARB No. 98-075, ALJ No. 96-CAA-8, slip op. at 3-4 (ARB Mar. 13, 2001).

[*7]

> n16 *Honardoost v. Peco Energy Co.,* ARB No. 01-030, ALJ 00-ERA-36, slip op. at 4 (ARB Mar. 25, 2003).

> n17 *Hasan v. Burns & Roe Enters., Inc.,* ARB No. 00-080, ALJ No. 2000-ERA-6, slip op. at 6 (ARB Jan. 30, 2001).

> n18 *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

> n19 *Id.* at 249, citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-290 (1968).

Once the moving party has demonstrated an absence of evidence supporting the non-moving party's position, the burden shifts to the non-moving party to establish the existence of an issue of fact that could affect the outcome of the litigation. n20 The nonmoving party may not rest upon mere allegations, speculation, or denials in his pleadings, but must set forth specific facts on each issue upon which he would bear the ultimate burden of proof. n21 If the

2005 DOLSOX LEXIS 27, *7
24 I.E.R. Cas. (BNA) 1561; 37 Employee Benefits Cas. (BNA) 1195

non-moving party fails to sufficiently show an essential element of his case, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders [*8] all other facts immaterial." n22

n20 *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998).

n21 *Anderson*, 477 U.S. at 256; *see also* Fed. R. Civ. P. 56(e).

n22 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Accordingly, the Board will grant summary decision if, upon review of the evidence in the light most favorable to the non-moving party, we conclude, without weighing the evidence or determining the truth of the matters asserted, that there is no genuine issue as to any material fact. n23

n23 *See Johnsen v. Houston Nana, Inc., JV*, ARB No. 00-064, ALJ No. 99-TSC-4, slip op. at 4 (ARB Feb. 10, 2003) ("[I]n ruling on a motion for summary decision we ... do not weigh the evidence or determine the truth of the matters asserted. Viewing the evidence in the light most favorable to, and drawing all inferences in favor of, the non-moving party, we must determine the existence of any genuine issues of material fact.") (internal citation and quotation marks omitted); *Stauffer v. Wal-Mart Stores, Inc.*, ARB No. 99-107, ALJ No. 99-STA-21, slip op. at 6 (ARB Nov. 30, 1999).

[*9]

## DISCUSSION

*Reddy Submitted Sufficient Evidence That She Timely Filed Both Her Complaint and Her Request for Hearing.*

The ALJ found that Reddy did not timely file her SOX complaint and her request for a hearing. He concluded that these failures warranted dismissing Reddy's complaint. n24 But we find sufficient record evidence that Reddy timely filed both her complaint and request for hearing.

n24 R. O. D. at 4.

The SOX requires that the complaint be filed within 90 days of the date the alleged retaliation occurred. n25 MedQuist terminated Reddy's contract on September 19, 2003. The ALJ found that since OSHA did not receive Reddy's complaint until December 30, 2003, it was not timely filed. But on page one of Reddy's complaint to the Secretary of Labor a handwritten notation indicates that the complaint was "originally submitted via email on 12/18/2003." n26 SOX complaints may be filed by email, and the date of the email is considered the date of filing. n27 Therefore, since on summary judgment we are required to view evidence in the light most favorable to Reddy, record evidence exists that Reddy timely filed her complaint. n28 Therefore, the ALJ erred in concluding [*10] that the complaint should be dismissed because it was untimely filed.

n25 18 U.S.C.A. § 1514A(b)(2)(D).

n26 December 18, 2003 Complaint from Krishna Reddy to the Secretary of Labor.

n27 29 C.F.R. § 1980.103(d).

n28 OSHA complaints "should be filed" with the OSHA Area Director in the area where the employee resides or was employed. 29 C.F.R. § 1980.103 (c). But complaints may be filed with "any OSHA officer or

2005 DOLSOX LEXIS 27, *10
24 I.E.R. Cas. (BNA) 1561; 37 Employee Benefits Cas. (BNA) 1195

employee." *Id.* We find that when Reddy filed her complaint with the Secretary of Labor at the U.S. Department of Labor, where OSHA's headquarters are located, she filed with "any OSHA officer or employee."

