LEXSEE

JOHN R. CLARKE and PERPETUAL GROWTH FUNDS ADVISORS, INC.,
Plaintiffs, -against- FONIX CORPORATION, STEPHEN M. HICKS,
SOUTHRIDGE CAPITAL MANAGEMENT, LLC, and SOVEREIGN PARTNERS,
L.P., Defendants.

98 Civ. 6116 (RPP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1999 U.S. Dist. LEXIS 2143

March 1, 1999, Decided
March 1, 1999, Filed

**DISPOSITION:** [*1] Plaintiffs' motion to restore this action, as against defendant Fonix, denied. Motion of defendants Hicks, Southridge, and Sovereign granted without prejudice.

**COUNSEL:** For Plaintiffs: David B. Cohen, Speno & Cohen, New York, NY.

For Fonix Corp., Defendant: Lyndon M. Tretter, Emily Granrud, Davis, Weber & Edwards, P.C., New York, NY.

For Stephen M. Hicks, Southridge Capital Management, L.L.C., and Sovereign Partners, L.P., Defendants: Martin P. Russo, MPR Law Practice, P.C., New York, NY.

**JUDGES:** ROBERT P. PATTERSON, JR., U.S.D.J.

**OPINION BY:** ROBERT P. PATTERSON, JR.

**OPINION**

## OPINION AND ORDER

ROBERT P. PATTERSON, JR., U.S.D.J.

There are two motions pending before the Court. In one, plaintiffs John R. Clarke and Perpetual Growth Advisors, Inc., move to restore the action as against defendant Fonix Corporation ("Fonix"), following its dismissal without prejudice. In the other, defendants Stephen M. Hicks ("Hicks"), Southridge Capital Management, L.L.C. ("Southridge"), and Sovereign Partners, L.P. ("Sovereign") (together, "the Hicks defendants") [1] move to dismiss the amended complaint as against them. For the reasons which follow, the plaintiffs' motion is denied and the Hicks defendants' [*2] motion is granted.

> 1 On October 22, 1998, the New York plaintiffs filed an amended complaint, adding Hicks and two firms, Southridge Capital Management, LLC, a Delaware corporation with its principal office in Connecticut, and Sovereign Partners, LP, as defendants, alleging that they tortiously interfered with plaintiffs' agreement with Fonix. Southridge and Sovereign will be considered part of the "Hicks defendants" because the amended complaint alleges that Hicks is president of Southridge and that Southridge is the General Partner of Sovereign. (Am. Compl. PP 2-3.)

## Background

Plaintiffs original complaint was filed on August 28, 1998, and named only Fonix as a defendant. Plaintiffs alleged they had a contract with Fonix pursuant to which Fonix would pay plaintiffs a commission of five percent "at closing of a financing between Fonix Corp. and an investor that is a result of an introduction by Perpetual Growth Advisors, Inc." (Am. Compl. Ex. A.) [2] The complaint went on to allege that plaintiffs [*3] introduced Fonix to defendant Hicks and arranged the private placement of $ 25 million of Fonix securities with

1999 U.S. Dist. LEXIS 2143, *3
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

"Hicks, individually and acting through his investment fund." (Compl. P 6.) In early 1998, "Hicks" (meaning Hicks individually and acting through his investment fund (id.)) invested $ 10 million in Fonix, and plaintiffs were paid $ 500,000. (Id. P 8.) But "Hicks" went on to make additional investments in Fonix in March, 1998 ($ 2 million), August, 1998 ($ 1 million), and "at or about the time of the filing of this action." ($ 12 million), and plaintiffs were allegedly never paid their commissions, in the amount of $ 750,000 (Id. PP 9-10) In the amended complaint, which was filed on October 22, 1998, it is alleged that in making these investments Hicks acted "by and through Southridge and investment funds which Defendant Hicks controls directly or indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A." (Am. Compl. PP 9, 11, 12, 13, 19, 22).

> 2 The original complaint makes reference to an attached Exhibit A. said to be the commission agreement between Fonix and the plaintiffs. (Compl. P 7.) There is no Exhibit A attached to the original complaint. However, the commission agreement is attached to the amended complaint as Exhibit A. The original complaint also makes reference to an attached Exhibit B, a Funding Terms sheet dated March 2, 1998. There is no Exhibit B attached to the original complaint. There is a Funding Terms sheet--not signed by Hicks--attached to the amended complaint.

