LEXSEE

DARRYL L. DAGEN, Plaintiff, -against- CFC GROUP HOLDINGS, LTD.; CFC
SECURITIES, INC.; CFC INTERNATIONAL INC.; CFC SECURITIES ASIA
LTD.; CFC TECHNOLOGY, LTD.; CFC SECURITIES HOLDINGS, LTD.; CFC
ASSET MANAGEMENT HOLDINGS, LTD.; CFC SECURITIES, S.A.; AND
BORIS MERKENICH, Defendants.

00 Civ. 5682 (DAB)(THK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2002 U.S. Dist. LEXIS 25767

March 7, 2002, Decided

**SUBSEQUENT HISTORY:** Adopted by Dagen v. CFC
Group Holdings, Ltd., 2003 U.S. Dist. LEXIS 1225
(S.D.N.Y. Jan. 24, 2003)

**DISPOSITION:**     [*1] Magistrate recommended that
defendants' motion to dismiss complaint be granted in
part and denied in part.

**COUNSEL:** For Darryl L Dagen, PLAINTIFF: Chaim B
Book, Moskowitz & Book, LLP, New York, NY USA.

For CFC Group Holdings Limited, CFC Securities, Inc,
CFC International, Inc, CFC Securities Asia Limited,
CFC Technology, Limited, CFC Securities Holdings
Limited, CFC Asset Management Holdings Limited,
CFC Securities, SA, Boris Merkenich, DEFENDANTS:
Steven Michael Hecht, Lowenstein Sandler, PC,
Roseland, NJ USA.

**JUDGES:** THEODORE H. KATZ, UNITED STATES
MAGISTRATE JUDGE. HONORABLE DEBORAH A.
BATTS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** THEODORE H. KATZ

**OPINION**

REPORT AND RECOMMENDATION

FROM: THEODORE H. KATZ, UNITED
STATES MAGISTRATE JUDGE.

TO: THE HONORABLE DEBORAH A. BATTS,
UNITED STATES DISTRICT JUDGE.

This action was referred to me for a Report and
Recommendation on dispositive motions. Currently
before the Court is Defendants' motion to dismiss the
Complaint, pursuant to Rule 12(b)(1) of the Federal
Rules of Civil Procedure, for lack of subject matter
jurisdiction; pursuant to Rule 12(b)(2), for lack of
personal jurisdiction; pursuant to Rule 12(b)(5), for
insufficient service of [*2] process; pursuant to the
doctrine of *forum non conveniens;* and pursuant to Rule
12(b)(6), for failure to state a claim upon which relief
may be granted. For the reasons that follow, I recommend
that Defendants' motion be granted in part and denied in
part.

BACKGROUND

This action arises out of the employment of Plaintiff,
Darryl L. Dagen, by Defendants, a group of affiliated
corporate entities specializing in the provision of
financial services. In September, 1998, Plaintiff met with
Defendant Boris Merkenich of CFC Group Holdings, and
Steve Domney of CFC Securities, in New York City, to
discuss the possibility of Plaintiff's employment by
Defendants. (Complaint, PP 3, 19.) On November 3,
1998, Plaintiff again met with Merkenich and Domney in
New York, in order to sign his employment contract. The
employment agreement was signed by Plaintiff,
Defendant Merkenich, on behalf of Defendant CFC
Group Holdings, and Domney, on behalf of Defendant

2002 U.S. Dist. LEXIS 25767, *2
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

CFC Securities. (*Id.* P 22.) Pursuant to the agreement, Dagen was hired to become president and a managing director of CFC's new Hong Kong affiliate, CFC Securities Asia. (*Id.* P 23.) His assignment was to last a minimum of two years [*3] from the time of his arrival in Hong Kong. (*Id.* P 25.) The employment agreement provided, *inter alia*, that Plaintiff was to receive an adjusted salary of $ 300,000 *per annum*, [1] a monthly apartment allowance of $ 6,000, an annual bonus equal to 35% of the total revenue generated by Plaintiff, and a 15% ownership interest in CFC Securities Asia. (Complaint P 24; Employment Contract ("Contract"), attached as Exhibit ("Ex.") B to Affidavit of Steven Hecht ("Hecht Aff.").) The contract also provided that Plaintiff was to report to the Board of Directors of Defendant CFC International.

> [1]    Plaintiff's salary was to be adjusted to reimburse him for the amount paid in Hong Kong taxes.

Between November, 1998 and June, 1999, Plaintiff worked for Defendant CFC Securities in New York City. (Affidavit of Darryl L. Dagen, dated Feb. 8, 2001 ("Dagen Aff."), P 28.) While in New York, his salary was paid by CFC Securities; his insurance benefits and pension were paid by CFC Securities throughout his entire term of [*4] employment, even while he was in Hong Kong. (*Id.* P 29.)

In June, 1999, Plaintiff commenced his work in Hong Kong. Plaintiff contends that, beginning in March, 2000, Defendant Merkenich undertook actions that undermined Plaintiff's capacity to function professionally, and resulted in his constructive discharge--giving rise to a breach of his employment contract. Merkenich allegedly asked Plaintiff to fire some employees, thereby reducing the output of his office. In addition, Merkenich arranged for an employee in CFC's Swiss office to begin trading with consumers in Hong Kong, diverting profits from Plaintiff's Hong Kong office and reducing Plaintiff's profit-dependent bonus. (Dagen Aff. P 63.) Soon after, according to Plaintiff, Merkenich terminated Plaintiff's registrations with the National Association of Securities Dealers, without which he could not legally conduct business with any of his clients in the United States, severely hampering his ability to perform his duties. (*Id.* PP 64-65.)

Plaintiff alleges that in June, 2000, Merkenich's attempts to terminate Plaintiff's employment accelerated.

Merkenich is purported to have had discussions with his numerologist about [*5] pressuring Plaintiff to quit. (*Id.* P 66.) He talked about such tactics as shutting off Plaintiff's mobile phone service and disrupting his living arrangements. (*Id.*) Merkenich subsequently terminated Plaintiff's apartment lease, without prior notice. (*Id.* P 71.) He also began talking with Mike Stein, a principal at CFC in New York, about falsifying documents and making misrepresentations to the board of directors to justify termination of Plaintiff's employment. (*Id.* PP 71-74.) At the June 21, 2000 board meeting, Merkenich is alleged to have restricted Plaintiff's business travel, terminated his position as a director of CFC Group Holdings, and threatened his position as president of CFC Securities Asia. (*Id.* P 76.)

Additionally, Plaintiff alleges that in June 2000, two instances of fraudulent business practices on the part of Merkenich came to his attention. One involved a kickback scheme to customers of CFC, the other misrepresentations to potential CFC Securities Asia customers regarding CFC's financial status. (*Id.* PP 67, 82, 85.)

In late June and July, according to Plaintiff, Merkenich alternately began requesting that Plaintiff quit his job, threatening [*6] to terminate his employment, and expressing to Plaintiff that he was an unwanted employee. (*Id.* PP 77, 79, 80, 81, 85.) Plaintiff contends that, in late July, Merkenich disabled Plaintiff's mobile phone and eliminated his signatory authority with CFC's bank. (*Id.* PP 83-84.) Soon after that, Plaintiff notified Merkenich that he considered himself constructively terminated and he requested the balance of monies owed to him under his employment agreement. (*Id.* P 86.)

On August 1, 2000, Plaintiff commenced the instant lawsuit. [2] (*Id.* P 89.) In his Complaint, Plaintiff alleges that Defendants' actions gave rise to a breach of his employment contract, a breach of the duty of good faith and fair dealing, intentional interference with his contract, unjust enrichment, a breach of fiduciary duty, and a violation of New York Labor Law § 190 because of the failure to pay his wages.

> [2]    Defendants subsequently filed two lawsuits in Hong Kong against Plaintiff. (*Id.* PP 90-92.) One lawsuit is related to his continued possession of his apartment in Hong Kong, and the other is an action against Plaintiff for trespassing on the premises of the CFC Securities Asia office. (*Id.*

PP 91-92.)

[*7] Although Plaintiff's employment contract was entered into with CFC Group Holdings and CFC Securities, Inc., Plaintiff was hired to serve as President of CFC Securities Asia, Ltd. Moreover, it is alleged that there is such a unity of interest and ownership between Merkenich and all of the CFC companies that any individuality and separateness has ceased and the CFC companies serve as an alter ego of Merkenich. (Complaint P 13.) Merkenich controls operational policies for all CFC companies. (Dagen Aff. P 33.) This dominance by Merkenich leads Plaintiff to allege that the CFC companies are shell companies through which Merkenich carries out his business. *(Id.)*

Defendant CFC Group Holdings, Ltd. ("CFC Group") is a financial services company which owns 100% of Defendants CFC International, Inc. ("CFC International"), CFC Securities S.A. ("CFC Securities S.A."), CFC Technology, Ltd. ("CFC Technology"), CFC Securities Holdings, Ltd. ("CFC Holdings") and CFC Asset Management Holdings Ltd., Inc. ("CFC Asset Management"), as well as 85% of Defendant CFC Securities Asia, Ltd. ("CFC Asia"). CFC International, in turn, owns 85% of Defendant CFC Securities, Inc. (CFC Group Structure Charts [*8] 1 and 2, attached to Dagen Aff. as Ex. D.) Defendant Boris Merkenich is the 100% owner, Chairman, and Chief Executive Officer of CFC Group. (Dagen Aff. P 35 and CFC Group Profile, Attached as Ex. B to Dagen Aff.) Plaintiff was a director of CFC Group Holdings, Ltd., CFC Securities Holdings, Ltd., CFC Asset Management, Ltd., and CFC Securities Asia, Ltd. [3] (CFC Group Structure Chart 2, attached as Ex. D to Dagen Aff.)

> 3   It is unclear whether Plaintiff is still a director of any of the CFC companies. In his affidavit, he alleges that Merkenich terminated his position as a director of CFC group (Dagen Aff. P 76), and attempted to have him sign resignation papers for his position as a director of all of the CFC companies. Plaintiff refused to sign. *(Id.* P 81.)

## DISCUSSION

### I. Subject Matter Jurisdiction

Defendants contend that this Court does not have diversity subject matter jurisdiction over this action, under 28 U.S.C. § 1332, because Plaintiff has failed to plead that [*9] he is a citizen of a state of the United States, or a citizen or subject of a foreign state. Plaintiff does not contest the fact that, in the Complaint, he failed to plead state citizenship. Plaintiff contends, however, that his claims should not be dismissed since he is, in fact, a citizen of Colorado.

It is firmly established that diversity of citizenship "should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record.'" *Wolfe v. Hartford Life & Annuity Ins. Co.,* 148 U.S. 389, 389, 13 S. Ct. 602, 603, 37 L. Ed. 493 (1893); *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 46 (2d Cir. 1996). It is also clear that a statement of a party's residence is insufficient to establish its citizenship. *Wolfe,* 148 U.S. at 389, 13 S. Ct. at 603; *Advani Enterprises, Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 161 (2d Cir. 1998); *John Birch Soc'y v. Nat'l Broadcasting Co.,* 377 F.2d 194, 199 (2d Cir. 1967). For diversity purposes, citizenship equates with domicile, that is, the place of the true, fixed, and permanent home [*10] and principal establishment to which a person has the intention of returning whenever absent. See *Wolfe,* 148 U.S. at 389, 13 S. Ct. at 603; *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 42 (2d Cir. 2000). Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change. See *Palazzo,* 232 F.3d at 42; *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir. 1998). To effect a change of domicile, two things are indispensable: first, residence in a new domicile, and second, the intention to remain there. See *Palazzo,* 232 F.3d at 42.

