LEXSEE

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Plaintiffs, v. K-LINE AMERICA, INC., ET. AL., Defendants. K-LINE AMERICA, INC., ET. AL., Third-Party Plaintiffs, v. WORLD COMMERCE SERVICES, LLC, ET. AL., Third-Party Defendants.**

06 Civ. 0615 (BSJ) Consolidated with: 06 Civ. 2557, 06 Civ. 2956, 06 Civ. 2962, 06 Civ. 3038, 06 Civ. 3040, 06 Civ. 3042

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 43567

June 13, 2007, Decided
June 14, 2007, Filed

COUNSEL: [*1] For Indemnity Insurance Company of North America (1:06-cv-00615-BSJ-DCF), Plaintiff: David Louis Mazaroli, LEAD ATTORNEY, Frank J. Loscalzo, Attorney at Law, Huntington, NY.

Mitsui Sumitom Insurance Co. Ltd. (1:06-cv-00615-BSJ-DCF), Consolidated Plaintiff, Pro se.

Bank of Philippine Islands & Mitsui Sumitom Insurance (1:06-cv-00615-BSJ-DCF), Consolidated Plaintiff, Pro se.

Federal Insurance Co. (1:06-cv-00615-BSJ-DCF), Consolidated Plaintiff, Pro se.

Royal & Sun Alliance Ins. Co. (1:06-cv-00615-BSJ-DCF), Consolidated Plaintiff, Pro se.

ACK Controls, Inc. (1:06-cv-00615-BSJ-DCF), Consolidated Plaintiff, Pro se.

For K-Line America, Inc., Kawasaki Kisen Kaisha Ltd. (1:06-cv-00615-BSJ-DCF, 1:06-cv-02557-BSJ-DCF, 1:06-cv-02956-BSJ-DCF, 1:06-cv-03038-BSJ-DCF), Defendants: John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For Union Pacific Railroad Company (1:06-cv-00615-BSJ-DCF, 1:06-cv-02557-BSJ-DCF, 1:06-cv-02956-BSJ-DCF, 1:06-cv-02962-BSJ-DCF, 1:06-cv-03038-BSJ-DCF, 1:06-cv-03040-BSJ-DCF), Defendant: Barry Neil Gutterman, Barry N Gutterman & Associates, P.C, New York, NY.

For Horizon Intermodal Express, Ltd. (1:06-cv-00615-BSJ-DCF), [*2] Defendant: Alissa Marie Ryder, LEAD ATTORNEY, Duane Morris, LLP, Newark, NJ.

For Union Pacific Railroad Company, Inc. (1:06-cv-00615-BSJ-DCF, 1:06-cv-02956-BSJ-DCF, 1:06-cv-03038-BSJ-DCF, 1:06-cv-03040-BSJ-DCF, 1:06-cv-03042-BSJ-DCF), ThirdParty Plaintiff: Barry Neil Gutterman, Barry N Gutterman & Associates, P.C, New York, NY.

For K-Line America, Inc., Kawasaki Kisen Kaisha Ltd. (1:06-cv-00615-BSJ-DCF, 1:06-cv-02557-BSJ-DCF, 1:06-cv-02956-BSJ-DCF, 1:06-cv-03038-BSJ-DCF, 1:06-cv-03040-BSJ-DCF, 1:06-cv-03042-BSJ-DCF), Cross Claimants: John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For Union Pacific Railroad Company (1:06-cv-00615-BSJ-DCF), Cross Defendant: Barry Neil Gutterman, Barry N Gutterman & Associates, P.C, New York, NY.

2007 U.S. Dist. LEXIS 43567, *2
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

For K-Line America, Inc. (1:06-cv-00615-BSJ-DCF), ThirdParty Plaintiff: John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For Kawasaki Kisen Kaisha Ltd. (1:06-cv-00615-BSJ-DCF), ThirdParty Plaintiff: David Douglas Jensen, LEAD ATTORNEY, Blank Rome LLP, New York, NY; John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For CMT International, Inc. (1:06-cv-00615-BSJ-DCF), ThirdParty [*3] Defendant: Andrew Stone Buchanan, James V. O'Brien, LEAD ATTORNEYS, Lewis, Rice & Fingersh, L.C, St. Louis, MO; Michael O'Shea Hardison, LEAD ATTORNEY, Eaton & Van Winkle LLP, New York, NY.

For Plano Molding Company (1:06-cv-00615-BSJ-DCF, 1:06-cv-02557-BSJ-DCF), ThirdParty Defendant: R. James Jude De Rose, III, Lord, Bissell & Brook, LLP, New York, NY.

For World Commerce Services, L.L.C. (1:06-cv-00615-BSJ-DCF), ThirdParty Defendant: Kenneth Nathan Wolf, LEAD ATTORNEY, Sandler Travis & Rosenberg, P.A., New York, NY.

For Union Pacific Railroad Company (1:06-cv-00615-BSJ-DCF, 1:06-cv-02557-BSJ-DCF, 1:06-cv-02962-BSJ-DCF), Cross Claimant: Barry Neil Gutterman, Barry N Gutterman & Associates, P.C, New York, NY.

For K-Line America, Inc., Kawasaki Kisen Kaisha Ltd. (1:06-cv-00615-BSJ-DCF, 1:06-cv-03038-BSJ-DCF), Cross Defendants: John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For Union Pacific Railroad Company (1:06-cv-00615-BSJ-DCF), ThirdParty Plaintiff: Barry Neil Gutterman, Barry N Gutterman & Associates, P.C, New York, NY.

For CMT International, Inc. (1:06-cv-00615-BSJ-DCF), ThirdParty Defendant: Andrew Stone Buchanan, James V. O'Brien, [*4] LEAD ATTORNEYS, Lewis, Rice & Fingersh, L.C, St. Louis, MO.

For CMT International, Inc. (1:06-cv-00615-BSJ-DCF), Cross Defendant: Andrew Stone Buchanan, James V.

O'Brien, LEAD ATTORNEYS, Lewis, Rice & Fingersh, L.C, St. Louis, MO.

For K-Line America, Inc., Kawasaki Kisen Kaisha Ltd. (1:06-cv-00615-BSJ-DCF), ThirdParty Plaintiffs: Barry Neil Gutterman, LEAD ATTORNEY, Barry N Gutterman & Associates, P.C, New York, NY.

For K-Line (1:06-cv-00615-BSJ-DCF), ThirdParty Plaintiff: Barry Neil Gutterman, LEAD ATTORNEY, Barry N Gutterman & Associates, P.C, New York, NY; David Douglas Jensen, LEAD ATTORNEY, Frank J. Loscalzo, Attorney at Law, Huntington, NY; John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For World Commerce Services, L.L.C. (1:06-cv-00615-BSJ-DCF, 1:06-cv-02557-BSJ-DCF), Counter Claimant: Kenneth Nathan Wolf, LEAD ATTORNEY, Sandler Travis & Rosenberg, P.A., New York, NY.

For Royal & Sun Alliance Insurance PLC (1:06-cv-02557-BSJ-DCF), Plaintiff: David Louis Mazaroli, LEAD ATTORNEY, Frank J. Loscalzo, Attorney at Law, Huntington, NY.

For Mitsui Sumitomo Insurance Co. Ltd., Bank of Philippine Islands & Mitsui Sumitomo Insurance (1: [*5] 06-cv-02956-BSJ-DCF), Plaintiffs: David Louis Mazaroli, LEAD ATTORNEY, Frank J. Loscalzo, Attorney at Law, Huntington, NY.