Likewise, the ALJ erred in concluding that Reddy's complaint should be dismissed because her request for a hearing was untimely filed. A party objecting to OSHA's findings and preliminary order must request a hearing before a DOL ALJ within 30 days of receiving the OSHA findings and preliminary order. Failing to do so results in OSHA's findings and preliminary order becoming the Secretary's final decision. n29 Therefore, to avoid the effect of OSHA's January 16, 2004 letter denying her complaint, Reddy had to file an [*11] objection and request for hearing within 30 days of receiving the OSHA letter. Reddy filed her objection and request with DOL's Chief Administrative Law Judge, "via fax and U.S. Mail," on March 4, 2004. n30 The ALJ found that Reddy "ignored the 30 day requirement as she mailed her request for hearing on March 4, 2004." n31 But in Reddy's March 4 request she avers that she received OSHA's January 16, 2004 preliminary order letter on February 4, 2004. n32 Thus, since at the summary judgment stage of proceedings we must accept Reddy's version of when she received the OSHA letter, we find that the record demonstrates that Reddy filed her objections and request for a hearing within 30 days of receiving the OSHA preliminary order.

>   n29 29 C.F.R. § 1980.106.

>   n30 Opposition To Respondent's Motion To Dismiss at C-13.

>   n31 R. D. & O. at 4.

>   n32 Opposition To Respondent's Motion To Dismiss at C-13.

### *Reddy Did Not Adduce Sufficient Evidence That She Engaged in SOX-Protected Activity.*

The legal burdens of proof set forth in 49 U.S.C.A. § 42121(b), the employee protection provisions of the Wendell H. Ford Aviation Investment and Reform [*12] Act for the 21st Century (AIR 21), govern SOX actions. n33 Accordingly, to prevail, Reddy must prove that: (1) she engaged in a protected activity; (2) MedQuist knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. n34 Therefore, whether Reddy engaged in protected activity is an essential, material fact which she must show if challenged to do so on a motion for summary judgment. As previously noted, the SOX protects employees who provide information to a covered employer or a Federal agency or Congress relating to alleged violations of the federal mail, wire/radio/TV, bank, and securities fraud statutes (18 U.S.C.A. §§ 1341, 1343, 1344, and 1348), or any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders. n35

>   n33 18 U.S.C.A. § 1514A(b)(2)(C).

>   n34 *See* 49 U.S.C.A. § 42121(a)-(b)(2)(B)(iii)-(iv). *See also Peck v. Safe Air Int'l, Inc. d/b/a Island Express,* ARB No. 02-028, ALJ No. 2001-AIR-3, slip op. at 6-10 (ARB Jan. 30, 2004).
[*13]

>   n35 18 U.S.C.A. § 1514A(a).

In its Motion to Dismiss, MedQuist argued that because Reddy's complaint merely stated a potential claim for breach of contract, her claim must fail because the SOX protects only employees who reasonably believe their employer committed corporate fraud. n36 Thus, to avoid summary judgment, Reddy must show that her September 16, 17 and 19,

2003 emails to Pinkstaff provided information that she reasonably believed constituted violations of the federal fraud statutes, or an SEC rule or regulation, or any federal law pertaining to shareholder fraud.

> n36 Respondent's April 13, 2004 Motion To Dismiss at 3; Respondent's May 13, 2004 Reply To Complainant's Opposition To Respondent's Motion To Dismiss (Respondent's Reply) at 1-2.

The ALJ found that, in the face of MedQuist's Motion to Dismiss, Reddy did not demonstrate that she engaged in protected activity. n37 This finding is conclusive if substantial evidence on the record as a whole supports it. n38 We have examined the entire record to determine if Reddy has demonstrated protected activity. The relevant portions of her emails to Pinkstaff complain only that the [*14] line counts are being "zapped" and that the "zapping" is an "Enron-type" accounting practice. n39 Her subsequent pleadings do not explain or demonstrate how the emails constitute protected activity. For instance, in her SOX complaint Reddy merely alleges that when she complained about the line counts, her contract was terminated. n40 Similarly, her other submissions allege only that MedQuist violated SOX when it terminated her contract after she complained about the zapped lines. n41

> n37 R. O. D. at 3.
>
> n38 29 C.F.R. § 1980.110(b).
>
> n39 Prehearing Statement at A-15, C-17-18, E-20.
>
> n40 Complaint at 1.
>
> n41 Prehearing Statement at 12; Opposition To Respondent's Motion To Dismiss at 6. Thus, Reddy in effect admits that MedQuist terminated her contract for reasons other than SOX-protected activity.