[*4] Plaintiffs' Motion to Restore the Action

On October 28, 1998, the Court granted Fonix's motion to dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiffs are citizens of Georgia, defendant Fonix is a citizen of Utah, and the complaint did not allege that any aspect of the negotiation or execution of the commission agreement was effected in New York. Plaintiffs were granted 45 days to take discovery on the personal jurisdiction issue. On November 24, 1998, the Court granted a request to extend plaintiffs' time to take discovery on the personal jurisdiction issue to December 24, 1998. Plaintiffs filed their motion to restore the action on that date.

The amended complaint alleges that:

In or about March 1998 [3], and pursuant to the arrangement effected by plaintiffs as aforesaid, Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A. invested an additional $ 2 million [*5] in Defendant Fonix in or about June 1998; and Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A. invested yet an additional $ 1 million in Defendant Fonix in or about August 1998. Finally, at or about the time of the filing of this action, and upon information and belief, Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A. invested an additional $ 12 million in Defendant Fonix.

Defendant Fonix has failed and refused to pay the Plaintiffs the 5% commission due them on account of the investments by Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, [*6] Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A. of the aforesaid additional aggregate investments of $ 15 million in Defendant Fonix, amounting to $ 750,000 ("the trailing commissions").

1999 U.S. Dist. LEXIS 2143, *6
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

(Am. Compl. PP 12-13.) [4]

> 3 Note that the complaint says that the additional $ 2 million investment was made "in or about March 1998" in the first part of the sentence but "in or about June 1998" at the end of the sentence. Viewing the complaint in the light most favorable to plaintiffs, the Court surmises that the June date is correct. The very first investment Hicks made in Fonix, of $ 10 million, was apparently made in March 1998, and plaintiffs received a commission for that. The first non-commissioned investment was made in June 1998.
>
> 4 On November 9, 1998, Fonix filed suit in the District of Utah for a declaratory judgment that it does not owe Clarke and Perpetual Growth ("New York plaintiffs"), any money. Fonix's Utah complaint alleges that Fonix received investments of $ 1 million in early June 1998 and $ 2 million in August 1998, "from investors for which Thompson Kernaghan & Co. was agent." (Utah Compl. P 24.) (Thompson Kernaghan was the agent for the investors who invested the initial $ 10 million in March, 1998. (Utah Compl. PP 15-16.)) The Utah complaint also alleges that without Thompson Kernaghan as agent, three of the investment funds invested an additional $ 5 million in Fonix on or about August 31, 1998. (Utah Compl. PP 26-27.)

[*7] During the discovery period, plaintiffs deposed Roger Dudley, Fonix's executive vice president and signatory to the February 25, 1998 agreement between Fonix and plaintiffs (Am. Compl. Ex. A) and also deposed defendant Hicks. Dudley and Hicks each testified at their depositions as to their meetings with each other in New York. It appears that there were three or four such meetings. Dudley testified that he met with Hicks in New York on March 10, 1998, to "discuss the financing that he and his investors were involved with on an immenent closing with Fonix and again that either may have just closed or was just going to close, I don't recall the specific times." (Granrud Decl. Ex. A at 65.) According to the amended complaint, the first $ 10 million that Hicks's funds invested in Fonix occurred "in or about the early part of 1998." (Am Compl. P 11.)

Dudley testified that he met with Hicks in New York on June 2, 1998, and the topic of discussion was "a general review of where Fonix was at the time, status reports of where Fonix was since the investment, since mid-March." (Granrud Decl. Ex. A at 65-66.) He testified that he had another meeting in New York with Hicks on June 29, 1998, for [*8] which the topic was "a status report of where Fonix was at that point in time and also where the performance of the stock portfolio was as it related to any subsequent financing on the part of Mr. Hicks and his investors." (Id. at 66. [5] Dudley also testified that he met with Hicks for a fourth time, before September, 1998, though he was not clear when exactly this occurred. The "pattern we have established in visiting with our investors, those that made direct investments, we meet periodically to provide status report updates on Fonix and any capitalization issues." (Granrud Decl. Ex. A at 67.)