If challenged, the party invoking federal diversity jurisdiction has the burden of proving diversity exists by a preponderance of the competent evidence. See *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S. Ct. 673, 675, 86 L. Ed. 951 (1942); *Kvos, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S. Ct. 197, 201, 81 L. Ed. 183 (1936); *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 190, 56 S. Ct. 780, 785, 80 L. Ed. 1135 (1936); *Goodman v. Polyvinyl Films, Inc.,* No. 95 CIV. 3365 (PKL), 1999 U.S. Dist. LEXIS 705, 1999 WL 33030, at *1 (S.D.N.Y. Jan. 21, 1999). [*11] In deciding a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidentiary matters outside the pleadings, such as affidavits. See, e.g., *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986); *Adjoyi v. Fed. Air (PTY) Ltd.,* 137 F. Supp. 2d 498, 500 (S.D.N.Y.

2002 U.S. Dist. LEXIS 25767, *11
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

2001).

A failure to allege facts establishing jurisdiction need not prove fatal to a complaint. By statute, "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Such amendments will be freely permitted where necessary to avoid dismissal on purely technical grounds. Unless the record clearly indicates that the complaint could not be saved by any truthful amendment, see, e.g., Baer v. United Servs. Auto. Ass'n, 503 F.2d 393, 397 (2d Cir. 1974), courts generally afford an opportunity for amendment. See Advani, 140 F.3d at 161 ("We have consistently recognized that section 1653 should be construed 'liberally to permit the action to be maintained if it is at all possible to determine from the record that [*12] jurisdiction does in fact exist.'")(quoting John Birch Soc'y, 377 F.2d at 198-99); Canedy v. Liberty Mut. Ins. Co., 126 F.3d 100, 103 (2d Cir. 1997).

In the instant case, Plaintiff alleges in his Complaint that "at all times hereinafter mentioned, Plaintiff Dagen was and still is an American citizen residing in Hong Kong." See Complaint P 1. Defendants are alleged to be either incorporated in New York, Delaware, or abroad. See id. PP 2-9. All Defendants, including Boris Merkenich, are alleged to transact business in New York. In addition, Defendants CFC Group, CFC Securities, Inc., CFC International, and Merkenich are alleged to maintain an office in New York.

By affidavit dated February 8, 2001, Plaintiff supplemented the jurisdictional allegations made in the Complaint. See Dagen Aff. PP 1-20. In particular, Plaintiff avers that, at the time the Complaint was filed, his domicile was Colorado. [4] Id. In addition, Colorado remains his domicile. From 1984 to 2000, Plaintiff maintained a home in Colorado, to which he often returned. Plaintiff pays taxes, is registered to vote, and votes regularly in Colorado. Both he and his wife maintain [*13] valid Colorado driver's licenses. Plaintiff alleges that he currently owns land in Colorado, on which he plans to build a new home. In his affidavit, Plaintiff also states that he plans to return to Colorado following the completion of his work for the CFC entities. See id. P 20. Although he was a resident of Hong Kong at the time the Complaint was filed, Plaintiff claims that it was always his intention to return to the United States. He points out that he requested that, as a term of his contract with Defendants, he be reimbursed for the expenses he would incur when returning to the United States. See id. P 15. He also submits that neither he nor his wife ever purchased real estate in Hong Kong, and that he was in Hong Kong on a temporary work visa. See id. PP 16-17.

[4]  In the alternative, Plaintiff submits that his domicile could be considered to be Pennsylvania, since he was born there, and, in the absence of evidence to the contrary, his domicile must be considered to have remained the same.

[*14] With these uncontested statements, there is prima facie evidence that Plaintiff was domiciled in Colorado at the time he filed the Complaint, since they show both that he resided in, and intended to return to, Colorado. [5] See Palazzo, 232 F.3d at 42; see also Young v. Century House Historical Society, 117 F. Supp. 2d 277, 280 (N.D.N.Y. 2000)("Objective indicators of a party's intent regarding domicile include current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; [and] payment of taxes.").

[5]  Defendants contend that these facts fail to establish that, at the time he filed the Complaint, Plaintiff was domiciled in Colorado. For example, Defendants point out that, at the time he filed the Complaint, Plaintiff was in Japan, and shortly thereafter, he and his family were in Pennyslvania. Nevertheless, a person's temporary location does not define his true domicile.

[*15] Because the facts set forth in Plaintiff's affidavit are sufficient to sustain the diversity jurisdiction of the Court, I recommend that Defendants' motion to dismiss the Complaint, on the ground that the Court does not have subject matter jurisdiction in this action, be denied, and that Plaintiff be granted leave to amend the Complaint to assert he is a citizen of Colorado. See Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000)("When a defendant moves, under Fed. R. Civ. P. 12(b)(1), to dismiss a complaint that inadequately pleads diversity jurisdiction (under circumstances in which extrinsic or subsequently adduced evidence shows that diversity exists), then the court may [either] deny the motion and direct the pleader to amend, or it may dismiss with leave to amend.").

## II. Personal Jurisdiction

Defendants, with the exception of CFC Securities, contend that Plaintiff has not established that the Court has personal jurisdiction over them. [6] Accordingly, they move to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In particular, Defendants allege that the Complaint fails to establish that [*16] they are "doing business" in New York, within the meaning of New York C.P.L.R. § 301, or that they "transact business" in New York, within the meaning of New York C.P.L.R. § 302(a)(1). Defendants also contend that the choice of law clause in Plaintiff's employment contract does not give rise personal jurisdiction over them.

> 6  Defendant CFC Securities does not contest the Court's assertion of personal jurisdiction over it, since it is a New York corporation.

In a diversity action such as this one, the law of the state in which the court sits governs whether personal jurisdiction exists over a Defendant. See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 200 (2d Cir. 2001) ("In assessing whether personal jurisdiction is authorized, 'the court must look first to the long-arm statute of the forum state, in this instance New York.' 'If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process.'")(quoting [*17] Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)).

The burden of establishing a court's personal jurisdiction over a defendant rests with the plaintiff. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). Where personal jurisdiction is challenged with a Rule 12(b)(2) motion prior to an evidentiary hearing, however, the plaintiff need only make a prima facie showing that jurisdiction exists. See DiStefano v. Carozzi N. Am., Inc., No. 00-7239, 286 F.3d 81, 2001 WL 1379852, at *2 (2d Cir. Oct. 18, 2001); Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998); Ball v. Metallurgie Hoboken-Overpelt, 902 F.2d 194, 197 (2d Cir. 1990); Beacon Enters., Inc. v. Menzies, 715 F.2d 757 (2d Cir. 1983); Marine Midland Bank, N.A., 664 F.2d 899, 904 (2d Cir. 1981). In addressing a motion pursuant to Rule 12(b)(2), a court may consider materials outside the pleadings, such as affidavits. See DiStefano, 286 F.3d 81, 2001 WL 1379852, at *2. At this stage in a proceeding, all pleadings and affidavits are construed in the light most favorable to the [*18] plaintiff, and where doubts exist, they are resolved in the plaintiff's favor. See DiStefano, 286 F.3d 81, 2001 WL 1379852, at *2; Hoffritz v. Amajac, 763 F.2d 55, 57 (2d Cir. 1985); Cornell v. Assicurazioni Generali, S.p.A., Nos. 97 Civ. 2262, 98 Civ. 9186 (MBM), 2000 U.S. Dist. LEXIS 11991, 2000 WL 28422, at *1 (S.D.N.Y. Mar. 16, 2000); Bluestone Capital Partners, L.P. v. MGR Funds Ltd., No. 98 Civ. 3128 (WHP), 1999 U.S. Dist. LEXIS 7518, 1999 WL 322658, at *1 (S.D.N.Y. May 20, 1999).

### A. Personal Jurisdiction Pursuant to C.P.L.R. 301

New York C.P.L.R. 301 confers jurisdiction over a foreign corporation when it is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence'" in the jurisdiction. Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851 (1967). Because § 301 jurisdiction exposes a corporation to lawsuits in New York arising from any cause of action, related or unrelated to activity in New York, a plaintiff must show that a defendant corporation does business in New York "with a fair measure of permanence and continuity." Ball, 902 F.2d at 198 [*19] (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915 (1917)); see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000). In order to establish "permanence and continuity," courts look to such factors as the existence of an office with employees of the corporation in New York; the solicitation of business in the state; and bank accounts and property in the state. See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)(citing Hoffritz, 763 F.2d at 58); Hinsch v. Outrigger Hotels Hawaii, 153 F. Supp. 2d 209, 212 (E.D.N.Y. 2001); see also Frummer, 19 N.Y.2d at 537, 281 N.Y.S.2d at 44.

Of the Defendants seeking to dismiss the Complaint pursuant to Rule 12(b)(2), only CFC Group, CFC International and Boris Merkenich are alleged in the Complaint to maintain offices in New York and, therefore, are directly claimed to do business with permanence and continuity in New York. See Complaint PP 2-4, 10. Plaintiff alleges in the Complaint that the other Defendants "transact business" in New York City. Plaintiff claims, [*20] however, that the other Defendants do business in New York through Merkenich, CFC Group, and CFC Securities--the New York based corporate affiliate--since all of the corporate Defendants

Case 1:07-cv-06214-BSJ-DCF    Document 15-8    Filed 09/19/2007    Page 6 of 23

2002 U.S. Dist. LEXIS 25767, *20
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

are alleged to be a single entity, under the umbrella of CFC Group and the control of Merkenich. *See id.* PP 11-14. Although Defendants deny that CFC Group, CFC International and Merkenich have offices in New York, *see* Affidavit of Boris Merkenich ("Merkenich Aff."), dated Dec. 6, 2000, attached as Ex. A to Defendants' Notice of Motion, at this stage of the proceedings, Plaintiff's allegations must be accepted as true. Moreover, Defendants' own promotional material describes the CFC Group as having an office in New York, and there is no dispute that CFC Securities is based in New York. *See* Dagen Aff., Ex. B.

Plaintiff asserts two theories under which personal jurisdiction may be extended from Merkenich, CFC Securities Inc., and CFC Group, to all of the other corporate Defendants: (1) that these Defendants are "mere departments" of CFC Group and CFC Securities, Inc., and (2) that CFC Group and CFC Securities, Inc. act as their agents in New York. *See* Plaintiff's Memorandum of Law, at [*21] 8-11.