For Horizon Intermodal Express Ltd. (1:06-cv-02956-BSJ-DCF), Defendant: Alissa Marie Ryder, LEAD ATTORNEY, Duane Morris, LLP, Newark, NJ; James William Carbin, LEAD ATTORNEY, Duane Morris, LLP, New York, NY.

For Horizon Intermodal Express Ltd. (1:06-cv-02956-BSJ-DCF), Cross Claimant: Alissa Marie Ryder, LEAD ATTORNEY, Duane Morris, LLP, Newark, NJ; James William Carbin, LEAD ATTORNEY, Duane Morris, LLP, New York, NY.

For Phillips PC Peripherals, Shur Line, a division of Newell Operating Company (1:06-cv-02962-BSJ-DCF), Plaintiffs: Edward C. Radzik, LEAD ATTORNEY, McDermott & Radzik, LLP, New York, NY.

2007 U.S. Dist. LEXIS 43567, *5
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

For Kawasaki Kisen Kaisha Co., Ltd., doing business as "K" Line (1:06-cv-02962-BSJ-DCF), Defendant: John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For Kawasaki Kisen Kaisha Co., Ltd. (1:06-cv-02962-BSJ-DCF), Cross Defendant: John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

For Federal Insurance Company (1:06-cv-03038-BSJ-DCF), Plaintiff: David Louis Mazaroli, LEAD ATTORNEY, Frank J. Loscalzo, Attorney [*6] at Law, Huntington, NY.

For Cargo Channel Services Ltd. (1:06-cv-03038-BSJ-DCF), Cross Claimant: Henry P. Gonzalez, LEAD ATTORNEY, Rodriguez O'Donnell Ross Fuerst Gonzalez & Williams, P., Washington, DC.

For ACK Controls, Inc. (1:06-cv-03040-BSJ-DCF), Plaintiff: David Louis Mazaroli, LEAD ATTORNEY, Frank J. Loscalzo, Attorney at Law, Huntington, NY.

For Navigators Management Company, as subrogor of American Shipping (1:06-cv-03042-BSJ-DCF), Plaintiff: Lawrence Caruso Glynn, LEAD ATTORNEY, Nicoletti Hornig & Sweeney, New York, NY.

For Union Pacific Railroad (1:06-cv-03042-BSJ-DCF), Defendant: Barry Neil Gutterman, Barry N Gutterman & Associates, P.C., New York, NY.

For Kawasaki Kisen Kaisha, Ltd. (1:06-cv-03042-BSJ-DCF), Counter Claimant: John Devereux Kimball, LEAD ATTORNEY, Blank Rome LLP, New York, NY.

JUDGES: BARBARA S. JONES, UNITED STATES DISTRICT JUDGE.

OPINION BY: BARBARA S. JONES

OPINION:

    Opinion & Order

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

The seven cases consolidated herein arise out of a 30-car train derailment and involve more than a dozen parties who have filed numerous pleadings and amended pleadings, including various complaints, [*7] third-party complaints, crossclaims, and counterclaims. n1 Before the Court are (1) the Motion of Third-Party Defendant Plano Molding Co. ("Plano") to Dismiss the Third-Party Complaint of Defendants / Third-Party Plaintiffs K-Line America, Inc. ("KLA") and Kawasaki Kisen Kaisha Ltd. ("Kawasaki") (jointly, "K-line"); (2) the Motion of Third-Party Defendant CMT International, Inc. ("CMT") to Dismiss the Third-Party Complaint of K-Line; and (3) Plano's Motion to Dismiss the Third-Party Complaint of Defendant / Third-Party Plaintiff Union Pacific Railroad ("Union Pacific"). All three Motions assert, inter alia, lack of personal jurisdiction. For the reasons stated herein, all three Motions to Dismiss are GRANTED for lack of personal jurisdiction. The Court does not dismiss the Third-Party Complaints of K-Line and Union Pacific insofar as they assert causes of action against Third-Party Defendants other than Plano and CMT.

n1 The Court discusses only the parties and events which bear on the merits of the three jurisdictional Motions to Dismiss at issue here.

    [*8]

The Parties

    Defendant / Third-Party Plaintiff Kawasaki, a Japanese corporation with its principal place of business in Japan, is a common carrier that provides "intermodal" transportation across ocean and land routes. Defendant / Third-Party Plaintiff KLA, a Michigan corporation with its principal place of business in Virginia, acts as an agent for Kawasaki. n2 Defendant / Third-Party Plaintiff Union Pacific, a Delaware corporation with its headquarters in Nebraska, operates rail lines throughout the United States. Third-Party Defendant Plano, an Illinois corporation with its principal place of business in Illinois, designs and manufactures storage systems and organizers such as fishing tackle boxes, tool boxes, and cosmetic organizers. Third-Party Defendant CMT, also an Illinois corporation with its principal place of business in Illinois, imports injection molds and exports electronic components such as integrated circuit chips. Third-Party

2007 U.S. Dist. LEXIS 43567, *8
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

Defendant Kunshan Yuanjin Plastic & Electronic Co., Ltd. ("Kunshan"), a business entity of unknown form and domicile, operates a manufacturing business in China.

> n2 It is contested whether KLA is itself a common carrier.

[*9]

## Background and Procedural History

Plano allegedly contracted with CMT to purchase certain steel molds used in its manufacturing business. The molds were allegedly manufactured by Kunshan in China, shipped to California, and transferred to Union Pacific for delivery by train to Illinois. On or about April 21, 2005, the train allegedly derailed at or near Tyrone, Oklahoma due to improper packing and stowing of the steel molds.

On January 25, 2006 Plaintiff Indemnity Insurance Company of North America ("Indemnity"), as subrogee of its insureds Arvin Meritor/Arvin Sango Sales Corporation and XL Screw, filed a Complaint against Defendants KLA, Kawasaki, and Union Pacific, alleging various causes of action relating to cargo damaged in the train derailment, specifically, auto parts and screws. KLA, Kawasaki, and Union Pacific are allegedly common carriers responsible for delivery of the damaged cargo. On February 9, 2006, Defendants / Third-Party Plaintiffs KLA and Kawasaki (jointly, "K-Line") filed a Third-Party Complaint sounding in admiralty and maritime law seeking indemnification from, inter alia, Third-Party Defendants Plano Molding Co. ("Plano") and CMT International, [*10] Inc. ("CMT"). K-Line alleges that all its claims against Plano and CMT are subject to admiralty and maritime jurisdiction. On March 15, 2006, the Court referred this matter to Magistrate Judge Debra C. Freeman for general pretrial supervision.

On March 17, 2006, Defendant / Third-Party Plaintiff Union Pacific filed a Third-Party Complaint asserting negligence claims and claims sounding in admiralty and maritime law against, inter alia, Plano and CMT. Union Pacific alleges that the Court has diversity jurisdiction over its negligence claims pursuant to 28 U.S.C. § 1332 and admiralty and maritime jurisdiction over its admiralty claims.

On March 24, 2006, Third-Party Defendant CMT moved to dismiss the Third-Party Complaint of K-Line pursuant to Rules 12(b)(2) and (12)(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. On May 1, 2006, Third-Party Defendant Plano moved to dismiss the Third-Party Complaint of K-Line pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction [*11] and improper venue. On May 31, 2006 Plano also moved to dismiss the Third-Party Complaint of Union Pacific pursuant to the same Rules and on the same grounds. Magistrate Judge Freeman granted limited jurisdictional discovery at a conference with all the parties on September 26, 2006. Post-discovery supplemental memoranda and affidavits were fully submitted as of March 15, 2007.