Reddy's Brief contains the same argument she raised in opposing MedQuist's motion. Reddy contends that when MedQuist "rerouted the sums owed to its transcriptionists to its 'profits,' as well as overcharging its clients, MedQuist violated the Securities Exchange Act by filing fraudulent income with the SEC, thus indulging in schemes to deceive investors." n42 Furthermore, she [*15] claims that MedQuist engaged in mail fraud when it carried out "its schemes by mailing out the pay stubs to its transcriptionists via U.S. Mail." n43 And she also contends that "by reducing its expenses in employee compensation, thereby fraudulently inflating its net income, thereby manipulating/deceiving the prospective/current shareholders as to the real financial status of the Corporation," MedQuist violated the Securities and Exchange Act. n44 But since Reddy did not submit evidence supporting these allegations, they are mere speculation. And more importantly, Reddy focused on *MedQuist's* (alleged) conduct rather than demonstrating that *she* engaged in protected activity. That is, she did not show that her emails to Pinkstaff provided information about conduct she reasonably believed constituted a violation of the federal fraud statutes, or an SEC rule or regulation, or any federal law relating to shareholder fraud.

> n42 Opening Brief at 12-13; Prehearing Statement at 12-13; Opposition To Respondent's Motion To Dismiss at 6.
>
> n43 *Id.*
>
> n44 *See* March 4, 2004 Objections to Findings of the Regional Administrator at 3. Reddy incorporates this document by reference in both her Opposition To Respondent's Motion To Dismiss and her Opening Brief.

[*16]

Reddy also argues to us that the OSHA investigation "proceedings" did not comply with due process because she was not afforded a hearing and was not interviewed. She also claims that due process violations occurred when the

2005 DOLSOX LEXIS 27, *16
24 I.E.R. Cas. (BNA) 1561; 37 Employee Benefits Cas. (BNA) 1195

Office of Administrative Law Judges did not properly serve her with notices. But since Reddy had the opportunity to argue these contentions to the ALJ but did not, she has waived this argument on appeal. n45

> n45 *See Schlagel v. Dow Corning Corp.,* ARB No. 02-092, ALJ No. 01-CER-1, slip op. at 9 (ARB Apr. 30, 2004).

Finally, MedQuist argues, without citing any authority, that it is entitled to attorney's fees and costs because Reddy's SOX complaint and this appeal "constitute an abuse of the judicial process." n46 The Act does permit the Board to award a successful litigant like MedQuist a reasonable attorney fee not exceeding $ 1,000 where a SOX complaint is frivolous or brought in bad faith. n47 Even so, as we explained in *Allison v. Delta Air Lines, Inc.:* n48

> n46 Reply Brief at 17.

> n47 49 U.S.C.A. § 42121(b)(3)(C). *See also* 29 C.F.R. § 1980.110(e).

> n48 ARB No. 03-150, ALJ No. 2003-AIR-00014, slip op. at 6 (ARB Sept. 30, 2004) citing *Berry v. Brady,* 192 F. 3d 504, 507 (5th Cir. 1999).

[*17]

> A complaint is frivolous "if it lacks an arguable basis in law or fact." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir.1999). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib,* 138 F.3d at 213.

We find that Reddy's complaint contains at least an arguable basis in law because it is based on her contention that MedQuist retaliated because of SOX-protected activity. And since we have not determined whether Reddy's allegation that MedQuist breached its contract when it terminated her contract has validity, it is not necessarily baseless. It simply does not support a SOX claim. Nor has MedQuist convincingly demonstrated that Reddy brought the complaint or appeal for vexatious reasons. Therefore, we deny MedQuist's [*18] request for attorney's fees.

## CONCLUSION

We accept the ALJ's finding that Reddy did not demonstrate protected activity because substantial evidence in the record as a whole supports it. Therefore, since no genuine issue exists as to whether Reddy engaged in protected activity, a material fact, MedQuist is entitled to summary decision. As a result, we **DENY** Reddy's complaint. We also **DENY** MedQuist's request for attorney's fees because Reddy's complaint and appeal are not frivolous or brought in bad faith.

SO ORDERED.

OLIVER M. TRANSUE
Administrative Appeals Judge

M. CYNTHIA DOUGLASS
Chief Administrative Appeals Judge

LEXSEE

DEVORAH SHABTAI, Plaintiff-Appellant, -v.- ERIC LEVANDE, ESTHER
LEVANDE, PAUL LEVANDE, CHESTER HARHUT, Judge, Defendants,
COMMUNITY MEDICAL CENTER, SCRANTON POLICE DEPARTMENT,
Defendants-Appellees.