> 5 This appears consistent with the Utah complaint's allegation that the March purchase agreement between Fonix and the Hicks investors provided for a later investment by Hicks of $ 10 million "if [Fonix] met certain conditions." (Utah Compl. P 16.)

Hicks could not recall the specific dates of his meetings in New York with Dudley (he did not have his calendar with him at his deposition), but conceded that he met [*9] with Dudley three or four times in New York. (Granrud Decl. Ex. B at 16.) "Over the course of the times that we met, we generally discussed--he would bring me up to date on the business and issues regarding the business and at times we would discuss financing." (Id. at 18.) When asked what he meant by "financing," Hicks replied, "Well, we discussed financing and further financing of the company over the course of the times that we met. I don't specifically recall the issues, amounts, or the issues or what, but I know that those things were discussed at various times. . .I mean parts of the discussion were to talk about, you know, bringing us up to date on the company and then discussing the company's financing needs, you know, going forward." Id. at 18-19.)

Additionally, Hicks was asked "Did you discuss the plaintiff's commission in any meetings with Mr. Dudley [in New York]?" and he replied, "I'm trying to recall. I just don't recall. I don't think so, but I don't recall." (Id. at 22-23.)

Meanwhile, on November 9, 1998, Fonix filed suit in the District of Utah for a declaratory judgment that it does not owe Clarke and Perpetual Growth ("New York

Page 3

1999 U.S. Dist. LEXIS 2143, *9
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

plaintiffs"), any money. [*10] (Cohen Decl. Ex. C.) Fonix brought the suit in Utah "to avoid wasteful jurisdictional discovery in New York, because there is no question as to [the Utah] Court's jurisdiction over all parties, and because the Agreement was executed in Utah and is governed by Utah law." (Id. P 30.) [6]

[6] In the Utah complaint, Fonix alleges that

> On or about March 9, 1998, [Fonix] entered into a Common Stock Purchase Agreement (the "Purchase Agreement") with a Canadian company, Thompson Kernaghan & Co., as agent for five investment partnerships (the "Funds"), two of which were advised by Southridge.
>
> The Purchase Agreement provided for the Funds to invest a total of $ 10 million immediately with a commitment for a later $ 10 million investment if [Fonix] met certain conditions (the "March Transaction"). In return, [Fonix] issued to the Funds restricted shares of [Fonix's] common stock.

(Utah Compl. PP 15-16.) On March 12, Fonix paid Clarke his $ 500,000 commission. (Id. P 19.) The Utah complaint goes on to allege that the conditions for the second $ 10 million investment were not met, and "the date specified by the Purchase Agreement for that additional $ 10 million financing passed," and the parties treated the Purchase Agreement as dead. (Id. PP21-23.) Then,

> In June and early August of 1998, following new negotiations, [Fonix] received $ 1 million and $ 2 million, respectively, from investors for which Thompson Kernaghan & Co. was agent ("the June/August Transaction").
>
> In return, the investors received unrestricted shares of [Fonix's] stock.
>
> After further negotiations, [Fonix] received an additional $ 5 million on or about August 31, 1998 in exchange for a completely different type of security; a convertible preferred stock with a 4% dividend (the "August 31, 1998 Transaction").
>
> In connection with the August 31, 1998 Transaction, Thompson Kernaghan & Co. did not act as agent. Rather, three of the Funds participated directly.
>
> [The New York plaintiffs] had no knowledge of nor participation in the June/August Transaction or the August 31, 1998 Transaction.

(Id. PP 24-28.)

[*11] The Hicks Defendants' Motion to Dismiss

Plaintiffs' claim in the amended complaint against Hicks, Southridge and Sovereign is that

> Hicks wrongfully, intentionally and maliciously induced and persuaded Defendant Fonix to breach the Agreement and to refuse to pay trailing commissions to the Plaintiffs by purposely structuring his investments in Defendant Fonix subsequent to the First Tranche in a form of security allegedly different from the form of security used in the First Tranche, exclusively for the purpose of providing a rationale, albeit a bogus one, for Defendant Fonix to claim that because of this alleged "difference", it was purportedly not obligated to pay the trailing commissions to the Plaintiffs.