It is well established that "the 'doing business' test does not subject a subsidiary corporation to personal jurisdiction simply because a state has jurisdiction over the parent, even if the parent is the sole shareholder of the subsidiary." *Saraceno v. S.C. Johnson & Son, Inc.,* 83 F.R.D. 65, 67 (S.D.N.Y.1979) (citing cases); *see also Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998); *Ross v. Colorado Outward Bound School, Inc.,* 603 F. Supp. 306, 310 (W.D.N.Y.1985) (mere existence of "garden-variety" parent-subsidiary relationship is not sufficient to establish jurisdiction). Rather, the presence of the parent company may serve as a basis of jurisdiction over the subsidiary only if the parent is acting as the agent of the subsidiary, or if the control by the parent over the subsidiary is so complete that the subsidiary is a "mere department" of the parent. *See Grill v. Walt Disney Co.,* 683 F. Supp. 66, 69 (S.D.N.Y. 1988); *Saraceno,* 83 F.R.D. at 67; *cf. Bialek v. Racal-Milgo, Inc.,* 545 F. Supp. 25, 32 (S.D.N.Y. 1982) (discussing jurisdiction over parent through activities [*22] of subsidiary). Agency and "mere department" analyses also apply to affiliated corporate entities, whether or not they are in a "parent-subsidiary" relationship. *See Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG,* 160 F. Supp. 2d 722, 733-34 (S.D.N.Y. 2001)("Under New York law, a court may obtain jurisdiction over a foreign corporate defendant: 1) if it has a subsidiary or affiliate in New York which is a "mere department" of

the foreign corporation or 2) if it employs or retains a local entity to act as its agent.").

*1. Agency for Jurisdictional Purposes*

In New York, personal jurisdiction may be asserted over a foreign corporation when that corporation affiliates itself with a New York representative entity which renders sufficiently important services on behalf of the foreign corporation, that the foreign corporation would perform itself absent the agent. *Wiwa,* 226 F.3d at 95; *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116, 121 (2d Cir. 1967); *see also Frummer,* 19 N.Y.2d at 533, 281 N.Y.S.2d at 41.

Plaintiff argues that since New York City is a center of world finance, each of the Defendants [*23] would have been required to maintain a presence here in order to conduct their businesses. *See* Dagen Aff. P 21. The importance of CFC Securities, Inc.'s office in New York to the other CFC entities is illustrated by the emphasis it is given in the CFC Group's advertising materials. *See* CFC Group Profile, attached as Ex. B to Dagen Aff. Plaintiff further alleges that during the course of his employment with Defendants, Defendants utilized New York clearinghouses for some of their transactions, and required a clearing arrangement in New York in order to offer global services to clients. *See* Complaint P 23.

Courts have recognized the importance of New York as a financial center. *See Wiwa,* 226 F.3d at 96. It may, therefore, have been important for the CFC companies to maintain a presence in New York. However, Plaintiff fails to allege what, if any, specific services the New York-based CFC entities provided to the foreign CFC entities. Although Plaintiff alleges that CFC Securities, Inc. is registered with the National Association of Securities Dealers, he fails to explain the significance of this fact. *Cf. Jacobs v. Felix Bloch,* 160 F. Supp. 2d at 737-39 [*24] (indicating that a plaintiff needs to show that the local corporation is primarily employed by the foreign defendant, that the purported agent has the authority to bind the defendant, and that the business conducted by the local corporation was a "main part" of the foreign defendant's business). Moreover, the mere statement that the CFC entities "required clearing arrangements in New York," *see* Dagen Aff. P 23, is insufficient to establish jurisdiction over them in New York. *Cf. Wiwa,* 226 F.3d at 97 (activities necessary to maintain a stock exchange listing, without more, are insufficient to confer jurisdiction). Therefore, there is no

2002 U.S. Dist. LEXIS 25767, *24
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

basis to conclude that the services rendered by the New York entities were sufficiently important to the foreign Defendants so as to give rise to an agency relationship and justify the assertion of personal jurisdiction over the foreign Defendants.

### 2. "Mere Department" Jurisdiction

Plaintiff also alleges that Defendants CFC Securities, Inc., CFC International Inc., CFC Securities Asia, CFC Technology Ltd., CFC Securities Holdings Ltd., CFC Asset Management Holdings Ltd., and CFC Securities S.A., are "mere departments" of Defendant [*25] CFC Group, which does business in New York, and are therefore subject to personal jurisdiction in New York. He alleges that Merkenich and CFC Group exercise such control over the other CFC corporations that they serve simply as departments, or alter egos, through which Merkenich and CFC Group conduct business throughout the world. See Complaint PP 11-14.

Jurisdiction over a foreign corporation may be established in New York if the foreign corporation has a New York subsidiary or affiliate which serves as its "mere department," or vice-versa, that is, if the foreign corporation is a "mere department" of the New York corporation. See Jazini, 148 F.3d at 184 (2d Cir. 1998); Jacobs, 160 F. Supp. 2d at 733-34 (S.D.N.Y. 2001); Cornell, 2000 U.S. Dist. LEXIS 2922, 2000 WL 284222, at *3; ESI Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999)(holding that jurisdiction can be asserted over a foreign subsidiary which is a "mere department" of a local parent corporation). While the existence of a related local corporation does not necessarily give rise to jurisdiction over an independently managed, foreign corporation, when the lines of separate [*26] corporate existence are blurred, personal jurisdiction over a foreign corporation may be appropriate. Volkswagenwerk AktienGesellschaft v. Beech Aircraft Corporation, 751 F.2d 117, 120 (2d Cir. 1984). There are four main factors to be considered when determining if the lines of corporate existence have been blurred and if jurisdiction founded on "mere department" analysis is appropriate. Common ownership is a requirement, and financial dependence, the level of control over selection of executive personnel, and the level of control over marketing and operational policies, are seen as important factors. Jazini, 148 F.3d at 184-85; Beech, 751 F.2d at 120-22 ("Nearly identical ownership interests must exist before one corporation can be considered a department of

another corporation for jurisdictional purposes."); see also Jacobs v. Felix Bloch, 160 F. Supp. 2d at 734.

In the instant case, CFC Securities does not deny doing business in New York and CFC Group Holdings, the parent corporation, is alleged to do business in New York, where it maintains an office. In addition, identical, or near identical, ownership is alleged [*27] here. Plaintiff contends that Merkenich owns 100% of CFC Group, which in turn owns 100% of CFC International, CFC Technology, CFC Securities Holdings Ltd., CFC Asset Management Holdings Ltd., and CFC Securities S.A., as well as 85% of CFC Securities Asia and CFC Securities, Inc. See Dagen Aff., P 35 and Ex. D. Plaintiff further alleges that Merkenich controlled the operational policies of all the CFC corporations, and that CFC Group and Merkenich were involved in personnel decisions made by the various CFC entities. See id. P 33. There are specific facts alleged that support these allegations. Merkenich, on behalf of CFC Group, and Domney, on behalf of CFC Securities, hired Plaintiff to work for CFC Asia, while having him report to CFC International's board of directors. In addition, Plaintiff was made a director of CFC Securities, CFC Asset Management Holdings, CFC Techology, and CFC Group. See Dagen Aff. P 46. Subsequently, Merkenich took actions to remove him as a director. See Complaint P 36; Dagen Aff. P 81. Moreover, Plaintiff claims that his salary for work with CFC Group and CFC Securities, Inc. in New York, and his benefits while working for CFC Asia, were [*28] paid by CFC Securities, Inc. [7] See Dagen Aff. PP 28, 29. Thus, although Plaintiff's factual allegations center on Defendants CFC Group, CFC Securities Inc., CFC Asia, and Merkenich, Plaintiff alleges, and there is some evidence to support his allegations, that all of the corporate Defendants are, in effect, a single entity, under the control of Merkenich. [8]

7    This suggests a commingling of corporate assets.

8    For example, Plaintiff alleges that Merkenich shifted assets from CFC Asia to the CFC Swiss affiliate, CFC Securities, S.A., and shifted expenses to CFC Asia from CFC Securities, S.A.. See Complaint PP 30-31. In addition, Plaintiff alleges that Merkenich attempted to organize a kickback scheme through CFC Securities, S.A.. See Dagen Aff. P 67.

Having alleged sufficient facts to show common

2002 U.S. Dist. LEXIS 25767, *28
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

ownership, commingling of assets, and coordinated hiring and termination of personnel, Plaintiff has made out a *prima facie* case for personal jurisdiction over all of the corporate Defendants, [*29] on the grounds that they were "mere departments" of CFC Group, and thus subject to personal jurisdiction in New York.

### 3. Jurisdiction over Defendant Merkenich

Defendants argue that even if Plaintiff can establish "doing business" jurisdiction over the corporate Defendants, this jurisdiction does not extend to the individual Defendant, Merkenich, because there are no allegations that he was "doing business" in New York in his individual capacity.

Defendant Merkenich is alleged to be the chairman and a member of the board of directors of all the CFC entities, the CEO of at least two of the CFC entities, CFC Group and CFC Asia, and he is alleged to maintain an office in New York City. He is named as an individual Defendant on the theory that all of the corporate Defendants are, in fact, mere instrumentalities and alter egos of Merkenich. *See* Complaint P 11. Accordingly, personal jurisdiction can be asserted over him if it can be shown that the CFC companies doing business in New York are shell companies over which Merkenich exercises complete dominance. *See Kinetic Instruments, Inc. v. Lares,* 802 F. Supp. 976, 985 (S.D.N.Y. 1992)(When analyzing whether it is [*30] appropriate to pierce the corporate veil and hold an individual owner responsible for the actions of a corporation, "the critical question is whether the corporation is a shell being used by the individual shareowners to advance purely personal rather than corporate ends.")(citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 138 (2d Cir. 1991)); *see also Marine Midland,* 664 F.2d at 903 ("If the corporation is merely a shell, it is equitable, even if the shell may not have been used to perpetuate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell."); *Alter v. Bogoricin,* No. 97 CIV. 0662(MBM), 1997 U.S. Dist. LEXIS 17369, 1997 WL 691332, at *5 (S.D.N.Y. Nov. 6, 1997)(a plaintiff must establish a relationship between the alleged wrong against him and the defendant's alleged abuse of the corporate form).

Plaintiff alleges sufficient facts to pierce the corporate veil by alleging Merkenich's complete ownership, control and dominance of CFC Securities and CFC Group, which do business in New York, as well as the other CFC entities. *See Kinetic Instruments,* 802 F. Supp. at 986 [*31] ("The court may consider such factors as the lack of corporate formalities, the inadequate capitalization of the corporation, and the intermingling of corporate and individual finances."). As principal owner, chairman, and member of the board of directors of the CFC companies, and CEO of CFC Group, Plaintiff alleges that Merkenich disregarded corporate distinctions and commingled corporate funds. *See* Complaint P 14. Plaintiff further alleges that Merkenich made personnel decisions for the various CFC entities. *See* Dagen Aff. P 33. In addition, Plaintiff contends that Merkenich used his domination of the Defendant corporations to interfere with and breach Plaintiff's employment contract. For example, Merkenich is alleged to have diverted business from CFC Asia to other CFC entities. *See* Complaint PP 30-31. Although Plaintiff's allegations may turn out to be untrue, at this stage, before there has been an opportunity for discovery, sufficient facts are alleged to establish a *prima facie* case of personal jurisdiction over Merkenich.