## Discussion

### I. Standard of Review

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); Credit Lyonnais Secs., Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999). The Court decides the instant Motions with the benefit of jurisdictional discovery but without an evidentiary hearing.

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the [Third-Party] plaintiff bears the burden of establishing [*12] that the Court has jurisdiction over the [Third-Party] defendant" by a preponderance of the evidence. DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quotation omitted); Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990). Since the Court has not conducted an evidentiary hearing, the Court construes all pleadings and affidavits in the light most favorable to the Third-Party Plaintiffs and resolves all doubts in their favor. Id.; DiStefano, 286 F.3d at 84. However, the Third-Party Plaintiffs must assert facts sufficient to establish jurisdiction and cannot merely rely on their pleadings:

2007 U.S. Dist. LEXIS 43567, *12
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

[T]he nature of the plaintiff's obligation varies depending on the procedural posture of the litigation. Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations. After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction [*13] testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Mere conclusory allegations are insufficient to support a *prima facie* showing of personal jurisdiction. Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998); Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C., 288 F. Supp. 2d 482, 484 (S.D.N.Y. 2003).

## II. Personal Jurisdiction over Plano

In both admiralty and diversity cases, the law of the forum state -- here, New York -- determines whether the Court has personal jurisdiction over a party. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille, 937 F.2d 44, 50 (2d Cir. 1991) (admiralty); Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990) (diversity). If the forum state's law supports jurisdiction, then the Court must determine whether jurisdiction comports with constitutional due process requirements, namely, that the defendant has "certain minimum contacts [*14] with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quotations omitted); see Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). For the following reasons, New York Law does not support personal jurisdiction over Plano.

### A. General Personal Jurisdiction Under CPLR § 301: "Doing Business"

K-Line argues that the Court has jurisdiction over

Plano pursuant to Section 301 of the New York Civil Practice Law and Rules ("CPLR"). n3 Section 301, as construed by New York courts, authorizes general personal jurisdiction over a foreign corporation if the corporation is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." Landoil, 918 F.2d at 1043 (quoting McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643 (1981)) (citing cases). The foreign corporation must be present in New York "'not occasionally or casually, but with a fair measure of permanence and continuity.'" Id. (quoting Tauza v. Susquehanna Coal Corp., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)). [*15]

New York courts have generally focused on the following indicia of jurisdiction: [1] the existence of an office in New York; [2] the solicitation of business in New York; [3] the presence of bank accounts or other property in New York; and [4] the presence of employees or agents in New York. However, the solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services.

Id. at 1043-44 (quotations omitted). Under the so-called "solicitation plus" test for jurisdiction, the Court first determines whether a foreign corporation's solicitation in New York is substantial and continuous, and if it is, then the corporation is properly subject to general personal jurisdiction under Section 301 so long as the corporation also "engages in other activities of substance in the state." Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 569 (S.D.N.Y. 2006) (citing Landoil, 918 F.2d at 1044); see Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983) ("To sustain personal jurisdiction, New York courts require substantial [*16] solicitation that is carried on with a considerable measure of continuity . . . .") (quotations omitted). The exercise of jurisdiction under CPLR 301 is "a fact-sensitive determination requiring a balancing of all relevant factual circumstances." Landoil, 918 F.2d at 1044.

n3 It is uncontested that there is no colorable basis for long-arm jurisdiction over Plano or CMT

Page 5

2007 U.S. Dist. LEXIS 43567, *16
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

pursuant to Section 302 of the CPLR because neither the underlying transaction nor the underlying tort took place in New York or had any effect in New York. See N.Y. C.P.L.R. § 302(a); Fontanetta v. Am. Bd. of Int'l Medicine, 421 F.2d 355, 357 (2d Cir. 1970) ("[T]he defendant [must] 'transact' business in the state, [and] the cause of action must 'arise' from the business so transacted."); Data Comm., Inc. v. Dirmeyer, 514 F. Supp. 26, 30 (E.D.N.Y. 1981) ("[T]he movant must demonstrate a more direct injury within the State and a closer expectation of consequences within the State than an indirect financial loss . . . .") (quotations omitted).

[*17]

B. Plano's Contacts with New York

Viewed in the light most favorable to K-Line, the pleadings, affidavits, and discovery materials establish the following facts: Plano is an Illinois corporation, and its headquarters are located in Plano, Illinois. Plano has no office or employees in New York. Plano does not sell its products directly to consumers in New York. Plano sells its products from its headquarters in Illinois to retail stores who have branches in New York, and those retail stores then re-sell its products to consumers. At least 22 retail stores in New York carry Plano's merchandise, including large national retailers like Wal-Mart and Lowe's. Plano sales employees in Illinois sometimes visit retailers in New York who purchase Plano products. (Hurt Dep. 37-39.) n4 Plano's sales in New York constitute between 2.2% and 2.7% of its total sales. (K-Line Mem. Opp. 7; Siroky Aff. P 25.) Plano has made more than 2000 shipments to New York, and its total sales in New York exceed $9 million. Plano's website directs visitors to retail stores in New York and elsewhere that carry its products.

n4 Tom Hurt is the senior vice president of sales marketing and customer services at Plano Molding Company.

[*18]

Plano uses a sales representative located in New York, the Thomas F. Gowen Company ("Gowen"), to service its retail accounts in New York. (Hurt Dep. 51.)

Plano pays Gowen on a commission basis to find customers for Plano's products in New York. (Hurt Dep. 52.)

Plano uses an international exporter based in New York, the G. Hirschfeldt Company, L.L.C., ("Hirschfeldt"). (K-Line Mem. Opp. 8; Siroky Aff. P 26.) Their arrangement proceeds as follows: Hirschfeldt places and pays for an order with Plano's headquarters, Plano ships the goods to Hirschfeldt in New York, and Hirschfeldt then ships the goods to international buyers it has solicited. (Hurt Dep. 46.) None of the goods Hirschfeldt purchases from Plano are sold in New York.

Plano also has a relationship with two local fishermen in New York. These fishermen -- called "pro staff" -- receive new Plano products and other promotional materials from Plano. The pro staff attend events such as store openings to promote Plano products. The pro staff receive no compensation from Plano apart from promotional materials.

Plano regularly advertises in 15-20 magazines, some of which circulate in New York. (Hurt Dep. 41.) The purpose of its print [*19] advertisements is to make its products known to customers who read those magazines, some of whom live in New York. (Id.) Plano also advertises in five or six weekly television shows which are seen by people who live in New York. (Hurt Dep. 43.)

There is a telephone listing for "Plano Molding" in New York, but it is maintained by DoubleClick, Inc., not Plano. Plano representatives attended a toy fair in New York in the early/mid 1990s. (Hurt Dep. 18-20) During the fair, Plano rented a hotel room with the same address as the telephone listing. (Id.)

In 1991, Plano filed an action in this District against two companies that it claimed were infringing its patent rights. See Plano Molding Co. v. Red Box Toy USA Inc., No. 91 Civ. 4613 (S.D.N.Y. Jul. 9, 1991).