No. 01-7555

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

38 Fed. Appx. 684; 2002 U.S. App. LEXIS 12710

June 26, 2002, Decided

**NOTICE:**    [**1] RULES OF THE SECOND
CIRCUIT COURT OF APPEALS MAY LIMIT
CITATION TO UNPUBLISHED OPINIONS. PLEASE
REFER TO THE RULES OF THE UNITED STATES
COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:**    Appeal from the United States
District Court for the Eastern District of New York.
(Frederic Block, Judge).
  Shabtai v. Levande, 2001 U.S. Dist. LEXIS 617
(E.D.N.Y. Jan. 23, 2001)

**DISPOSITION:**  Affirmed.


**COUNSEL:** Appellant DEVORAH SHABTAI, Pro se,
Brooklyn, NY.

For Appellee: PAUL A. BARRETT, O'Malley & Harris,
P.C., Scranton, PA, for Community Medical Center.

**JUDGES:** PRESENT: HONORABLE THOMAS J.
MESKILL, HONORABLE ROBERT D. SACK,
HONORABLE MYRON H. BRIGHT, * Circuit Judges.

        *  Of the United States Court of Appeals for the
     Eighth Circuit, sitting by designation.

**OPINION**


[*685] SUMMARY ORDER

   UPON DUE CONSIDERATION, IT IS HEREBY

ORDERED, ADJUDGED AND DECREED that the
judgment of said district court, dated April 19, 2001, be,
and it hereby is, AFFIRMED.

   Devorah Shabtai, pro se and in forma pauperis, 28
U.S.C. § 1915(a), appeals from a judgment of the United
States District Court for the Eastern District of New York
(Frederic Block, Judge) granting the defendants' motion
to dismiss her complaint for failure to provide a clear and
concise statement of [**2] her claims, see Fed. R. Civ. P.
8, and dismissing her complaint with prejudice. Shabtai
v. Levande, 2001 U.S. Dist. LEXIS 617, No. 99-
CV-8466, 2001 WL 77064 (E.D.N.Y. Jan. 23, 2001).

   In December 1999, Shabtai filed a complaint against
Eric Levande, her ex-husband; Paul and Esther Levande,
her ex-husband's parents; Judge Chester Harhut, a
Pennsylvania Family Court Judge; the Community
Medical Center; and the Scranton Police Department. The
complaint totals 140 single-spaced pages, with more than
900 paragraphs, not including several unenumerated
subsections. The document consists principally of a
first-person narrative describing in detail Shabtai's
marriage to Levande and her experiences with his parents
and the community of Scranton, Pennsylvania. It also
describes Shabtai's interactions with Judge Harhut, who
presided over her divorce from Levande and awarded him
custody of their child. Judge Harhut further ordered
Shabtai to undergo ten days' counseling at the
Community Medical Center. The complaint discusses,
inter alia, the Scranton Police Department's role in
enforcing that order.

   Shabtai's complaint enumerates at the outset claims

Page 1

38 Fed. Appx. 684, *685; 2002 U.S. App. LEXIS 12710, **2
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

for fraudulent inducement, [**3] intentional infliction of emotional distress, unjust enrichment, defamation, breach of contract, and negligence, but it does not make clear the factual predicate for these claims. The complaint alleges that the district court may exercise diversity jurisdiction over the action, *see* 28 U.S.C. § 1332(a)(1), but it provides no basis for the court's personal jurisdiction over the defendants. *Shabtai*, 2001 U.S. Dist. LEXIS 617, at *1, 2001 WL 77064, at *1. Shabtai's complaint seeks $ 30 million in compensatory and punitive damages.

Community Medical Center moved to dismiss the complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. It argued that the district court lacked personal jurisdiction over the defendants, and that the complaint failed to provide a clear and concise statement of Shabtai's cause or causes of action. Levande moved to dismiss on similar grounds. Both parties urged that, in the alternative, the matter should be transferred to the United States District Court for the Middle District of Pennsylvania.

In September 2000, Shabtai filed a "partial answer" to the defendants' motions in [**4] which she restated the facts surrounding her marriage to Levande and the alleged conspiracy among him and the other defendants. Shabtai argued that the matter should not be transferred to Pennsylvania because (1) Pennsylvania's judges had a conflict of interest based on the complaint's allegations of judicial misconduct; and (2) most of the events at issue took place in New York. Shabtai did not file any further documents in opposition to the defendants' motions.