(Am. Compl. P 20.) In their motion to dismiss the amended complaint, the Hicks defendants argue that plaintiffs failed to obtain leave of the Court before amending the complaint; that the Court lacks personal jurisdiction over them; and that the amended complaint fails to state a claim against them for which relief can be granted.

Discussion

1999 U.S. Dist. LEXIS 2143, *11
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

Plaintiffs' Motion to Restore the Action

A federal court sitting in diversity jurisdiction, considering [*12] the question of personal jurisdiction, must apply the law of the jurisdiction in which the court sits. Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir.1985). Plaintiffs argue that this Court has personal jurisdiction over Fonix under N.Y. C.P.L.R. § 302 and/or § 301. Until 1990 there were conflicting decisions in the Second Circuit concerning the nature of the plaintiff's burden on the jurisdiction issue. Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 n.3 and accompanying text (2d Cir.), cert. denied, 498 U.S. 854, 112 L. Ed. 2d 116, 111 S. Ct. 150 (1990), resolved the discrepancies. "After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the prima facie showing must be factually supported." Id. (citing Hoffritz, 763 F.2d at 57 and Birmingham Fire Insurance Co. v. KOA Fire & Marine Insurance Co., 572 F. Supp. 962, 964 (S.D.N.Y.1983)).

*§ 302 Jurisdiction*

§ 302 provides in pertinent part:

> (a) Acts which are the basis of jurisdiction. [*13] As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state. . .

In order for a court to have personal jurisdiction over a non-domiciliary defendant in a given cause of action, the allegations in the complaint of a New York transaction must "bear a substantial relationship to the transaction out of which the instant cause of action arose." McGowan v. Smith, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981). There must be a nexus--"a direct relationship between the cause of action and the in-state conduct." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983). A single act or transaction can be sufficient to confer personal jurisdiction over a nondomiciliary defendant so long as the nexus requirement is met. Deveny v. Rheem Manufacturing Co., 319 F.2d 124, 127 (2d Cir. 1963); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 18, 209 N.E.2d [*14] 68, cert. denied sub nom. Estwing Manufacturing Co., Inc. v. Singer, 382 U.S. 905, 15 L. Ed. 2d 158, 86 S. Ct. 241 (1965). Activities in New York subsequent to the execution of a contract can satisfy the statute's requirements. Id. "Acts performed by a defendant subsequent to the execution of a contract are ordinarily of jurisdictional consequence." Cutco Industries, Inc. v. Naughton, 806 F.2d 361, 367 (2d Cir. 1986).

The contract which plaintiffs allege Fonix breached was negotiated and executed outside of New York. The only "purposeful contacts of the defendant Fonix with the New York forum" are the "four meetings of Fonix's executive, Roger Dudley, in 1998, prior to September 1998, with the defendant Hicks [in New York] to negotiate and otherwise discuss the various investments of the Hicks defendants in Fonix which the plaintiffs claim in their amended complaint are commissionable to them, and to review Fonix's performance relative to those investments." (Pl. Mem. at 5; emphasis in original.) Plaintiffs argue that Fonix is subject to long arm jurisdiction because Hicks and Dudley negotiated the terms of Hicks's investments subsequent to the initial investment [*15] on which a commission was paid to plaintiffs (Pl. Mem. at 6.); these negotiations occurred in New York, and the result of the negotiations was that "Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly or indirectly" caused those funds to invest in Fonix; and plaintiff never received his commissions from Fonix for those investments.

However, plaintiffs are unable to point to even one act which Fonix undertook in New York which constituted a breach of contract or interfered with plaintiffs' rights under their contract with Fonix. In the amended complaint, the plaintiffs allege that Hicks induced Dudley to breach Fonix's agreement with the plaintiffs by restructuring his investments in Fonix after the first $ 10 million. (Am. Compl. P 20.) After discovery, the facts and allegations suggest that at most Hicks and Dudley had four meetings in New York, and that following each meeting, Hicks (acting through Southridge and other investment funds advised by him) made an investment in Fonix. Plaintiffs have not shown