Moreover, personal jurisdiction may be asserted over Merkenich under New York C.P.L.R. 302 (a)(1). *See* discussion *infra,* at 27-29.

### [*32] B. Personal Jurisdiction pursuant to C.P.L.R. 302 (a)(1)

Plaintiff also relies upon Section 302(a)(1) of New York's long-arm statute as another basis for personal jurisdiction over Defendants. New York C.P.L.R. 302(a) provides, in relevant part,:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state ...."

N.Y. C.P.L.R. 302(a). While, under Section 301, a plaintiff must show that a defendant does business in the state, and therefore has an ongoing presence, under Section 302(a)(1), a plaintiff need only show that the defendant "transacted business" in New York, and that there is "some articulable nexus between the business

transacted and the cause of action sued upon." *Beacon, 715 F.2d at 764* (citing *McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321* (1981); *see also Hoffritz, 763 F.2d at 58* ("The showing necessary for [*33] a finding that defendant 'transacted business' and is suable on a cause of action arising from that transaction is considerably less than that needed to establish the defendant's 'doing business,' which renders the defendant subject to suit even on an unrelated cause of action.").

In an action arising under a contract, whether an "out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996).* Although all are relevant, no one factor is dispositive. Other factors [*34] may also be considered, and the ultimate determination is based on the totality of the circumstances. *See PaineWebber Inc. v. Westgate Group, Inc., 748 F. Supp. 115, 118 (S.D.N.Y. 1990).* The second prong of the § 302(a)(1) test requires a court to determine whether the transaction of business in New York "bears a substantial relationship to the transaction out of which the instant cause of action arose." *Beacon, 715 F.2d at 764* (citing *McGowan, 52 N.Y.2d at 272*). There must be a "direct relation between the cause of action and the in-state conduct." *Fontanetta v. Am. Bd. of Internal Med., 421 F.2d 355, 357 (2d Cir. 1970).*

Plaintiff has alleged that Defendants CFC Group, CFC Securities, Inc. and Merkenich negotiated and signed his employment contract in New York. There is no strict list of activities that constitute the transaction of business in New York, but where a breach of contract is alleged "the case in which the defendant was physically present in New York at the time the contract was made, in addition to sufficient other contacts, is ... 'the clearest sort of case in which [New York] courts would have 302 [*35] jurisdiction.'" *Hoffritz, 763 F.2d at 60* (citing

*Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506 (1970)); see also Agency Rent A Car, 98 F.3d at 29.* Moreover, the Defendants who negotiated and signed the contract are alleged to have maintained offices in New York and to have paid part of Plaintiff's salary and benefits from New York. In addition, Plaintiff's contract provided that it was governed by "New York law in New York courts." *See, e.g., ESI, 61 F. Supp. 2d at 59* ("Although not dispositive, New York choice of law provisions are significant considerations under a 'transacting business' analysis."). Thus, Defendants CFC Group and CFC Securities, Inc. can be said to have "transacted business" in New York. *See Dagen Aff. PP 24-29.*

Although not all of the Defendants were parties to Plaintiff's employment contract, if, as Plaintiff alleges, Defendants operate as a single unit, then all of the Defendants can be said to have "transacted business" in New York. Moreover, since Plaintiff's claims arise out of his contractual relationship with Defendants, a clear nexus [*36] exists between Defendants' acts in New York and the causes of action sued upon. *See Hoffritz, 763 F.2d at 59-60* (holding that, in order to assert personal jurisdiction under § 302(a)(1), it is unnecessary for the acts constituting breach of contract to take place in New York; where the contract was negotiated and executed in New York, and defendant made frequent visits to New York, a substantial nexus existed between the defendant's activities in New York and the alleged breach of contract). Thus, Plaintiff has made a *prima facie* showing of personal jurisdiction over the corporate Defendants.

Section 302(a)(1) also provides a basis for asserting jurisdiction over the individual Defendant, Merkenich. Defendants claim that Merkenich did not transact any business in New York in his personal capacity, and that Merkenich does not maintain an office in New York for personal use, but merely in his capacity as an executive of the CFC companies. They therefore argue that he is not subject to personal jurisdiction in New York. However, the "fiduciary shield" doctrine, whereby foreign corporate officers are shielded from personal jurisdiction in a state if the only basis [*37] for jurisdiction is the work they do for a local corporation, is no longer available under the New York long-arm statute. *See Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 470, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988).* Thus, to the extent that Merkenich transacted business in New

2002 U.S. Dist. LEXIS 25767, *37
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

York in his corporate capacity, sufficient to satisfy the Section 302(a)(1) test, he is subject to personal jurisdiction in New York, provided that the assertion of personal jurisdiction over him would satisfy due process requirements. *See id.; Reynolds Corp. v. Nat'l Operator Servs., Inc., 73 F. Supp. 2d 299, 303 (W.D.N.Y. 1999)*(holding that a corporate officer who engages in activities or conduct in New York that satisfies Section 302(a)(1), in his personal or corporate capacity, subjects himself to personal jurisdiction in New York); *Champion Motor Group, Inc. v. Visione Corvette of Mass., Inc., 992 F. Supp. 203, 206* (holding that a foreign corporate officer who was personally involved in negotiating and executing a contract between the corporation and a New York plaintiff in New York was subject to personal jurisdiction, even if the acts were performed [*38] in a corporate capacity). In addition, personal jurisdiction may be asserted over an officer of a foreign corporation transacting business in New York, where the corporation acted as the individual's agent. *Kreutter, 71 N.Y.2d at 467; In re Sumitomo Copper Litig., 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000)*. To establish that the out-of-state defendant acted through an agent for jurisdictional purposes, a plaintiff must show that (1) the corporation engaged in purposeful activities in New York, (2) that its activities were for the benefit of and with the knowledge and consent of the defendant, and (3) that the defendant exercised some level of control over the transaction in the transaction out of which plaintiff's injury arises. *See In re Sumitomo Copper Lit., 120 F. Supp. 2d at 336; Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998); Kinetic Instruments, 802 F. Supp. at 984; Kreutter, 71 N.Y.2d at 467*.

In the instant case, Plaintiff has alleged that Merkenich has complete control over the CFC entities, including the New York based CFC Securities, which hired Plaintiff, [*39] and that the CFC entities acted in Merkenich's interest. He has also alleged that Merkenich participated in the negotiation and execution of his employment contract in New York, as well as Plaintiff's constructive termination. Thus, the corporations transacting business in New York acted as Merkenich's agent because they acted with Merkenich's knowledge and consent, and in his interest. Plaintiff further alleges that Merkenich has substantial connections to New York, including maintaining an office in New York, frequently visiting New York, and acting as a director of a New York corporation. Thus, Merkenich is amenable to personal jurisdiction in New York, under Section

302(a)(1).

## C. Forum Selection Clause

Plaintiff also argues that personal jurisdiction over Defendants exists as a result of the forum selection clause contained in his employment contract. *See* Complaint P 17. The employment agreement states that "New York law in New York courts governs this agreement." *See* Dagen Aff., Ex. C, at 2. Defendants contend that this clause does not exclude other forums, and is permissive rather than mandatory. *See* Def. Mem. at 23-24. They also claim that even if the Court [*40] were to rule that they consented to personal jurisdiction in New York by including the forum selection clause in the contract, since only two of the Defendants were parties to the contract, it does not establish jurisdiction over the others. Finally, Defendants argue that the forum selection clause is unenforceable even against the parties to the employment contract, because enforcement would be "unreasonable and unjust."

Under New York law, a forum will not be considered the exclusive forum for litigation unless parties have demonstrated their clear intent to have it be the exclusive forum. *See John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distribs. Inc., 22 F.3d 51, 52 (2d Cir. 1994)* (An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.); *see also Bombardier Capital Inc. v. Solomon, No. 00 Civ. 0848(RMB), 2000 U.S. Dist. LEXIS 16711, 2000 WL 1721138, at **11-12 (S.D.N.Y. Nov. 17, 2000); Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 57-58 (S.D.N.Y. 2001)*. However, even where a non-exclusive forum selection provision is [*41] included in a contract, the parties to the contract shall be deemed to have consented to jurisdiction in the referenced forum, although not to the exclusion of all other fora. *See Nat'l Union Fire Ins. Co. of Pittsburg, P.A. v. Frasch, 751 F. Supp. 1075, 1078 (S.D.N.Y. 1990)*(holding that a permissive forum selection provision in a contract constitutes consent to the jurisdiction of the chosen forum); *see also Boutari, 22 F.3d at 53*.

In this case, the employment contract's language is not sufficiently precise so as to confer exclusive jurisdiction in New York. It merely states that "New York law in New York courts" shall govern the agreement. Although the meaning of this language with

2002 U.S. Dist. LEXIS 25767, *41
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

respect to forum selection is not entirely clear, it is sufficient to support a *prima facie* showing that its signatories, CFC Group and CFC Securities, Inc., consented to personal jurisdiction in New York. The other CFC entities, may also be deemed bound by the forum selection clause if, as Plaintiff has alleged, they are not distinct from CFC Group.

Finally, Defendants' assertion that enforcement of the forum selection clause would be "unreasonable or unjust," [*42] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513 (1972), has no relevance. The Court is not enforcing the forum selection clause, but merely referring to it as evidence of Defendants' consent to personal jurisdiction in New York. In any event, enforcement of the provision would not be unjust. *See* discussion, *infra* at 38-47.

### D. Due Process

In addition to satisfying the requirements of New York's long-arm statute, Plaintiff must show that the Defendants have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95(1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)); *see also Wiwa*, 226 F.3d at 99. A plaintiff must show that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958); [*43] *see also Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 108-09, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985).

Defendants have not argued that the assertion of personal jurisdiction over them in New York would offend due process, nor could they reasonably do so. As discussed above, Defendants here are alleged to have "done," as well as "transacted" business in New York, including negotiating, signing, and partially performing Plaintiff's employment contract in New York. They are also alleged to maintain offices in New York and conduct financial transactions here. The contacts alleged by Plaintiff are clearly sufficient to conclude that the assertion of personal jurisdiction over the Defendants

would not offend standards of constitutional due process.

****

Thus, Plaintiff has made a *prima facie* showing that this Court has personal jurisdiction over all Defendants, under N.Y.C.P.L.R. 301, N.Y.C.P.L.R. 302(a)(1), and by consent pursuant to the permissive forum selection clause contained in Plaintiff's employment contract. Accordingly, [*44] the Court recommends that Defendants' motion to dismiss for lack of personal jurisdiction be denied.