C. Analysis

For the following reasons, the facts asserted do not establish that Plano is engaged in such a continuous and systematic course of doing business in New York as to warrant a finding of its presence in New York under CPLR § 301. K-Line has not asserted facts which show that Plano maintains an office or other physical presence

2007 U.S. Dist. LEXIS 43567, *19
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

in New York. K-Line has not asserted facts which show that Plano has bank [*20] accounts or any other property in New York, apart from the above-mentioned products available for sale at retail stores. K-Line has not asserted facts which show that Plano has employees or agents in New York, or that Plano engages in substantial solicitation of business by Plano in New York. Accordingly, K-Line has failed to assert facts which establish general personal jurisdiction over Plano.

### 1. Indirect Sales in New York

K-Line has not asserted facts which show that Plano engages in the type or volume of sales activity that constitutes substantial solicitation under Section 301 of the CPLR. Plano does not sell its products directly to consumers. Plano sells its products to retailers, and those retailers in turn re-sell Plano's products to consumers. Courts in this District have refused to find general personal jurisdiction under CPLR § 301 where a foreign corporation engaged in precisely this sort of indirect distribution. See Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1156 (S.D.N.Y. 1996).

When determining whether solicitation is substantial, courts tend to look to the percentage of a foreign corporation's revenue that is attributable [*21] to New York. Overseas Media, 407 F. Supp. 2d at 569. "The shipment of goods into New York does not *ipso facto* constitute 'doing business.'" Beacon Enters., 715 F.2d at 762; see Riviera, 944 F. Supp. at 1156. Courts in this District regularly conclude that foreign corporations are not subject to general personal jurisdiction in New York where they derive less than 5% of their overall revenue from sales to customers in New York. See Zipper v. Nichtern, No. 03 Civ. 5796, 2007 U.S. Dist. LEXIS 24761, at *18 (E.D.N.Y. March 30, 2007) (citing S.D.N.Y. cases); Aqua Prods., Inc., v. Smartpool, Inc., No. 04 Civ. 5492, 2005 U.S. Dist. LEXIS 17246, 2005 WL 1994013, at *4 (S.D.N.Y. Aug. 18, 2005); Gross v. Bare Escentuals, Inc., No. 03 Civ. 3089, 2005 U.S. Dist. LEXIS 6570, 2005 WL 823889, at *4 (S.D.N.Y. Apr. 8, 2005); Hennigan v. Taser Int'l, Inc., No. 00 Civ. 2981, 2001 U.S. Dist. LEXIS 1857, 2001 WL 185122, at *2 (S.D.N.Y. Feb. 26, 2001); Riviera, 944 F. Supp. at 1156-57. Because Plano's sales in New York constitute only 2.2-2.7% of its total sales, Plano's sales in New York do not constitutes substantial solicitation.

### 2. Outside Sales [*22] Representatives and Pro Staff

The actions of Gowen employees, Hirschfeldt employees, and the pro staff fishermen in New York are not attributable to Plano because none of these individuals are Plano employees or agents. See Riviera, 944 F. Supp. at 1156 (concluding that sales representatives are independent contractors whose solicitation does not support general personal jurisdiction under CPLR § 301). K-Line has not asserted any facts which show that Plano has control over the "manner and means" by which Gowan, Hirschfeldt, or the pro staff conduct their duties, Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113-14 (2d Cir. 2000), and the deposition testimony of Mr. Hurt indicates the opposite (see Hurt Dep. Tr. 45:20-24, 51:8-11, 79:19-21, 80:24-81:4). Plano is not doing business in New York simply because it pays another company located in New York to act as its sales representative and find buyers in New York. See Riviera, 944 F. Supp. at 1156 ("No court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause [*23] of action.") (quotations omitted). Likewise, Plano is not doing business in New York simply because it pays an international exporter located in New York to find buyers for its products in other countries. Cf. Id. Accordingly, Gowen employees, Hirschfeldt employees, and the pro staff fishermen are not Plano employees and their activities do not constitute substantial solicitation of business in New York by Plano.

### 3. In-house Sales Staff

Plano employs a sales staff at its headquarters in Illinois, and its sales employees sometimes visit retailers in New York who purchase Plano products. (Hurt Dep. 37-40.) Viewed in the light most favorable to K-Line, these visits constitute solicitation of business in New York. However, they do not rise to the level of substantial solicitation, because K-Line has not shown that they are sufficiently continuous or permanent. See Landoil, 918 F.2d at 1045 (citing cases and concluding that 13 business trips by foreign corporation's employees into New York did not constitute substantial and continuous solicitation where the trips were "of short duration, were by different employees, involved a number of accounts, and . . . occurred [*24] sporadically over a period of eighteen months"); Pacamor Bearings, Inc. v. Molon Motors & Coil, Inc., 102 A.D.2d 355, 357, 477 N.Y.S.2d 856 (N.Y. App. Div. 1984) (concluding that eight trips to New York by sales managers over 15-month period and

nine trips to New York by sales directors over 20-month period were insufficient to support personal jurisdiction). K-Line has averred no facts which, if credited, show that Plano employees visit New York with greater frequency than the employees in Landoil or Pacamour Bearings.

#### 4. Website

Plano's website provides consumers with product information and the locations of retailers who carry Plano products. Plano does not sell goods directly via its website. This type of website does not constitute solicitation of business in New York because it is not targeted at New York. In re Ski Train Fire, 230 F. Supp. 2d 376, 383 (S.D.N.Y. 2002) ("[T]he fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301.") (quotations omitted); Yanouskiy v. Eldorado Logistics Sys., No. 05 Civ. 2202, 2006 U.S. Dist. LEXIS 76604, at *7-8 (E.D.N.Y. Oct. 20, 2006) [*25] ("It has often been held that the mere existence of a website accessible within New York is insufficient to establish general jurisdiction over a defendant here.") (citing cases); Rodriguez v. Circus Circus Casinos, Inc., No. 00 Civ. 6559, 2001 U.S. Dist. LEXIS 61, at *5 (S.D.N.Y. Jan. 9, 2001).

#### 5. Advertising

Plano engages in print and television advertising in New York. Advertising is insufficient to establish general personal jurisdiction under CPLR § 301, particularly where, as here, the advertising in New York did not generate a substantial amount of business in New York. Lane v. Vacation Charters, Ltd., 750 F. Supp. 120, 124 (S.D.N.Y. 1990) (citing cases).

#### 6. Telephone Listing

The telephone listing for Plano Molding in New York does not show that Plano is doing business in New York under CPLR § 301. Records produced by Verizon, the telephone company who administers the New York telephone number listed for Plano Molding, show that it sends the bills for its telephone service to DoubleClick, Inc., not Plano. Documents produced by DoubleClick state that the telephone number is "associated with one of [DoubleClick's] [*26] ISDN circuits for video conferencing." (DeRose Aff. Ex. 1.) While Plano apparently rented a hotel room at the address listed for the telephone number when it attended a toy show during

the early/mid 1990s, K-Line has asserted no facts which show that Plano currently maintains the number, or that Plano ever maintained an office in New York. Their unsupported allegation that nobody would maintain a number listed for "Plano Molding" without the input or support of the Plano Molding Company that is a party in this action is merely conclusory and is insufficient to support personal jurisdiction. See Jazini, 148 F.3d at 185.