[*686] On January 24, 2001, the district court granted the motions and dismissed Shabtai's complaint for failure to comply with Fed. R. Civ. P. 8. *Shabtai*, 2001 U.S. Dist. LEXIS 617, at *1, 2001 WL 77064, at *1. The district court granted Shabtai leave to file an amended complaint within sixty days, provided that her amended complaint "set forth the legal basis and factual allegations to support each alleged wrongful act of each defendant, and the relief she is seeking with respect thereto." *Id.* The court also advised Shabtai that a complaint must state the factual basis for the court's exercise of personal jurisdiction over each defendant. *Id.*; *see* Fed. R. Civ. P. 8(a)(1).

On March 12, 2001, Shabtai [**5] informed the court that she had retained an attorney to assist her in bringing her complaint in compliance with Fed. R. Civ. P. 8, and that the attorney would require additional time

properly to prepare the complaint. The court granted Shabtai an extension until April 23, 2001, to enable her newly retained counsel to file an amended complaint.

By letter dated April 17, 2001, Shabtai informed the court that her attorney had not prepared an amended complaint incorporating her claims. Instead, he had refunded half of her $ 2000 fee and provided her with a "memorandum" describing the appropriate form for a civil complaint. Shabtai requested an additional thirty-day extension to seek substitute counsel or to prepare the amended complaint *pro se*. The court declined, and by order dated April 19, 2001, dismissed Shabtai's complaint with prejudice. This appeal followed.

We review dismissals for failure to comply with Rule 8 for abuse of discretion. *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement [**6] must be concise "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks omitted).

Dismissal of a complaint for failure to comply with Rule 8 is generally reserved for those cases in which the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* Rule 8 does not require a plaintiff to prove her case at the pleading stage. The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Id.* at 43 (internal quotation marks omitted). This lax standard should be applied especially liberally when reviewing a *pro se* complaint. *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972) (per curiam)).

Here, however, we conclude that [**7] the district court did not abuse its discretion in granting the motion to dismiss pursuant to Rule 8. As written, the complaint effectively requires the defendants and the court to plead Shabtai's case and determine the potential bases for relief on her behalf. Imposition of this burden on the defendants would be inappropriate and unjust. *See Salahuddin*, 861 F.2d at 42.

Page 2

38 Fed. Appx. 684, *686; 2002 U.S. App. LEXIS 12710, **7
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

Moreover, Fed. R. Civ. P. 41(b) authorizes a district court to "dismiss a complaint for failure to comply with a court order, treating the noncompliance as a failure to prosecute." *Simmons, 49 F.3d at 87* (citing *Link v. Wabash R.R. Co., 370 U.S. 626, 633, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)*). We review dismissals pursuant to Rule [*687] 41(b) for abuse of discretion. *LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001)*.

"This court has repeatedly detailed factors . . . to be considered before dismissal for failure to comply with a court order"; and here, too, where a litigant acts *pro se*, district courts should conduct this analysis with leniency. *Lucas v. Miles, 84 F.3d 532, 534-35 (2d Cir. 1996)*. A district court [**8] contemplating dismissal of a plaintiff's claim for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) must consider:

> (1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district court judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Nita v. Connecticut Dep't of Env. Protection, 16 F.3d 482, 485 (2d Cir. 1994)* (internal quotation marks and citations omitted). Applying these factors to the circumstances of the instant case, we conclude that the district court did not abuse its discretion under Fed. R. Civ. P. 41(b).

We note that our disposition does not foreclose Shabtai from pursuing, should she choose, potential claims against her former counsel, whose services apparently consisted of providing her with a boilerplate document at the eleventh hour. We further note that the *res judicata* [**9] and collateral estoppel effects of our disposition is necessarily limited by (1) the posture of a Rule 8 dismissal, which can make it difficult to discern which claims, if any, may properly be deemed precluded in a subsequent federal action; and (2) any viable state-law causes of action Shabtai may have in light of applicable principles of state preclusion law.

Finally, Shabtai requested that another case pending before this Circuit be consolidated with this case. *Shabtai v. City of New York*, No. 01-CV-502(FB), 2001 U.S. Dist. LEXIS 21277, 2001 WL 1646520 (E.D.N.Y. Dec. 17, 2001). Because that matter is before another panel and involves unrelated issues, consolidation would be inappropriate. *Cf. General Motors Co. v. City of New York*, 501 F.2d 639, 648 (2d Cir. 1974).

For the foregoing reasons, the judgment of the district court is AFFIRMED.