Page 5

Case 1:07-cv-06214-BSJ-DCF   Document 15-7   Filed 09/19/2007   Page 6 of 10

1999 U.S. Dist. LEXIS 2143, *15
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

that any breach by Fonix of its contract with plaintiffs occurred in New York during those Dudley-Hicks meetings. Plaintiffs [*16] have adduced no documentary or testimonial evidence that Hicks gave Dudley a check in New York or otherwise consummated his funds' investments in Fonix while at their New York meetings. And even if there were such evidence, it would not necessarily establish the nexus between Fonix's actions and the plaintiffs' cause of action. Fonix's receipt of further investments from the other defendants--or Dudley's agreement to receive such investments--could not have breached Fonix's contract with plaintiffs. That contract could only have been breached at the moment Fonix did not pay plaintiffs a commission to which they were entitled. Granted, it is sometimes difficult to pinpoint the exact moment--and the precise locale--of a breach of contract when the breach is established by a party's non-performance. However, in this case, plaintiffs have not offered any evidence, even viewed in the light most favorable to plaintiffs, which tends to show that Fonix breached its February 25, 1998, agreement with the plaintiffs while Dudley was in New York. [7]

> [7] Nor have plaintiffs averred or shown, by documentary evidence or oral testimony, that Fonix entered into any contract in New York with the Hicks defendants which deprived plaintiffs of their rights under their agreement with Fonix.

[*17] *§ 301 Jurisdiction*

Plaintiffs also argue that Fonix is subject to this Court's personal jurisdiction pursuant to C.P.L.R. § 301 because Fonix is "doing business" in New York in a general sense. In order to be subject to personal jurisdiction under § 301, a non-domiciliary person or corporation must be doing business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915 (1917). "Unless there is a permanent 'presence' in New York, as opposed to isolated and casual activity, jurisdiction does not extend to causes of action unrelated to in-state activity." J. Weinstein, H. Korn, & A. Miller, New York Civil Practice § 301.16 at 3-33. "In assessing jurisdiction under this pragmatic standard, New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. [*18] 1990).

Plaintiffs argue that there are many indicia of Fonix's presence in New York: its solicitation of investment capital in New York; its employees' travel to New York to attend "trade shows and symposia, where they promoted Fonix-manufactured products [8] and attempted to recruit New York distributors"; the fact that the 1998 annual board of directors meeting took place in New York; the fact that one of Fonix's directors works in New York; the fact that Fonix's stock transfer agent and "many of its institutional investors" are located in New York; and the fact that Fonix filed a certificate qualifying it to do business in New York. (Pl. Mem. at 8.) Fonix says that none of these indicia, standing alone, amount to sufficient proof of "doing business" in New York.

> [8] Neither the complaint nor the amended complaint alleges that Fonix is a manufacturer of any product. According to Fonix's 10-K annual report, it is a research and development company.

Indeed, board meetings held in New York, or the presence of a [*19] board member in New York, is not evidence of doing business here. Garson v. Richmond, Fredericksburg & Potomac R.R., 82 N.Y.S.2d 637, 637-38 (Sup. Ct. 1948). The fact that a stock transfer agent is in New York does not confer jurisdiction, Gilson v. Pittsburgh Forgings Co., 284 F. Supp. 569, 571 (S.D.N.Y. 1968), nor does the fact that the defendant's employees attend trade shows. Lane v. Vacation Charters, Ltd., 750 F. Supp. 120, 125 (S.D.N.Y. 1990).

The solicitation of funds is not Fonix's business; according to its 10-K annual report, it is a research and development company. (Granrud Decl. Ex. D.) Raising financing is not a form of "doing business" for the purpose of § 301; if it were, then almost every company in the country would be subject to New York's jurisdiction. Daniel v. American Board of Emergency Medicine, 988 F. Supp. 127, 224 (W.D.N.Y. 1997); Robbins v. Ring, 9 Misc. 2d 44, 166 N.Y.S.2d 483 (Sup. Ct. 1957). [9]

> [9] In Mantello v. Hall, 947 F. Supp. 92 (S.D.N.Y. 1996), Judge Mukasey granted the defendants' motion to dismiss for lack of personal jurisdiction in a fact pattern roughly analogous to the situation here. Mantello was a theater director who charged

1999 U.S. Dist. LEXIS 2143, *19
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

that after he directed a production of a Terrence McNally play in New York, the defendants "intentionally recreated his unique direction and staging" in a production they staged in Florida. Id. at 96. Mantello argued that the defendants were subject to § 301 jurisdiction because they regularly traveled to New York to see plays and decide which to produce in Florida and to negotiate and execute licenses for such Florida productions, and because they regularly advertised for actors in New York and used a New York casting agency, among other reasons. But Judge Mukasey ruled that

> Defendants and others similarly situated, who lack the traditional indicia of doing business, do not subject themselves for all purposes to the jurisdiction of New York courts merely because they travel to New York to exploit the synergy between New York City's unique theatrical resources and the work of regional theaters.