### III. Insufficient Service of Process

Defendants also contend that this action should be dismissed for insufficient service of process, pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Defendants claim that the Court does not have jurisdiction over them because only CFC Securities Inc., in New York, was properly served by Plaintiff. According to Defendants, Plaintiff's service of process was defective, since service by mail is not available in Hong Kong under the Hague Convention. Alternatively, Defendants claim that Plaintiff's summonses were improperly sent to the six Hong Kong Defendants by Federal Express, rather than registered post through official channels, and by a process server, rather than the Clerk of the Court. *See* Def. Mem. at 17-19. In addition, Defendants contend that no summons or Complaint at all, much less one translated into French or German, as required by the Hague Convention, was sent to CFC Securities, S.A. in Switzerland. *See id.* at 18. In fact, Defendants claim that the only non-New York Defendant to receive service was Boris [*45] Merkenich, who received a single Federal Express mailing in Hong Kong, which contained six copies of the Complaint. *Id.*

Plaintiff concedes that Defendants CFC Group, CFC Asia, CFC Technology, CFC Securities Holdings Ltd., CFC Asset Management, and Merkenich were served by sending a Federal Express package containing a summons and six copies of the Complaint to Merkenich in Hong Kong, but claims that such service is proper under New York law and the Hague Convention. Moreover, Plaintiff contends that the parcel was sent by the Clerk of the Court. Finally, Plaintiff claims that the translation of the summons and Complaint into French or German was not required, since a representative of CFC Securities, S.A. accepted delivery voluntarily.

2002 U.S. Dist. LEXIS 25767, *45
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

Service of process upon a foreign party is governed by Rule 4(f) of the Federal Rules of Civil Procedure, which cross-references to the Hague Convention On the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), 20 U.S.T. 361, 1969 U.S.T. Lexis 152 (1969). Rule 4(f) provides, in pertinent part:

"Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained [*46] and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ...."

Fed. R. Civ. P. 4(f).

Defendants point to Hong Kong's objections (through China) to sub-paragraphs (b) and (c) of Article 10 of the Hague Convention as invalidating Plaintiff's method of service. However, in serving the Hong Kong Defendants, Plaintiff relied on Article 10(a) of the Hague Convention, which has not been objected to by Hong Kong. Article 10(a) states that, "the present Convention shall not interfere with (a) the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. 361, 1969 U.S.T. Lexis 152 (1969). Since the Second Circuit has interpreted "send" to include "service," Article 10(a) can be read to allow parties to serve process on foreign defendants through "postal channels." See *Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir. 1986)("reaching the 'inescapable' [*47] conclusion that use of 'send' rather than the otherwise consistently used 'service' 'must be attributed to careless drafting.'")(citing 1b. Ristau, International Judicial Assistance (Civil and Commercial) § 4-10 at 132 (1984)); *Silver Top Ltd. v. Monterey Indus. Ltd.,* No. 94 Civ. 5731(LMM), 1995 U.S. Dist. LEXIS 1981, 1995 WL 70599, at *2 (S.D.N.Y. Feb. 21, 1995). Therefore, direct service by mail, rather than through a Central Authority, is valid service on a corporation in Hong Kong.

Moreover, it was not improper to serve Defendants

by Federal Express rather than by regular mail. [9] "Service is constitutionally valid if it is in itself reasonably certain to inform those affected." *Silver Top Ltd.,* 1995 U.S. Dist. LEXIS 1981, 1995 WL 70599, at *2 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950)) (internal citations omitted); *see also Ackermann,* 788 F.2d at 841. The distinction between service through "postal channels" and Federal Express is not meaningful because Federal Express delivery through a courier is no less secure than regular mail. *See, e.g., R. Griggs Group Ltd. v. Filanto SPA,* 920 F. Supp. 1100, 1104-1107 (D. Nev. 1996) [*48] (denying a motion to dismiss for improper service where defendant was served by Federal Express under Article 10(a) of the Hague Convention); *EOI Corp. v. Med. Mktg., Ltd.,* 172 F.R.D. 133, 143 (D.N.J. 1997)(holding that mailing of the summons and complaint to the defendant corporation's office at the corporation's offices in Italy via Federal Express was sufficient notice and proper service under the Hague Convention); *compare Casio Computer Co. v. Sayo,* No. 98 Civ. 3772 (WK), 2000 U.S. Dist. LEXIS 15411, 2000 WL 1877516, at *28 (S.D.N.Y. Oct. 13, 2000)(express mail delivery by overnight courier was not a proper form of service because Japan had objected to service of process by postal channels under the Hague Convention). Furthermore, it appears that, contrary to Defendants' assertion, the Clerk of the Court did effect the Federal Express mailing to Hong Kong; Plaintiff's process server was merely listed as the shipper for tracking purposes. *See* Affidavit of Andrew Bartley, dated Feb. 8, 2001, PP 5-10 and Ex. 4.

9  Defendants have not argued that they have not received notice of the action, nor do they argue that it was improper to serve them through Merkenich. They merely claim that the manner in which the summonses and Complaints were sent to Merkenich was improper.

[*49]  As for the Swiss Defendant, CFC Securities S.A., Plaintiff contends that it was properly served through the Central Authority in Switzerland, as required by the Hague Convention. Defendants' contention that there was no service on CFC Securities, S.A. in Switzerland is belied by the receipt of delivery attached to the affidavit of Andrew Bartley, indicating that such service was accepted voluntarily by Thierry Berguerand, Chief Operating Officer of CFC Securities, S.A. *See* Request for Service Abroad of Judicial or Extrajudicial

2002 U.S. Dist. LEXIS 25767, *49
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

Documents, attached as Exhibit 5 to Barley Aff. Defendants' argument that the Hague Convention requires the translation of documents is also without merit. Although translation of a summons into the official language of the foreign State *may* be required under Article 5 of the Hague Convention, Switzerland does not require translation where service is accepted voluntarily. *See* Hague Convention, Reservations and Declarations of Switzerland P 3.

In conclusion, Defendants have not shown that they were not properly served, and their motion to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure should be denied.

### IV. Forum Non [*50] Conveniens

Defendants argue that this action should be dismissed under the doctrine of *forum non conveniens*. They contend that this action should have been brought in Hong Kong, since most of the acts complained of in the Complaint took place in Hong Kong, and since the witnesses and documents required for trial are located principally in Hong Kong. Moreover, Defendants indicate that they would consent to jurisdiction in Hong Kong, should the action be brought there.

Plaintiff, on the other hand, contends that the action should be heard in New York since key witnesses and documents are located in New York, the Plaintiff and two of the Defendants are American, and because deference should be given to both Plaintiff's choice of forum and the forum selection clause contained in Plaintiff's employment contract.

Plaintiffs are generally granted great deference in their selection of a forum for the litigation of their suit. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 242, 102 S. Ct. 252, 259, 70 L. Ed. 2d 419 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947); *Murray v. British Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996); [*51] *Wiwa*, 226 F.3d at 88. The deference increases "where an American plaintiff brings suit against a foreign entity and the alternative forum is foreign." *David Tunick, Inc. v. Kornfeld*, 813 F. Supp. 988, 992 (S.D.N.Y. 1993); *see also Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S. Ct. 828, 832, 91 L. Ed. 1067 (1947). [10] However, when a United States plaintiff sues in a United States forum different from the one in which he resides, "the degree of deference to be given to a plaintiff's choice of forum

moves on a sliding scale depending on several relevant considerations." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to plaintiff's forum choice." *Id. at 71-72*. Under this analysis, the Second Circuit has indicated that "the factors that argue against *forum non conveniens* dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses [*52] or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Id. at 72*. In contrast, the more it appears that the plaintiff's choice of a U.S. forum was made for a tactical advantage, or the inconvenience or expense to the defendant resulting from litigation in that forum, less deference is due to plaintiff's choice of forum. *See id.*

> 10    Defendant's rely on a statement in *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs., Inc.*, 949 F. Supp. 1123, 1131 (S.D.N.Y. 1997), which diminishes the presumption given to a plaintiff's choice of forum if the plaintiff, or the real parties in interest, are foreign. (Def. Mem. at 22.) This principle, however, is inapposite, as Plaintiff in the instant case is American, and is suing in his home forum. The "home forum" of an American citizen for *forum non conveniens* purposes is any United States court. *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 62 (2d Cir. 2000).

[*53] Although, in the instant case, Plaintiff is an American citizen suing in a district in which he does not reside, considerable deference must still be accorded to his choice of forum. Plaintiff's reasons for filing this action in the Southern District of New York are the type of *bona fide* reasons contemplated by the Second Circuit in *Iragorri*, 274 F.3d at 72: (1) Defendants' amenability to suit in the Southern District of New York, rather than in Plaintiff's home district; (2) the availability of witnesses and documentary evidence in New York; and, (3) the existence of a forum selection clause that refers to New York. Moreover, the action, and Defendants themselves, have significant contacts with New York. *Id.*

Defendants can rebut the presumption in favor of

2002 U.S. Dist. LEXIS 25767, *53
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

Plaintiff's choice of forum with strong evidence that a change of forum is necessary for a fair and judicious trial. *See Koster, 330 U.S. at 524, 67 S. Ct. at 831-32.* Initially, Defendants must establish that there is an adequate alternative forum, and then demonstrate, based upon relevant public and private interest factors, that the balance of convenience tips strongly in favor of trial [*54] in the alternative forum. *See Iragorri v. Int'l Elevator, Inc.,* 243 F.3d 678, 680 (2d Cir. 2001); *Jacobs v. Felix Bloch,* 160 F. Supp. 2d at 742; *see also Gilbert,* 330 U.S. at 506-07; *Wiwa,* 226 F.3d at 100; *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 46 (2d Cir. 1996). A court must apply a strong presumption in favor of the plaintiff's chosen forum when weighing the public and private interest factors favoring each location, and in close cases should defer to plaintiff's choice of forum. *See Gilbert,* 330 U.S. at 508, 67 S. Ct. at 839; *DiRienzo,* 232 F.3d at 62.

Defendants have satisfied the first prong of the *forum non conveniens* test--requiring that an alternate forum exist--by representing that they would consent to jurisdiction in Hong Kong were the action in the United States dismissed. *See Def. Mem. at 21-22; see also Murray,* 81 F.3d at 292. [11] However, they cannot satisfy the second prong by showing that Hong Kong is a more convenient forum, and that allowing the action to proceed there would better serve the interests of justice.

> 11 Moreover, Plaintiff does not dispute that this action could be brought in Hong Kong, and acknowledges that two actions involving some of the same parties are currently being litigated in that forum.

[*55] *A. The Private Interest Factors*

In *Gilbert,* the Supreme Court outlined the private interest factors that should play a role in a court's analysis. These factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; 3) the possibility of viewing the premises, if viewing them would be appropriate to the action; 4) all other practical problems that make trial of a case easy, expeditious and inexpensive; and 5) questions as to the "enforceability of a judgment if one is obtained." 330 U.S. at 508-09, 67 S. Ct. at 839; *see also Piper Aircraft,* 454 U.S. at 241, n.65, 102 S. Ct. at 258, n.6; *DiRienzo,* 232 F.3d at 63.

Here, Defendants' claim that a trial in Hong Kong would provide the greatest ease of access to the essential sources of proof. *See Def. Mem. at 25.* They claim that all of the acts giving rise to Plaintiff's claims of breach of his employment contract occurred in Hong Kong, and therefore, all relevant documents and witnesses are in Hong Kong. *See id. at 25-26.* However, Plaintiff contends [*56] that the key documents will be available through CFC's New York-based company, and that those available in Hong Kong will not be so voluminous as to present undue hardship. Moreover, Plaintiff claims that two of the three main witnesses in this action are located in the United States--himself and Domney. [12] Given the conflicting assertions on this issue, and the fact that there has not yet been discovery in this action, the Court cannot conclude that this factor tips strongly in Defendants' favor.