#### 7. Prior Suits

Plano initiated a patent suit in New York in 1991. See Red Box Toy, No. 91 Civ. 4613 (S.D.N.Y. Jul. 9, 1991). The case has been closed since March 18, 1992. That Plano once brought suit in New York fifteen years ago does not establish that it is presently doing business in New York. See Andros Compania Maritima S.A. v. Intertanker, Ltd., 714 F. Supp. 669, 675 (S.D.N.Y. 1989) ("[T]he relevant time frame for the jurisdictional inquiry under § 301 is at the time of service of the summons and complaint.") (citing [*27] Gaboury v. Central Vermont Ry. Co., 250 N.Y. 233, 236, 165 N.E. 275 (N.Y. 1929) (Cardozo, C.J.)).

#### 8. Combination of Contacts

Considering all of Plano's contacts with New York in combination with each other and in the light most favorable to K-Line, the Court concludes that Plano is not engaged in substantial solicitation in New York, and that it is not engaged in such a continuous and systematic course of doing business in New York as to subject it to personal jurisdiction under Section 301 of the CPLR.

Accordingly, the Court lacks general personal jurisdiction over Plano.

#### D. K-Line's Application for Additional Discovery from Plano

K-Line argues that, even if the above evidence does not establish personal jurisdiction over Plano, it demonstrates a colorable enough basis for jurisdiction that the Court should permit yet another round of jurisdictional discovery. K-Line argues that the telephone listing and the Red Box Toy patent litigation in particular constitute new facts which merit additional exploration.

"Discovery on the issue of personal jurisdiction may be permitted in the court's discretion if plaintiffs allege facts that would support [*28] a colorable claim of

jurisdiction." Volkswagen de Mexico, S.A., v. Germanischer Lloyd, 768 F. Supp. 1023, 1028 (S.D.N.Y. 1991). "[A] plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery." Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990).

Magistrate Judge Freeman initially granted jurisdictional discovery because K-Line had identified a colorable basis for jurisdiction. Plano complied with K-Line's discovery requests by producing two witnesses and various other materials. For all the reasons stated above, the new facts uncovered by this discovery do not support personal jurisdiction over Plano. Moreover, neither the telephone listing, nor the Red Box Toy litigation, nor any of the other factual allegations shows that additional discovery would potentially reveal a connection between Plano and New York sufficient to establish general personal jurisdiction.

Accordingly, K-Line's application for additional jurisdictional discovery from Plano is DENIED, and Plano's Motion to Dismiss the Third-Party [*29] Claims of K-Line is GRANTED.

### III. Plano's Motion to Dismiss the Claims of Union Pacific

Plano's Motion to Dismiss the claims of Union Pacific raises the same issues as its Motion to Dismiss the claims of K-Line. Union Pacific's Amended Third-Party Complaint contains only spare, conclusory allegations of personal jurisdiction over Plano. (See Union Pacific Am. Compl. P 11 ("Third-party defendant Plano is subject to personal jurisdiction in the State of New York.").) Union Pacific argues that these allegations are sufficient at this stage in the litigation and, in the alternative, that it is entitled to jurisdictional discovery because (1) Plano products are sold by retailers in New York; (2) Plano receives income from retail sales of those products in New York; and (3) Plano's website directs customers to retailers in New York that carry its products. The requested jurisdictional discovery has since taken place. The Court has already addressed each of these factual allegations and determined that, even if credited, they are insufficient to support personal jurisdiction over Plano. See supra Part II.C. For the same reasons, discovery about these areas would not reveal [*30] a connection between Plano and New York sufficient to establish general personal jurisdiction. See supra Part II.D. The

Court will not permit Union Pacific to engage "in a fishing expedition when little more exists than [its] bare assertions that jurisdiction is proper." Manhattan Life Ins. Co. v. A.J. Stratton Syndicate, 731 F. Supp. 587, 593 (S.D.N.Y. 1990).

Accordingly, Union Pacific's application for jurisdictional discovery is DENIED and Plano's Motion to Dismiss the Third-Party Complaint of Union Pacific is GRANTED.

### IV. Personal Jurisdiction over CMT

The parties agree that CMT itself has insufficient contacts with New York to support personal jurisdiction. K-Line argues that CMT is part of the En Jinn Group ("En Jinn"), a multinational corporation based in Taiwan that has operations throughout the world. (See Kimball Aff. PP 4, 8.) K-Line argues that the Court has jurisdiction over CMT because of its relationship with En Jinn and its member companies. For the following reasons, K-Line has failed to assert facts which, if credited, would support personal jurisdiction over CMT based on its relationship with En Jinn.

#### A. Applicable Law [*31]

A non-domiciliary corporation is subject to New York jurisdiction if (1) it is a "mere department" of a parent that is present in New York, see Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120-21 (2d Cir. 1984), or (2) there is an agency relationship such that one company conducts the business of the other in New York, see Data-Stream AS/RS Techs., L.L.C. v. ACEquip Ltd., No. 02 Civ. 2089, 2002 U.S. Dist. LEXIS 13461, 2002 WL 1683736, at *6 (S.D.N.Y. July 24, 2002); Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 537, 227 N.E.2d 851, 281 N.Y.S.2d 41, 44 (N.Y. 1967) (concluding that a non-domiciliary corporation is subject to New York jurisdiction if its corporate affiliate performs functions on its behalf in New York "which [the non-domiciliary corporation] could we were it here by its own officials.").

Under the "mere department" theory, a simple business relationship is insufficient to impute jurisdiction. Beech Aircraft, 751 F.2d at 120 ("[T]he presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation."); Delagi v. Volkswagenwerk A.G., 29 N.Y.2d 426, 432, 278 N.E.2d 895, 328 N.Y.S.2d 653

2007 U.S. Dist. LEXIS 43567, *31
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

(N.Y. 1972) [*32] ("The control over the subsidiary's activities . . . must be so complete that the subsidiary is, in fact, merely a department of the parent.").

In conducting the "mere department" analysis, New York courts (1) require common ownership and also consider (2) the financial dependency of the subsidiary; (3) interference in the selection of the subsidiary's executive personnel and failure to observe corporate formalities; and (4) control over the subsidiary's marketing and operational policies. Beech Aircraft, 751 F.2d at 120-22 ("New York courts regard one factor as essential . . . and three others as important. The essential factor is common ownership."); Stratagem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 546 (S.D.N.Y. 1994); Beech Aircraft Corp., 751 F.2d at 120 ("[N]early identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes."). A corporate entity is a "mere department" of a parent company where the parent's control is pervasive enough that the corporate separation is "more formal than real." In re Ski Train Fire, 230 F. Supp. 2d at 384. [*33]

## B. Relationship Between CMT and En Jinn, and En Jinn's Connections with New York

Viewed in the light most favorable to K-Line, the pleadings, affidavits, and discovery materials establish the following facts: CMT is an Illinois corporation with its principal place of business in Carbondale, Illinois. CMT is owned entirely by M. T. Chang, a resident of Taiwan. CMT imports injection molds and exports electronic components such as integrated circuit chips. (Lien Dep. 7:1-11.) n5 The En Jinn Group is a multinational corporation based in Taiwan. En Jinn manufactures and sells a broad range of products, including bumpers, television sets, personal computers, cellular phones, transformers, instrument displays, digital cameras, and dishwashers. (Kimball Aff. P 4, 8.) Approximately 80% of CMT's business involves exporting electronic components (Lien Dep. 48:6-10.), and this portion of its business does not involve En Jinn. (Jensen Aff. Ex. L. Interrog. 11.)

n5 Monica Lien is the office manager of CMT and has been an employee for more than ten years. (Lien Dep. 6:18, 7:20.)