Id. at 99 (quotation omitted). Substituting "capital raising" for "theatrical," and "companies in need of investment capital" for "regional theaters" results in the same conclusion in the present case.

[*20] Finally, with respect to Fonix's certificate qualifying it to do business in New York, as the Court indicated at oral argument on October 28, 1998, the certificate was filed only four days before this lawsuit was initiated, not at the time of the alleged breaches of plaintiffs' contract with Fonix. While filing a certificate to do business in New York can be strong evidence tending to subject a firm to the personal jurisdiction of New York courts, it does not have automatic retroactive effect. In this case Fonix's certificate is insufficient grounds to establish § 301 jurisdiction. [10]

10   It should be noted that another basis for dismissing the complaint as against Fonix is that the suit has been filed in the improper venue. Federal subject matter jurisdiction over this action is based entirely on diversity of citizenship, and thus the suit is subject to 28 U.S.C. § 1391(a), which states:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Even if it could be said that Dudley transacted business while meeting with Hicks in New York, there is no question that a substantial part of the events or omissions giving rise to plaintiffs' claim did not occur in New York. Plaintiffs' action against Fonix could obviously have been brought in Utah.

[*21] Hicks Defendants' Motion to Dismiss

The Hicks defendants argue that the amended complaint should be dismissed because the plaintiffs failed to obtain leave of the Court to add new defendants pursuant to Federal Rule of Civil Procedure 21; because the amended complaint fails to state a claim against them for which relief can be granted; and because this Court lacks personal jurisdiction over them.

*Rule 21*

Federal Rule of Civil Procedure 15(a) permits one amendment to a pleading as a matter of course before the filing of a responsive pleading. [11] The Hicks defendants argue that Rule 21 trumps Rule 15(a). Rule 21 states in relevant part, "Parties may be dropped or added by order of the court on motion of any party. . ." Fed. R. Civ. Pro. 21 (emphasis added). However, the authority which the Hicks defendants cite for this proposition, Renard v. Dillman, No. 97-9080, 1998 WL 642474 (2d Cir. Apr. 6, 1998), is an unpublished opinion. According to Second Circuit Rule 0.23, "Since [unpublished opinions] do not

constitute formal opinions of the court and are unreported or not uniformly available to all parties, they shall not be cited or otherwise used in unrelated [*22] cases before this or any other court." Defendants' argument relying on Renard is thus disregarded. Another Second Circuit case is controlling: in Washington v. New York City Board of Estimate, 709 F.2d 792, 795 (2d Cir.), cert. denied, 464 U.S. 1013, 78 L. Ed. 2d 717, 104 S. Ct. 537 (1983), the court relied solely on Rule 15(a) in vacating the district court's denial of the plaintiff's attempt to add two defendants.

> 11   No responsive pleadings have been filed in this case. A motion to dismiss is not considered a responsive pleading. Wright, Miller & Kane, 6 Federal Practice and Procedure Civil 2d § 1475 (1990).

Even if leave of the Court were required, a plaintiff's failure to request formally the Court's permission is easily corrected and should not, alone, justify dismissal. Orloff v. Hayes, 7 F.R.D. 75 (S.D.N.Y. 1946). Moreover, leave to amend should be freely granted in the early stages of litigation, absent undue delay, bad faith, prejudice to the opposing party, or futility. FTD Corp. [*23] v. Banker's Trust Co., 954 F. Supp. 106, 109 (S.D.N.Y. 1997). "Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule." Id. (quotation marks and citations omitted).