> 12 According to Plaintiff, the other main witness would be Merkenich, who, as a Defendant, would have an independent interest in appearing.

Next, Defendants point to the disruption to their business and the prohibitive cost of obtaining the attendance of willing witnesses in New York, as reasons to dismiss this action in favor of a Hong Kong forum. *See Def. Mem. at 28-29.* Defendants identify nine Hong Kong-based witnesses they plan on calling. *See id. at 26-27.* Plaintiff questions whether most of these witnesses [*57] have any relevant information, *see Pl.'s Mem. at 23,* and identifies two witnesses from New York, in addition to himself and Domney, that he intends to call at trial. Thus, "wherever the trial takes place, witnesses will be forced to travel to provide testimony." *Peregrine,* 89 F.3d at 46-47; *see also ESI, Inc. v. Coastal Corp.,* 61 F. Supp. 2d 35, 37 (S.D.N.Y. 1999). Again, the parties' conflicting contentions and their inability, at this early stage in the litigation, to demonstrate who the actual witnesses at trial will be, precludes the Court from concluding that Defendants' cost and inconvenience would so greatly outweigh Plaintiff's so as to justify depriving Plaintiff of his chosen forum.

Defendants next contend that the expense and length of the process for compelling unwilling witnesses to appear in New York make New York such an inconvenient forum as to render it unavailable. *See Def. Mem. at 28-29.* However, they do not contest that such process is available in the United States. Their argument is further undermined if one considers the list of foreign

2002 U.S. Dist. LEXIS 25767, *57
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

witnesses whom they consider crucial. Of the nine individuals they list, only one [*58] is neither a Defendant nor an employee of Defendants. Thus, there would only be a minimal need for Defendants to compel the attendance of unwilling witnesses. In contrast, Plaintiff does not appear to have any control over his New York witnesses, and it is doubtful that they could be compelled to appear in Hong Kong.

Finally, Defendants claim that, should the trial be held in New York, Plaintiff would have difficulty in enforcing any judgment he might secure. *See* Def. Mem. at 29. If true, one would think that Plaintiff would share this concern. In any event, because one of the key defendants, CFC Securities Inc., is a New York company, the claim that any judgment obtained in New York would be difficult to enforce carries little weight.

In sum, the private interests in issue cannot be said to weigh strongly in Defendants' favor.

### B. The Public Interest Factors

The *Gilbert* court also outlined four public interest factors for courts to weigh in the *forum non conveniens* inquiry: (1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the "local interest in having [*59] localized controversies decided at home;" and (4) avoiding difficult problems in conflict of laws and the application of foreign law. *See Gilbert,* 330 U.S. at 509, 67 S. Ct. at 839.

Defendants point to the administrative difficulties flowing from court congestion in New York as a public interest factor to be considered by the Court. Since Defendants contend that all of the acts at issue in this case took place in Hong Kong, they argue that a Hong Kong court would not face the obstacles that would slow a New York proceeding. *See* Def. Mem. at 29-30. The court congestion factor has been consistently downplayed in Second Circuit decisions. *See, e.g., Guidi v. Inter-Continental Hotels Corp.,* 224 F.3d 142, 146, n.5 (2d Cir. 2000) (noting that the recent filling of judicial vacancies in the Southern District of New York make the concern regarding court congestion of little or no present significance). Moreover, Defendants fail to make clear what it is they contend will cause the "inevitable" delay in New York, rather than in Hong Kong. *See* Def. Mem. at 30.

Defendants make a strong argument that this is a Hong Kong dispute, most of the Defendants [*60] are based in Hong Kong, and many of the events in issue took place in Hong Kong. They thus argue that a trial in Hong Kong would further the public interest in having localized controversies decided at home, and would relieve a New York jury of the burden of having to adjudicate a case unrelated to its home forum. However, Plaintiff is an American citizen who negotiated, signed, and partially performed his employment contract in New York. Thus, New York and a New York jury also have a legitimate interest in adjudicating this dispute. *Cf. Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir. 1998)*(a contract that was substantially negotiated and signed in New York, and was governed by New York law, suggests that New York is the proper venue for an action under the contract).

Finally, Defendants argue that in order to avoid a court having to deal with conflict of laws issues, this case should be moved to Hong Kong, because Hong Kong law will be applied to many of the claims. While it is true that some of Plaintiff's non-contractual claims potentially present the Court with a set of complex conflict of laws questions, and might require [*61] it to apply foreign law, this fact alone is insufficient to overcome the presumption in favor of Plaintiff's choice of forum. *See Peregrine,* 89 F.3d at 47 ("Even if this case raises complicated choice of law questions and requires the exclusive application of foreign law as suggested by Segal, 'it is well-established that the need to apply foreign law is not alone sufficient to dismiss under the doctrine of forum non conveniens.'") (quoting *R. Maganlal & Co. v. M.G. Chemical Co.,* 942 F.2d 164, 169 (2d Cir. 1991)); *see also Boosey,* 145 F.3d at 492. Moreover, it appears that a Hong Kong court would be required to apply New York law with respect to most of Plaintiff's claims. Plaintiff's employment agreement states that it is governed by "New York law in New York courts." Thus, it appears that New York law governs at least Plaintiff's contract claims. *See* Dagen Aff., Ex. C at 2.

In sum, having weighed the public and private interest factors, this Court concludes that Defendants have failed to overcome the presumption in favor of Plaintiff's choice of forum; they have not shown that a trial in New York is inappropriate or would cause [*62] "oppressiveness and vexation ... out of all proportion to plaintiff's convenience." *Koster,* 330 U.S. at 524, 67 S. Ct. at 831-832; *see also Piper,* 454 U.S. at 241, 102 S.

2002 U.S. Dist. LEXIS 25767, *62
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

Ct. at 258. Accordingly, I recommend that Defendants' motion to dismiss the Complaint pursuant to the doctrine of *forum non conveniens* be denied.

### IV. Failure to State a Claim

Defendants contend that Plaintiff has failed to state a claim upon which relief may be granted, and seek to have the Complaint dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend that each of Plaintiff's nine causes of action should be dismissed against all Defendants.

Dismissal of a complaint for failure to state a claim is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *ICOM Holding, Inc. v. MCI Worldcom, Inc.,* 238 F.3d 219, 221 (2d Cir. 2001) (quoting *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir. 1999)). "At the Rule 12(b)(6) stage, the issue is not whether a plaintiff is likely to prevail ultimately, [*63] but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir. 2000) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998) (quotation marks omitted)).

In deciding a 12(b)(6) motion to dismiss, a court must construe the allegations of the complaint in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *see also Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,* 155 F.3d 59, 67 (2d Cir. 1998); *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir. 1996); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994).

In order to survive a motion to dismiss, Rule 8(a) of the Federal Rules of Civil Procedure requires only that a plaintiff "give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.,* No. 00-1853, 534 U.S. 506, 152 L. Ed. 2d 1, 122 S. Ct. 992, 2002 WL 261807, at *4 (Feb. 26, 2002) [*64] (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant

can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56." *Id.,* 534 U.S. 506, [WL] at *5. Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir. 1996)(citing *Palda v. Gen. Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir. 1995)); *see also Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995).

In deciding a motion to dismiss, a court may properly consider the complaint and all appended papers. *See Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes [*65] of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). However, with respect to Rule 12(b)(6) motions, a court may not consider factual matters submitted outside of the complaint unless the parties are given notice that the motion to dismiss is being converted to a motion for summary judgment under Rule 56, and are afforded an opportunity to submit additional affidavits. *See Festa v. Local 3 Int'l Bhd. of Elec. Workers,* 905 F.2d 35, 38 (2d Cir. 1990). The Court addresses Defendants' arguments relating to each cause of action in turn.

### A. Count One-Breach of Contract

Plaintiff's first cause of action alleges that Defendants CFC Group and CFC Securities, Inc. breached their contract with Plaintiff by, "*inter alia,* failing to insure that CFC Securities Hong Kong [was] in compliance with all applicable law, thereby making it impossible for Plaintiff to perform." Complaint P 48. Defendants contend that Count One of Plaintiff's Complaint must be dismissed because they were in compliance with all applicable laws. In addition, Defendants [*66] argue that Plaintiff has failed to allege any specific law with which they were not in compliance, and to cite any provision of his employment contract relating to an obligation to comply with applicable laws.

It is well-settled under New York law that to establish a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract; (2) breach by the other party; and (3) damages suffered as a result of the breach. *See Terwilliger v. Terwilliger,* 206 F.3d 240, 245-46 (2d Cir. 2000). In

2002 U.S. Dist. LEXIS 25767, *66
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

pleading such a claim, a plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue. *See Americorp Fin., Inc. v. St. Joseph's Hosp. Health Ctr., 180 F. Supp. 2d 387, 390 (N.D.N.Y. 2001); Levy v. Bessemer Trust Co., N.A.,* No. 97 Civ. 1785(JFK), 1997 U.S. Dist. LEXIS 11056, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997).

The Complaint in the instant case fails to articulate which applicable laws were purportedly violated, and how their violation resulted in a breach of Plaintiff's employment contract. [*67] In the Complaint's summary of facts, Plaintiff alleges a number of illegal actions taken by Defendant Merkenich. For instance, Plaintiff alleges that Merkenich made false representations regarding CFC Group to prospective customers of CFC Securities Asia. *See* Complaint P 39. Plaintiff further alleges that Merkenich made kickback payments to customers of CFC and engaged in questionable tax activities on behalf of the CFC companies. *See* Complaint PP 40-41. These allegations have no apparent relevance to a breach of Plaintiff's employment contract by Defendants CFC Group and CFC Securities, Inc. Moreover, there is no way to know if these acts are the violations of law referred to in Count One, because Plaintiff does not explain how these acts violated any provision of Plaintiff's contract or prevented him from performing his duties under the employment contract.

Thus, by failing to state what laws Defendants CFC Group and CFC Asia violated, and how these violations caused a breach of Plaintiff's employment contract, the breach of contract claim contained in Count One of the Complaint fails to state a claim for which relief can be granted.

In his memorandum of law, Plaintiff [*68] asserts that this claim is, in fact, merely an element of a constructive discharge claim. Even assuming that a constructive discharge claim were properly asserted in the Complaint, [13] Count One would fail to state a claim for which relief can be granted. Under New York law, "constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Kader v. Paper Software, Inc.,* 111 F.3d 337, 339 (2d Cir. 1997)(internal quotation omitted); *see also Spence v. Maryland Cas. Co.,* 995 F.2d 1147, 1156

(2d Cir. 1993); *Stetson v. NYNEX Serv. Co.,* 995 F.2d 355, 360 (2d Cir. 1993); *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir. 1987). Moreover, "constructive discharge requires deliberate action on the part of the employer." *Whidbee v. Garzarelli Food Specialists, Inc.,* 223 F.3d 62, 74 (2d Cir. 2000); *see also Mercury Air Group, Inc. v. Perez,* No. 00 Civ. 2975 (HB), 2001 U.S. Dist. LEXIS 805, 2001 WL 88228, at *3 (S.D.N.Y. Jan. 31, 2001).