[*34]

CMT's letterhead states that CMT is "A Member of En Jinn Group Company." (Jensen Aff. Ex. L.) En Jinn's website lists CMT, Kunshan, and five other companies under the heading "Contact Information" as members or constituents of the En Jinn Group. (Kimball Aff. Ex. C; Jensen Aff. Ex. A.) CMT's corporate President and Secretary are both residents of Taiwan. (Jensen Aff. Ex. A.) En Jinn promotional materials identify CMT as En Jinn's "Branch in USA" and include the establishment of CMT as an event on En Jinn's timeline. (See Jensen Aff. Ex. G at 4 ("1991 -- Established CMT International in USA (Branch in USA)".) En Jinn has offices in Taiwan, China, Japan, and the United States. (Kimball Aff. Ex. C.) En Jinn's major customers in the United States include GE (Jensen Aff. Ex. G.), Toshiba, and Phillips (Jensen Aff. Ex. G, P-Q). It is undisputed that GE is a New York domiciliary (Jensen Aff. Ex. G, O.), and that Toshiba and Phillips have headquarters in New York City (Jensen Aff. G, P-Q.)

The commercial documents underlying the shipment of the steel molds refer to CMT, En Jinn, and Kunshan interchangeably. (See, e.g., Jensen Aff. Ex. B ("CMT (EnJinn Group) is to supply the top mold [*35] plates.").) En Jinn lists Kunshan -- also a third-party Defendant in this action -- as one of its member companies. In the shipment documents, CMT employees refer to Kunshan as "our factory" (See, e.g., Jensen Aff. Ex. D at CMT0043, CMT0095; Ex. I at 14), and CMT refers to the "Tool Shop" as "CMT/EnJinn/Kunshan" (Jensen Aff. Ex. C at CMT0047.) CMT uploaded plans or specifications pertaining to the steel molds at issue to an internet ftp site maintained by En Jinn. (Jensen Aff. Ex. D.) Representatives of CMT traveled with Plano to Taiwan to inspect the design of the molds. (Jensen Aff. Ex. I at 13-16.)

## C. Analysis

Even construed in the light most favorable to K-Line, the facts do not support personal jurisdiction over CMT under either the "mere department" theory or the agency theory. K-Line essentially argues that personal jurisdiction can be imputed to CMT because the En Jinn Group and CMT present themselves to the world as a unified company. At best, the facts asserted by K-Line show that En Jinn is an affiliation of related companies that cooperate in the marketing, sale, and production of products. This is insufficient to support jurisdiction.

2007 U.S. Dist. LEXIS 43567, *35
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

### 1. "Mere Department" [*36] Theory

#### a. Common Ownership and Other Factors

K-Line has failed to assert facts which establish common ownership or any of the other "mere department" factors. That CMT's owner lives in Taiwan does not establish that he is also the owner of En Jinn or Kunshan. n6 That CMT letterhead and marketing material identify it as a member of the En Jinn Group and that En Jinn refers to the formation of CMT as its "branch in USA" on its timeline does not establish common ownership or show failure to abide by corporate formalities. See In re Ski Train Fire, 230 F. Supp. 2d at 386 (sharing a "unified presentation" and using the same corporate logo "shows that [the parent] exerts some control over [the subsidiary's] marketing policies, but it is insufficient to show 'pervasive' or 'complete' control, or that the distinction between the companies is more formal than real."); J.L.B. Equities v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001) ("The Court is not persuaded that failure to distinguish between a subsidiary on a webpage is sufficient to show that the parent controls the subsidiary's marketing and operational policies."). That the [*37] commercial documents refer to CMT, En Jinn, and Kunshan interchangeably is insufficient to establish common ownership -- rather, it shows only that the companies are repeat players in the steel mold business. Uploading design specifications is precisely the sorts of behavior that one would expect from separate companies working together to design and produce a manufactured product like a steel mold. As common ownership is an essential factor, failure to establish common ownership is fatal to a finding of jurisdiction under the "mere department" theory.

> n6 K-Line's argument that CMT may be owned by entities other than M. T. Chang is merely a conclusory allegation with no factual support.

Moreover, there is no evidence whatsoever that CMT is financially dependent on any other company. There is no evidence that En Jinn or an En Jinn company interferes in the selection or assignment of CMT's personnel. As discussed above, the evidence that En Jinn exhibits some degree of control over CMT's marketing policies is insufficient [*38] to support jurisdiction, and no evidence shows any meaningful failure to abide by corporate formalities.

Even resolving all doubts in K-Line's favor, K-Line asserts no facts which contradict CMT's claim that 80% of its business is entirely unrelated to En Jinn. K-Line asserts no facts which contradict CMT's claim that it has no overarching contract with En Jinn and works with En Jinn only on an order-by-order basis. (Lien Dep. 26:20-27:25.) CMT cannot be a "mere department" of En Jinn if so small a portion of its business is related to En Jinn.

Accordingly, K-Line has failed to assert facts which show that CMT is a "mere department" of En Jinn, Kunshan, or another En Jinn Group company.

#### b. En Jinn's Connections with New York

Even if CMT were a "mere department" of En Jinn, K-Line has failed to assert facts which establish that En Jinn or Kunshan are jurisdictionally present in New York. As explained supra in Part II.A, Section 301 of the CPLR authorizes general personal jurisdiction over a foreign corporation where the corporation is engaged in a continuous and systematic course of doing business in New York. Landoil, 918 F.2d at 1043 (citing cases). [*39] K-Line's sole support for its position that En Jinn is jurisdictionally present in New York is that En Jinn's website lists General Electric -- a New York corporation -- and Toshiba and Phillips -- corporations with headquarters in New York -- as some of its major customers. K-Line has presented no evidence that CMT sold any products to these companies in New York or that it has actually done any business at all in New York. To the contrary, En Jinn's website lists Toshiba as a major customer in Asia and Phillips as a major customer in Europe. (Jensen Aff. Ex. G at 6.)

Even assuming arguendo that En Jinn engaged in substantial solicitation of business in New York, "solicitation of business alone will not justify a finding of corporate presence in New York." Landoil, 918 F.2d at 1043-44 (quotations omitted). K-Line has presented no evidence whatsoever of any additional "activities of substance," such as property, office space, or employees in New York, as required under the "solicitation plus" test for jurisdiction. Overseas Media, 407 F. Supp. 2d at 569.

Accordingly, K-Line has failed to aver facts which show that En Jinn -- and therefore CMT [*40] -- is jurisdictionally present in New York.

2007 U.S. Dist. LEXIS 43567, *40
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

## 2. Agency Theory

For many of the same reasons, the facts asserted by K-Line do not show that En Jinn, Kunshan, or another En Jinn company acts as CMT's agent in New York. Neither party discusses the agency theory in great detail. The Court will not infer an agency relationship simply because the companies coordinate their design and manufacturing activities. Cf. Insight Data Corp. v. First Bank Sys., No. 97 Civ. 4896, 1998 U.S. Dist. LEXIS 3604, 1998 WL 146689, at *16 (S.D.N.Y. Mar. 25, 1998) ("Conclusory allegations of an agency relationship between Card Services and U.S. Bancorp are insufficient to make out a prima facie showing of personal jurisdiction over U.S. Bancorp under § 301."). And even assuming arguendo that Kunshan acted as CMT's agent when it manufactured the steel molds, it is undisputed that the manufacturing took place in China, not in New York. The agent corporation must conduct the business of the principal corporation in New York to support jurisdiction. K-Line has presented no evidence whatsoever that En Jinn or Kunshan engaged in any activities on behalf of CMT in New York.