*Failure to State a Claim for Which Relief Can be Granted*

The Hicks defendants argue that the amended complaint is in fact futile and should be dismissed because it fails to state a claim for which relief can be granted. However, the amended complaint alleges a prima facie case of tortious interference with contract against the Hicks defendants. The elements of a tortious interference with contract claim are (1) the existence of a valid contract, (2) the tortfeasor's knowledge of the contract and intentional interference with it, (3) the resulting breach, and (4) damages. Hoag v. Chancellor, Inc., 246 A.D.2d 224, 677 N.Y.S.2d 531, 533 (1st Dep't. 1998). The amended complaint alleges that plaintiffs had a contract with Fonix (Am. Compl. P 10); that the Hicks defendants had notice and knowledge of that contract (Id. P 19); that the Hicks defendants intentionally interfered with that contract (Id. P [*24] 20); that the contract was breached (Id. PP 13-16, 21); and that plaintiffs were damaged. (Id. P 22.) The Hicks defendants argue that plaintiffs were "no more than an incidental third party beneficiary to the agreement" between Fonix and the Hicks-advised investment funds. (Hicks Mem. at 10) The Hicks defendants also argue that under New York law there can be no claim for tortious interference with contract against a contracting party. (Id. at 13.) But these arguments are irrelevant, because the contract toriously interfered with under plaintiffs' claim against the Hicks defendants is plaintiffs' February 25, 1998, contract with Fonix, which it alleges was tortiously interfered with by Fonix's subsequent investment agreements with the Hicks-advised funds.

*Personal Jurisdiction*

The Hicks defendants also argue that the amended complaint fails to allege facts which would establish this Court's personal jurisdiction over the Hicks defendants. This point is well taken. C.P.L.R. § 302(a)(2) states, "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor [*25] or administrator, who in person or through an agent. . .commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." The amended complaint does not plead any facts showing that the Hicks defendants engaged in any tortious conduct in New York. The amended complaint asserts:

> Some time commencing after March 1998 and continuing thereafter up to the present time, Defendant Hicks wrongfully, intentionally and maliciously induced and persuaded Defendant Fonix to breach the Agreement [between Fonix and the plaintiffs] and to refuse to pay trailing commissions to the Plaintiffs by purposely structuring his investments in Defendant Fonix subsequent to the First Tranche in a form of security allegedly different from the form of security used in the First Tranche, exclusively for the purpose of providing a rationale, albeit a bogus one, for Defendant Fonix to claim that because of this alleged "difference", it was purportedly not obligated to pay the trailing commissions to the Plaintiffs.

1999 U.S. Dist. LEXIS 2143, *25
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

> As a direct result of these acts of Defendant Hicks, Defendant Fonix violated, repudiated and breached the Agreement and refused to pay [*26] the trailing commissions to the Plaintiffs.

(Am. Compl. PP 20-21.) Nowhere does the amended complaint allege that the defendants' tortious acts occurred in New York. Thus, the amended complaint must be dismissed for lack of personal jurisdiction. [12] This dismissal is without prejudice to file a second amended complaint which does allege the appropriate jurisdictional facts. 28 U.S.C. § 1653. However, the proper venue for such an action would appear to be the judicial district where any defendant resides. 28 U.S.C. § 1391(a).

[12] The plaintiffs claim that the Court has personal jurisdiction over the Hicks defendants because they have evidenced "to the Court that the Hicks defendants maintain an office in the City of New York for the regular, continuous and substantial conduct of business in New York." (Pl. Mem. Ex. A at 6.) The Court supposes that this argument is based on C.P.L.R. § 301. The only allegation in the amended complaint which would support § 301 jurisdiction over the Hicks defendants is the allegation that "All Defendants are doing business in the state of New York." (Am Compl. P 7.) A complaint must allege facts in support of personal jurisdiction, not merely conclusions. The statement by plaintiff's attorney Sarah Speno that the Hicks defendants "maintain an office for the conduct of business in the City of New York in care of Meridian Equities, 126 East 56th Street, New York, New York 10022, and regularly and continuously do substantial business in New York (Cohen Decl. Ex. H P 2) is insufficient evidentiary support to establish § 301 jurisdiction over those defendants.

[*27] Conclusion

For the foregoing reasons, plaintiffs' motion to restore this action, as against defendant Fonix, is denied. The motion of defendants Hicks, Southridge, and Sovereign is granted without prejudice.

IT IS SO ORDERED.

Dated: New York, New York

March 1, 1999

Robert P. Patterson, Jr.

U.S.D.J