13 Plaintiff states in the summary of facts in his Complaint that Merkenich, acting on his own behalf and on behalf of all Defendants, made it impossible for Plaintiff to perform his duties, and therefore, constructively terminated Plaintiff. *See* Complaint P 43. Plaintiff has failed, however, to plead constructive termination as an independent cause of action; rather, he now suggests that his constructive discharge claim was the result of all of Defendants' wrongful acts asserted in his Complaint.

[*69] Here, Plaintiff has failed to assert that any of Defendants' alleged violations of law were intended to create an intolerable working environment for him. Moreover, it is not reasonable to infer that Defendants engaged in violations of law that placed their companies in jeopardy simply to force Plaintiff to resign. [14]

14 Even if Plaintiff could make out a claim based upon these allegations, they are so vague as to make it impossible for Defendants to answer. *See* Swierkiewicz, 122 S. Ct. 992, 2002 WL 261807, at *4.

It follows that Defendants' motion to dismiss Count One of the Complaint should be granted. Plaintiff should, however, be granted leave to replead, if he can in good faith assert an independent claim arising out of Defendants' purported breaches of law. [15]

15 Unless amendment would be futile, "it is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir. 1991); *see also In re Deutsche Telekom AG Securities Litigation,* No. 00 Civ. 9475 (SHS), 2002 U.S. Dist. LEXIS 2627, 2002 WL 244597, at *8 (S.D.N.Y. Feb. 20, 2002). "Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying

2002 U.S. Dist. LEXIS 25767, *69
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

reason is an abuse of discretion." *Cortec, 949 F.2d* at 48.

[*70] *B. Count Two-Breach of Contract*

Plaintiff's second breach of contract claim, against Defendants CFC Group and CFC Securities, Inc., stems from their termination of his apartment lease. Plaintiff alleges that this action breached his employment agreement, which provided for a housing allowance for Plaintiff. *See* Complaint P 53. Defendants argue, as Plaintiff recognizes, that the Complaint itself avers that the employment agreement provided for a housing allowance, not a lease. *See* Def. Mem. at 33-34. Therefore, they argue that the breach of contract claim asserted in Count Two of the Complaint should be dismissed because it fails to allege how the termination of Plaintiff's apartment lease violated any term of Plaintiff's contract. *Id.* at 34.

Construing the allegations of Count Two in Plaintiff's favor, one might surmise that the termination of Plaintiff's lease in effect resulted in a loss of his housing allowance. Nevertheless, neither the Defendants nor the Court should be left to speculate about the meaning of the allegations in Count Two. Accordingly, I recommend that Count Two be dismissed, without prejudice to replead.

*B. Count Three-Breach of Contract*

[*71] Plaintiff's final breach of contract claim alleges that when Merkenich terminated Plaintiff's registrations for his Series 3, Series 7, Series 24 and Series 63 licenses with the NASD, CFC Group and CFC Securities, Inc. breached the terms of the employment agreement. *See* Complaint P 58. The employment agreement required defendants to "obtain required licencing and registrations" for CFC Asia and Plaintiff. *See id.* P 23. Defendants respond to this claim by arguing that CFC did, in fact, obtain necessary licensing for Plaintiff as promised in the employment agreement. Moreover, they contend that, under the contract, they were not required to maintain Plaintiff's licenses, simply to obtain them. *See* Def. Mem. at 34-35.

It is certainly reasonable to infer that the duty to obtain licenses for CFC Asia and Plaintiff included a duty to maintain the licenses. Construing the Complaint liberally, Defendants' argument, at most, raises a matter of contract interpretation and issues of fact that cannot be

resolved on a motion to dismiss. Accordingly, I recommend that the motion to dismiss Count Three be denied.

*D. Count Four-Breach of the Duty of Good Faith and Fair Dealing*

[*72] The Court agrees with Defendants' contention that the fourth count of the Complaint is conclusory and incomplete, failing to allege how Defendants CFC Group and CFC Securities, Inc. allegedly breached their duty of good faith and fair dealing. *See* Complaint P 63. [16] The Court, and Defendants, are thus left to surmise the basis for this cause of action, which they cannot do.

> 16 In fact, this is true on more than one level, as Plaintiff even fails to complete a critical sentence in this section. *See* Complaint P 63 ("Defendants breached their duty of good faith and fair dealing by").

In any case, a claim of breach of the duty of good faith and fair dealing is "merely a breach of the underlying contract." [17] *Fasolino Foods Co. v. Banca Nazionale Del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992). Where the same facts are alleged in support of a claim of breach of contract and a breach of the duty of good faith and fair dealing, the latter claim cannot stand because the "cause of action alleging [*73] breach of good faith is duplicative of a cause of action alleging breach of contract." *OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc.,* 952 F. Supp. 120, 124 (N.D.N.Y. 1997)(*quoting Apfel v. Prudential-Bache Sec. Inc.,* 183 A.D.2d 439, 583 N.Y.S.2d 386, 387 (1st Dep't 1992); *see also Alter v. Bogoricin,* No. 97 Civ. 0662(MBM), 1997 U.S. Dist. LEXIS 17369, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997). Plaintiff recognizes the redundancy, but pleads breach of good faith in the event that his breach of contract claims fail. *See* Pl.'s Mem. at 34. However, Plaintiff pleads no additional grounds for his claim of breach of good faith. Therefore it would not be possible to fail on the breach of contract claims, but succeed on a breach of the duty of good faith claim arising from the same acts. *See Alter,* 1997 U.S. Dist. LEXIS 17369, 1997 WL 691332, at *8.

> 17 A plaintiff claiming a breach of the covenant of good faith and fair dealing must show: (1) fraud, (2) malice, (3) bad faith, (4) other intentional wrongdoing, or (5) reckless indifference to the rights of others such as gross

2002 U.S. Dist. LEXIS 25767, *73
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

negligence. *See T.P.K. Constr. Corp. v. Southern American Ins. Co., 752 F. Supp. 105, 112 (S.D.N.Y.1990) (citing Kalisch-Jarcho, Inc. v. New York, 58 N.Y.2d 377, 461 N.Y.S.2d 746, 748, 448 N.E.2d 413 (1983)).*

[*74] Accordingly, this claim should be dismissed pursuant to Rule 12(b)(6), with leave to replead, if Plaintiff can, in good faith, assert an independent claim for the breach of the duty of good faith and fair dealing based upon facts distinct from those relied upon in his breach of contract claims.

*E. Counts Five and Six-Intentional Interference With Contractual Relations*

In Count Five of the Complaint, Plaintiff alleges that Defendant Merkenich, acting on his own and through the CFC companies, interfered with Plaintiff's contract with CFC Group and CFC Securities, Inc. In Count Six, Plaintiff contends that CFC Asia interfered with his employment agreement with CFC Group and CFC Securities, Inc. [18] Defendants contend that Plaintiff's claim for intentional interference with contractual relations must be dismissed because he improperly alleges that Defendants interfered with a contract to which they are alleged to be parties. Plaintiff responds that the claim is properly asserted in the alternative, in the event that the Court determines that the non-signatories to the contract are not parties to the contract, as alter egos of the CFC Group and CFC Securities, Inc.

> 18 Although Plaintiff was hired to work for CFC Asia, it was not a signatory to Plaintiff's employment contract.

[*75] It is well-established that a plaintiff may not bring a claim for intentional interference with contractual relations against a party to the contract in question. [19] *See Finley v. Giacobbe, 79 F.3d 1285, 1295 (2d Cir. 1996); Israel v. Wood Dolson Co., 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97 (1956).* However, Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to "plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994).* [20]

> 19 Thus, no intentional interference with contractual relations claim is asserted against Defendants CFC Group and CFC Securities, who,

as signatories, are clearly parties to Plaintiff's employment contract.

> 20 Rule 8(e)(2) of the Federal Rules of Civil Procedure states, in relevant part, "[a] party may also state as many separate claims and defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Thus, Plaintiff is allowed to plead his theory of intentional interference with contractual relations in the alternative to his breach of contract claims. *See Alter, 1997 U.S. Dist. LEXIS 17369, 1997 WL 691332, at *12 (plaintiff pleads both tortious interference with his employment contract and breach of contract).* Even when allegations are not specifically pleaded as "in the alternative," Rule 8(e)(2) offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party, as the Court must do in considering a motion to dismiss. *See Adler v. Pataki, 185 F.3d 35, 41 (2d Cir. 1999); MacFarlane v. Grasso, 696 F.2d 217, 224-25 (2d Cir. 1982).*

[*76] Although Plaintiff has alleged that the CFC corporations are the alter egos of Merkenich, *see* Complaint P 11, Plaintiff contends, in Counts Five and Six of the Complaint, that if his alter ego theory is rejected, then CFC Asia and Merkenich, acting both as an individual and through the CFC companies, interfered with Plaintiff's employment contract with CFC Group and CFC Securities. *See* Complaint P 66. Moreover, Defendants contest Plaintiff's assertion that all the corporate Defendants are alter egos of Merkenich, and they argue that they are not parties to Plaintiff's employment contract. *See* Def. Mem. at 15. Accordingly, Plaintiff may plead intentional interference with contractual relations as an alternative ground for recovery.

Next, Defendants contend that the intentional interference claim against Defendant Merkenich should be dismissed, since, as a principal of CFC Group Holdings, Merkenich cannot be alleged to interfere with his own company's contract. *See* Def. Mem. at 37. In New York, officers, directors or employees of a corporation cannot be personally liable for inducing the corporation to breach a contract with a third party if they act on behalf of the [*77] corporation and within the

2002 U.S. Dist. LEXIS 25767, *77
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

scope of their duties. *See Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 Civ. 10315 (SAS), 2000 U.S. Dist. LEXIS 4252, 2000 WL 351516, at *7, n.9 (S.D.N.Y. Apr. 5, 2000); *Bon Temps Agency Ltd. v. Mittman*, 688 N.Y.S.2d 43, 44, 260 A.D.2d 191, 191-92 (1st Dep't 1999); *Nu-Life Constr. Corp. v. Bd. of Educ.*, 611 N.Y.S.2d 529, 530, 204 A.D.2d 106, 107 (1st Dep't 1994). Personal liability will be imposed only if the plaintiff shows that the officer or employee acted outside the scope of his employment by committing an independent tort or by pursuing a personal interest. *See Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 587, 665 N.E.2d 153 (1996); *Nu-life*, 611 N.Y.S.2d at 530, 204 A.D.2d at 107. Here, Plaintiff asserts that Merkenich undertook actions "on his own behalf and on behalf of [the corporate Defendants]" which resulted in a breach of Plaintiff's employment contract. *See* Complaint PP 30-44. Thus, it is alleged that Merkenich acted in his personal capacity, and not solely in his capacity as a principal of CFC Group Holdings. Moreover, by alleging Merkenich's ownership [*78] and control of the CFC entities, Plaintiff has indicated that Merkenich had a personal interest in Plaintiff's contract.

Finally, Defendants claim that Plaintiff's claim should be dismissed because he has failed to plead the required elements of knowledge and intent. *See* Def. Mem. at 37. The elements of intentional interference with a contract under New York law are, "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 330 (S.D.N.Y. 2000) (quoting *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993)).