Accordingly, [*41] K-Line has failed to assert facts which establish jurisdiction over CMT under the agency theory.

### D. K-Line's Application for Additional Discovery from CMT

In its moving papers, K-Line all but acknowledges that the asserted facts are insufficient to support personal jurisdiction over CMT. K-Line argues primarily that the facts establish a colorable basis for jurisdiction, and that the Court should therefore grant a second round of additional jurisdictional discovery as to CMT's relationship with the En Jinn Group and the En Jinn Group's contacts with New York. In specific, K-Line seeks to depose M. T. Chang, the owner of CMT and a resident of Taiwan. Magistrate Judge Freeman previously denied K-Line's application to depose Chang.

"Discovery on the issue of personal jurisdiction may be permitted in the court's discretion if [Third-Party] plaintiffs allege facts that would support a colorable claim of jurisdiction." Volkswagen de Mexico, S.A. v. Germanischer Lloyd, 768 F. Supp. 1023, 1028 (S.D.N.Y. 1991); see supra Part II.D. This Court may set aside Magistrate Judge Freeman's decision to deny K-Line's request to depose Chang only if it was clearly [*42]

erroneous or contrary to law. See 28 U.S.C. 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate [judge]'s order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a). An order is clearly erroneous where the reviewing court has a "definite and firm conviction that a mistake has been committed." S.E.C. v. Thrasher, No. 92 Civ. 6987, 1995 U.S. Dist. LEXIS 10775, at *36 (S.D.N.Y. July 31, 1995) (quoting Litton Indus. v. Lehman Bros. Kuhn Loeb Inc., 734 F. Supp. 1071, 1080 (S.D.N.Y. 1990)). An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." Id. A magistrate judge is afforded broad discretion when deciding discovery matters. Id. (citing Dubin v. E.F. Hutton Group, Inc., 125 F.R.D. 372, 373-74 (S.D.N.Y. 1989)).

Magistrate Judge Freeman's decision was not clearly erroneous. K-Line has been given ample opportunity to pursue its theory that personal jurisdiction can be imputed to CMT through the En Jinn Group companies. The [*43] facts asserted do not support such a theory. There is no reason to believe that M. T. Chang's answers to questions regarding the ownership of or relationship between CMT and En Jinn would be any different than those in Ms. Lien's declarations and deposition testimony or CMT's answers to K-Line's interrogatories. Magistrate Judge Freeman was well within her discretion in determining that the substantial time and expense of traveling to Taiwan to depose Mr. Chang were not justified.

Accordingly, K-Line's application for additional jurisdictional discovery is DENIED, and CMT's Motion to Dismiss the Third-Party Complaint of K-Line is GRANTED.

## V. Due Process and Other Issues

Finding no jurisdiction under the law of the forum state over either Plano or CMT, the Court lacks personal jurisdiction over these Third-Party Defendants and does not address the additional constitutional requirements for personal jurisdiction under the "minimum contacts" analysis. For the same reason, the Court has no reason to address the portions of the Motions to Dismiss which relate to Rule 12(b)(6), failure to state a claim upon which relief can be granted, or Rule 12(b)(3), improper venue.

## [*44] Conclusion

Page 12

2007 U.S. Dist. LEXIS 43567, *44
37 Fed. R. Serv. 3d (Callaghan) 531; 1997 AMC 1772

For the foregoing reasons, the three Motions to Dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction of Third-Party Defendants CMT and Plano Molding are GRANTED.

**SO ORDERED:**

BARBARA S. JONES

UNITED STATES DISTRICT JUDGE

Dated: New York, New York

June 13, 2007

LEXSEE

**PEYMAN JAZINI, a minor, by his parents, Ali Jazini and Mina Mahmoudieh; ALI
JAZINI, individually; MINA MAHMOUDIEH, individually, Plaintiffs-Appellants,
v. NISSAN MOTOR COMPANY, LTD., Defendant-Appellee.**

Docket No. 97-7611

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

148 F.3d 181; 1998 U.S. App. LEXIS 13850

November 19, 1997, Argued
June 29, 1998, Decided

**PRIOR HISTORY:** [**1] Appeal from the judgment
of the United States District Court for the Southern
District of New York, Sand, J., granting the defendant's
motion to dismiss for lack of personal jurisdiction.

**DISPOSITION:** Affirmed.

**COUNSEL:** ROBERT IAN GOODMAN, New York,
N.Y. (Tomas L. Ryan, Ryan and Ryan, New York, N.Y.
on the briefs) for the Plaintiffs-Appellants.

JOEL A. DEWEY, Baltimore, Md. (Loren H. Brown,
Piper & Marbury, New York, N.Y., on the brief) for the
Defendant-Appellee.

**JUDGES:** Before: KEARSE, LEVAL and FRIEDMAN
*, Circuit Judges.

> \* Daniel M. Friedman, of the United States
> Court of Appeals for the Federal Circuit, sitting
> by designation.

**OPINION BY:** Daniel M. Friedman

**OPINION**

[*183] FRIEDMAN, Circuit Judge:

This appeal challenges the decision of the district
court dismissing a product liability suit against a
Japanese automobile manufacturer because the court
lacked personal jurisdiction over the defendant. We
affirm.

I.

The appellants, a married couple and their minor son
(collectively the Jazinis), all residents of New York state,
brought this damage suit in the United States District
Court for the Southern District of New York against
Nissan Motor Co., Ltd. (Nissan Japan), a Japanese
Corporation. [**2] The amended complaint alleged that
they were injured when a Nissan Patrol automobile,
which one of the Jazinis was driving in Iran, lost its rear
wheel assembly and crashed; that the accident was caused
by a defective part of the assembly, which broke while
the automobile was running; and that Nissan Japan was
careless and negligent in the design, manufacture and
testing of the part. (The Jazinis conceded that the vehicle
involved in the accident was manufactured in Japan and
that Patrol automobiles were not marketed or distributed
in the United States.)

The subject matter jurisdiction of the district court
rested on the diversity provision, 28 U.S.C. § 1332(a)
(1994). The principal allegations in the amended
complaint relating to personal jurisdiction were as
follows:

> 1. Nissan Japan "maintains a presence"
> in New York state "through the actions
> and presence of its wholly-owned
> subsidiary, Nissan Motor Corporation in
> U.S.A." (Nissan U.S.A.), and two
> wholly-owned subsidiaries of the latter
> corporation. (Par. 3).

> 2. Nissan U.S.A. is "wholly
> controlled" by Nissan Japan and "is

wholly dependent on its parent, among other things, for its business plan and financing." (Par. 6). [**3]

3. Nissan U.S.A. "is able to act as would its parent, were [Nissan Japan] directly present in the State of New York." (Par. 6).

In the proceedings before the district court, the Jazinis further alleged that according to Nissan Japan's annual report, one of that company's four executive directors is the chairman of the board of Nissan U.S.A. and that the report "refers to how [Nissan Japan] directs the manufacturing operations of the American subsidiary."