While it may be true that Plaintiff's allegations of intentional interference are imprecise, inasmuch as the Complaint cites interference "by use of means that are dishonest, unfair or otherwise improper," *see* Complaint PP 66, 69, construed liberally, they meet the requirements to survive a 12(b)(6) motion. Plaintiff has alleged sufficient [*79] facts for the Court to infer both knowledge of the contract and intent to interfere with the contract by Merkenich. First, it is undisputed that Merkenich signed Plaintiff's employment contract on behalf of CFC Group. He therefore must have had knowledge of Plaintiff's contractual relationship with the

CFC entities. Second, Plaintiff has alleged a course of conduct by Merkenich which, if true, could demonstrate an intent to interfere with Plaintiff's contract. *See* Complaint PP 12, 14, 38, 39, 41. Indeed, Plaintiff even alleges that Merkenich expressed his desire to terminate Plaintiff's employment. *See id.* P 32. Thus, the fifth count of the Complaint, alleging that Merkenich intentionally interfered with Plaintiff's contractual relations with CFC Group and CFC Securities, should not be dismissed with regard to Defendant Merkenich. Moreover, since CFC Asia was not a party to Plaintiff's contract, assuming Plaintiff can show that Merkenich acted in his capacity as CEO of CFC Asia, sufficient facts are alleged to infer knowledge and intent by CFC Asia as well.

With respect to the other corporate Defendants, in his memorandum of law, Plaintiff asserts that Defendants CFC International, [*80] CFC Technology, CFC Securities Holding, and CFC Asset Management interfered with his contract by forcing Plaintiff to resign as a director. *See* Pl.'s Mem. at 35. This directly contradicts the assertion Plaintiff makes in the Complaint that "Boris Merkenich, acting on his own behalf and on behalf of CFC Group and CFC Securities Asia, has taken actions to remove Plaintiff as a director of several CFC affiliated companies." Complaint P 36. Furthermore, nothing in Plaintiff's contract, which is referenced in the Complaint, entitles him to be a director of any CFC entity except CFC Asia.

Accordingly, Defendants' motion to dismiss Counts Five and Six of the Complaint should be granted as to Defendants CFC International, CFC Technology, CFC Securities Holding, and CFC Asset Management, and should be denied with respect to Defendants Merkenich and CFC Asia.

*F. Count Seven-Unjust Enrichment*

Defendants argue that Plaintiff's claim for unjust enrichment should be dismissed, since Plaintiff cannot claim damages under a quasi-contract theory while alleging the existence of a valid contract. Plaintiff argues that his claim for unjust enrichment is pled in the alternative, in the event [*81] that his breach of contract claims fail against one or more of the Defendants.

Defendants are correct in their assertion that a claim for unjust enrichment is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists. *See Reilly v. Natwest Mkts.*

2002 U.S. Dist. LEXIS 25767, *81
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

*Group, Inc.*, 181 F.3d 253, 262-63 (2d Cir. 1999)("Under New York law, the existence of an express contract governing a particular subject matter ordinarily precludes recovery in *quantum meruit* for events arising out of the same subject matter."); *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001); *New Paradigm*, 107 F. Supp. 2d at 329. However, this principle only applies when there is no dispute as to the existence, applicability, and validity of the contract in question. *See Bridgeway*, 132 F. Supp. 2d at 305; *New Paradigm*, 107 F. Supp. 2d at 329. Here, although Defendants agree that a valid employment contract existed between Plaintiff and Defendants CFC Group and CFC Securities, they do not agree that the other Defendants are parties to the contract. *See* Def. Mem. at 15. [*82] Therefore, with respect to Defendants CFC Asia, CFC Securities, S.A., and Merkenich, [21] Plaintiff may properly assert a claim based on a quasi-contractual theory. *See Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996)(allowing an unjust enrichment claim to be pled in the alternative to a breach of contract claim, where one Defendant disputed being a party to the contract).

> 21  Although, in his Complaint, Plaintiff does not specify which of the Defendants were allegedly unjustly enriched, in his memorandum of law he limits this claim to Defendants CFC Asia, Boris Merkenich, and CFC Securities, S.A.

Defendants also contend that Plaintiff has failed to plead sufficient facts to sustain a claim for unjust enrichment. The elements of unjust enrichment under New York law are that (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the defendant's retention of that benefit would be unjust. *See New Paradigm*, 107 F. Supp. 2d at 328-29. [*83] Plaintiff has alleged that he has not been fully paid for his work with CFC Asia, and that income earned by CFC Asia which should have been counted towards his bonus was improperly diverted from CFC Asia to CFC Securities, S.A. *See* Complaint PP 30-31. It is also claimed that CFC Asia, CFC Securities S.A. and Merkenich personally benefitted from these transfers and non-payments. As required, Plaintiff has also alleged that it would be unjust for CFC Securities Asia, CFC Securities S.A. and Merkenich to retain the benefits from their purported misdeeds. *Id.* at P 73. Based on the facts alleged in the Complaint, liberally construed, Plaintiff has stated a claim for unjust enrichment against Defendants

Merkenich, CFC Asia, and CFC Securities, S.A.

Accordingly, Defendants' motion to dismiss Plaintiff's claim of unjust enrichment should be denied.

## G. Count Eight-Breach of Fiduciary Duty

Plaintiff alleges that Merkenich breached his fiduciary duty to Plaintiff by perpetrating a kickback scheme and disseminating misinformation regarding CFC Securities Asia. Plaintiff claims that, as a director of CFC Securities Asia, Merkenich had a fiduciary duty toward him, as a 15% shareholder [*84] in the company. *See* Complaint PP 24, 77-79; Pl.'s Mem. at 37. Defendants argue that any action for breach of fiduciary duty must be brought as a derivative claim on behalf of the corporation, not as a personal claim by Plaintiff. *See* Def. Reply Mem. at 15. They contend that any harm that resulted from Merkenich's alleged breach of fiduciary duty would have befallen the corporation, and would not have been specific to Plaintiff. *See id.*

As an initial matter, the Court must determine what law would apply to Plaintiff's claim for breach of fiduciary duty. New York's choice of law rules dictate that the law of the state of incorporation governs a claim for breach of the fiduciary duty owed to a corporation and its shareholders. *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980); *Benjamin v. Kim*, No. 95 Civ. 9597(LMM), 1999 U.S. Dist. LEXIS 6089, 1999 WL 249706, at *n.13 (S.D.N.Y. Apr. 28, 1999). Since Plaintiff claims to bring his claim as a shareholder of CFC Asia, against Merkenich as a director of CFC Asia, and CFC Asia is a Hong Kong corporation, the law of Hong Kong applies to Plaintiff's claim.

Because Plaintiff's claim for breach of fiduciary [*85] duty derives from his status as a shareholder, Hong Kong law requires that his action be brought as a shareholder derivative suit. *See Richcombe Inv. Ltd. v. Tin Fung & Anor*, 2001-2 HKC 115, 2001 HKC Lexis 119, at *9 (Court of First Instance 2001) ("If wrongs are done to a company, the company is the only one who can sue in respect to those wrongs, save in the case of a derivative action brought by minority shareholders ...."); *Maxgood Int'l Ltd. v. Hyran Holdings Ltd.*, 989 HKCU 1, 2000 HKCU Lexis 980, at **20-21 (Court of First Instance 2000)("As a matter of general principle, ... the loss sustained by a shareholder through a diminution in the value of his shares by reason of the misappropriation of the company's assets was a loss recoverable only by

2002 U.S. Dist. LEXIS 25767, *85
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

the company and not by the shareholder, who had suffered no personal loss distinct from that suffered by the company ...."). [22] Therefore, Plaintiff's claim of breach of fiduciary duty against Merkenich should be dismissed for failure to state a claim for which relief can be granted.

> 22    Even if New York law were to apply, Plaintiff would be required to bring this action as a shareholder derivative suit. *See RMED Intern., Inc. v. Sloan's Supermarkets, Inc.,* No. 94 CIV 5587 (PKL)(RLE), 185 F. Supp. 2d 389, 2002 WL 252483, at *12 (S.D.N.Y. Feb. 21, 2002) ("New York courts have found that a shareholder has no standing to file suit for a wrong committed against a corporation. Even if a stockholder has been injured by a diminution in the value of his shares, he can not proceed individually, but rather must bring a shareholder derivative action.")(internal citations omitted).

[*86] *H. Count Nine--Failure to Pay Wages Pursuant to New York Labor Law*

Plaintiff claims that at the time of his termination he was owed over $ 600,000 in salary and benefits. *See* Complaint P 81. Defendants have allegedly refused to pay Plaintiff the money owed, which Plaintiff argues violates New York Labor Law § 190, *et seq.* Plaintiff further argues that this statute entitles him to attorney's fees and liquidated damages in the amount of 25% of wages withheld, in addition to the amount of the wages owed. *See id.* P 83. Defendants contend that this claim should be dismissed for lack of factual support. *See* Def. Mem. at 39.

The Court cannot evaluate the truthfulness of Plaintiff's allegations in deciding a motion to dismiss. Plaintiff need only make legally sufficient factual allegations to maintain his claim. *See Netrix,* 2001 WL 228362, at *1. Plaintiff has alleged that at the time of his termination, he was owed over $ 600,000 in wages and benefits that were never paid, and that Defendants CFC Asia, CFC Securities, and CFC Group willfully refused to pay these monies owed to Plaintiff. Based upon these allegations, the Court cannot conclude that Plaintiff [*87] will be unable to prove a set of facts in support of this claim which would entitle him to relief. Accordingly, Defendants' motion to dismiss Count Nine should be denied.

*CONCLUSION*

For the reasons cited above, I respectfully recommend that Defendants' motion to dismiss the Complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, and insufficient service of process be denied, and that Plaintiff be granted leave to amend the Complaint to properly assert his citizenship. Defendants' motion to dismiss pursuant to the doctrine of *forum non conveniens* should also be denied. I further recommend that Defendants' motion to dismiss for failure to state a claim be granted with respect to Count Eight of the Complaint, and with respect to Defendants CFC International, CFC Technology, CFC Securities Holding, and CFC Asset Management in Count Five of the Complaint. The motion should be denied with respect to Counts Three, Six, Seven, and Nine of the Complaint, as well as Count Five, as it relates to the remaining Defendants. Finally, I recommend that Counts One, Two, and Four of the Complaint be dismissed with leave to replead.

Pursuant to 28 U.S.C. § 636(b)(1)(C) [*88] and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, U.S.D.J., and to the chambers of the undersigned Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Batts. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 149-52, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985), *reh'g denied,* 474 U.S. 1111 (1986); *IUE AFL-CIO Pension Fund v. Hermann* 9 F.3d 1049, 1054 (2d Cir. 1993), *cert. denied,* 513 U.S. 822 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.) *cert. denied,* 506 U.S. 1038, 113 S. Ct. 825 (1992); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir. 1989).

SO ORDERED.

THEODORE H. KATZ

[*89] UNITED STATES MAGISTRATE JUDGE

Dated: March 7, 2002

New York, New York