On Nissan Japan's motion pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and before discovery, the district court dismissed the complaint for lack of jurisdiction over that company. After summarizing the foregoing jurisdictional allegations, the court, applying New York law, which it categorized as "well established," ruled that the Jazinis had failed to show "the degree of domination which the parent must exert over the domestic subsidiary before the parent will be subject to personal jurisdiction solely because of the presence of the subsidiary." The court concluded:

Indeed, if allegations as sparse as those advanced by plaintiffs would be enough to subject the foreign parent to "extensive discovery" [**4] in the United States, the scope of jurisdiction of courts sitting in New York over multi-national corporations would be vastly increased contrary to established law and to the understanding of the commercial community.

II.

In diversity cases the federal courts generally apply state law in deciding substantive questions and federal law in deciding procedural ones. See *Hanna v. Plumer*, 380 U.S. 460, 465, 471, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965). "The amenability of a foreign corporation to suit in a federal court in a diversity action [, however,] is

determined in accordance with the law of the state where the court sits, with 'federal law' entering the [*184] picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (in banc) (footnote omitted). The rationale for that ruling was that "neither the federal legislature nor the federal rule-makers have had any intention to displace state statutes as to the taking of jurisdiction over foreign corporations in ordinary diversity cases." *Id.* at 227. Accordingly, we look to New York law to ascertain [**5] the standard for determining whether the district court in this case had jurisdiction over the Japanese corporation, Nissan Japan.

As the district court indicated, the requirements the New York courts apply in determining whether they have jurisdiction over a foreign corporation on the basis of the intrastate activities of that corporation's subsidiaries are "well established." The issue in the present case, however, is not whether the Jazinis had satisfied those standards, but the preliminary question whether what they have shown is sufficient to entitle them to discovery on those questions.

Our cases show that "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, see Fed. R. Civ. P. 11, legally sufficient allegations of jurisdiction," i.e., by making a "*prima facie* showing" of jurisdiction. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 112 L. Ed. 2d 116, 111 S. Ct. 150 (1990); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); Fed. R. Civ. P. 12(b)(2). We conclude, as apparently the district court did, that [**6] the Jazinis did not make a prima facie showing that the district court had jurisdiction over Nissan Japan. New York courts may exercise personal jurisdiction over a foreign corporation that is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in [the state]," *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 430-31, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972) (applying N.Y. C.P.L.R. § 301), even if the cause of action is unrelated to the defendant's New York activities. See *Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 102, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965) (New York courts had personal jurisdiction over a foreign corporation even though the cause of action arose from

148 F.3d 181, *184; 1998 U.S. App. LEXIS 13850, **6

an accident in Nicaragua).

Where, as here, the claim is that the foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). For New York courts to have personal [**7] jurisdiction in that situation, the subsidiary must be either an "agent" or a "mere department" of the foreign parent. *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).

To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary "does all the business which [the parent corporation] could do were it here by its own officials." *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851, *remittitur amended*, 20 N.Y.2d 737, *and cert. denied*, 389 U.S. 923 (1967). The Jazinis alleged only that Nissan U.S.A. "is able to act as would its parent, were [Nissan Japan] directly present in the State of New York." This conclusory statement is but a restatement, with slight changes, of the legal standard for determining agency enunciated in *Frummer*. It states no facts supporting that conclusion and does not constitute a prima facie showing of agency. Moreover, a foreign car manufacturer is not "present" in New York simply because it sells cars through a New York distributor. *See Delagi*, 29 N.Y.2d at 433. The Jazinis have thus failed to make any showing that Nissan U.S.A. is the [**8] defendant's agent within the meaning of the relevant case law.

In determining whether the subsidiary is a "mere department" of the parent -- the other New York jurisdictional basis -- the court must consider four factors, which in *Beech Aircraft* we summarized as follows: [*185] first, "common ownership" -- which is "essential" --; second, "financial dependency of the subsidiary on the parent corporation;" third, "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and fourth, "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." 751 F.2d at 120, 121, 122.

The Jazinis' allegations that Nissan U.S.A. is a "mere department" of Nissan Japan lack the factual specificity

necessary to confer jurisdiction. The conclusory statements -- without any supporting facts -- that Nissan U.S.A. is "wholly controlled" by Nissan Japan and "wholly dependent" on Nissan Japan "for its business plan and financing," are but a restatement of two of the factors to be considered under the standards set forth in *Beech Aircraft*: "financial [**9] dependency of the subsidiary on the parent corporation" and the parent's control of the subsidiary's "marketing and operational policies." 751 F.2d at 120, 122. As the Supreme Court has pointed out, in a different context but in language equally applicable here, "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986).

The Jazinis also refer to material they submitted to the district court in opposition to the motion to dismiss. Assuming without deciding that the district court properly considered this material without converting the motion to dismiss into one for summary judgment, *see* Fed. R. Civ. P. 12(b), the Jazinis' additional material, even considered in conjunction with the allegations previously discussed, did not establish a prima facie case that Nissan U.S.A. is a "mere department" of Nissan Japan.

The Jazinis asserted that one of Nissan Japan's four "managing executive directors" is the chairman of Nissan U.S.A.. That fact does not establish that the American subsidiary is a "mere department" of the Japanese parent. *See Porter v. LSB Indus.*, 192 A.D.2d [**10] 205, 600 N.Y.S.2d 867, 873 (N.Y. App. Div. 1993) (subsidiary not shown to be "mere department" of parent even though "the directors and officers of the two entities overlap to an extent").

The Jazinis refer to excerpts from Nissan Japan's annual report which they say show Nissan Japan's "pervasive control and domination of its New York subsidiaries." They cite statements by Nissan Japan's president that the company "needs to become a truly global company" and that "I want each part of our global operations, and this includes Japan, to focus on contributing to the company as a whole." None of this material, and especially not a request for world-wide cooperation, shows the pervasive control over the subsidiary that the "mere department" standard requires.

Finally, the Jazinis refer to the "cultural attributes" of Japanese multinational corporations, including their

148 F.3d 181, *185; 1998 U.S. App. LEXIS 13850, **10

"peculiarly centralized character," as indicating that Nissan Japan "exercises pervasive control and domination over its New York based subsidiaries." The Jazinis did not present this speculative and conjectural contention to the district court, the district court did not discuss the argument, and we decline to consider [**11] its belated assertion here, particularly given that the contention raises factual, rather than purely legal, issues. See Greene v. United States, 13 F.3d 577, 586 (2d Cir. 1994)("Entertaining issues raised for the first time on appeal is discretionary with the panel hearing the appeal."); and see Coogan v. Smyers, 134 F.3d 479, 487 (2d Cir. 1998).

If the Jazinis' allegations were sufficient to establish a prima facie case of jurisdiction over Nissan Japan, and thus subject the latter to discovery -- which the Jazinis stated at the district court hearing would be "rather extensive" -- it would not be difficult for a plaintiff suing a multinational foreign corporation in the federal courts in New York, to make similar conclusory non-fact-specific jurisdictional allegations and thus obtain extensive discovery on that issue. This would require the federal courts to conduct substantial jurisdictional discovery over foreign corporations -- a practice in which they have [*186] not hitherto engaged. We decline to require that step.

Since the Jazinis did not establish a prima facie case

that the district court had jurisdiction over Nissan Japan, the district court did not err in denying [**12] discovery on that issue. See Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) (because the allegations failed to meet the relevant standard for jurisdiction, "there was no abuse of discretion below in denying discovery").

We recognize that without discovery it may be extremely difficult for plaintiffs in the Jazinis' situation to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York. That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States -- as it properly may do. The rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards.

CONCLUSION

The judgment of the district court dismissing the complaint for lack of personal jurisdiction over the defendant is affirmed.